FILED
United States Court of Appeals
Tenth Circuit

February 1, 2022

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

DWAIN EDWARD THOMAS,

   Plaintiff - Appellant,

v.

KEVIN STITT, Governor; STEVEN BICKLEY, Executive Director of the Oklahoma Pardon and Parole Board; T. HASTINGS SIEGFRIED, Chair of the Oklahoma Board of Corrections; SCOTT CROW, Director of the Oklahoma Department of Corrections,

   Defendants - Appellees.

-------------------------

CAMPAIGN FOR THE FAIR SENTENCING OF YOUTH,

   Amici Curiae.

No. 21-6011
(D.C. No. 5:20-CV-00944-D)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HOLMES**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Dwain Edward Thomas, an Oklahoma state prisoner, appeals from the district court's order dismissing his 42 U.S.C. § 1983 complaint on screening under 28 U.S.C. § 1915A(a)-(b)(1) for failure to state a claim upon which relief may be granted. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand for further proceedings consistent with this order and judgment.

## I. INTRODUCTION

Mr. Thomas filed suit against the Governor of Oklahoma, the Executive Director of the Oklahoma Pardon and Parole Board (PPB), the Chair of the Oklahoma Board of Corrections, and the Director of the Oklahoma Department of Corrections (DOC) claiming that Okla. Stat. tit. 57, § 332.7—Oklahoma's statute governing parole consideration—is unconstitutional as applied to juvenile homicide offenders sentenced to life. Mr. Thomas alleges that Oklahoma's parole system is unconstitutional under the Eighth Amendment and Article II, § 9 of the Oklahoma Constitution because it fails to provide a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation as required by the Supreme Court's juvenile-sentencing precedents.

A magistrate judge screened the complaint and issued a report and recommendation to dismiss the complaint for failure to state a claim upon which relief may be granted. *See* § 1915A(a)-(b)(1). Mr. Thomas filed timely objections.

The district court conducted a de novo review, overruled the objections, and adopted the magistrate judge's recommendation. The court found that Mr. Thomas failed to state a claim for relief under the Eighth Amendment and declined to exercise

2

supplemental jurisdiction over his claim under the Oklahoma Constitution. Accordingly, the court dismissed the complaint. Mr. Thomas appeals.

## II.  MR. THOMAS'S COMPLAINT

In 1997, when he was 15 years old, Mr. Thomas pled guilty to three homicide offenses—one count of first-degree murder and two counts of murder. Under the sentencing scheme applicable at the time, the court was required to impose mandatory life sentences. As such, Mr. Thomas was sentenced without any individualized decision that considered his youth or other attendant characteristics. Mr. Thomas was eligible for parole consideration after serving fifteen years of each sentence.

Mr. Thomas alleges that throughout more than two decades in prison, he has consistently demonstrated good behavior. He has received "Excellent" or "Outstanding" ratings in all aspects of the "current patterns of behavior" section of his periodic "Adjustment Review" from the Department of Corrections (DOC). Aplt. App. at 39 (internal quotation marks omitted). Moreover, since at least 2003, Mr. Thomas has maintained "Level IV" privilege status—the highest level an inmate may achieve under relevant operations procedures. *Id.* at 7. He works as a technician for the facility maintenance department—a position he has held for more than eighteen years—and has also achieved several certifications. In summary, Mr. Thomas maintains that he has been a model prisoner.

Mr. Thomas has been considered for and denied parole on four occasions. On each occasion, his parole investigators have given favorable recommendations to the

PPB based on his demonstrated good behavior. Moreover, "DOC classification counselors assessing [his] readiness for parole have [repeatedly] noted his 'excellent' record and observed that the only issue hindering his release is the State's parole system." *Id*. at 38. Mr. Thomas further maintains that "[n]othing in [his] record suggests, nor was any finding ever made, that his crime reflected that he was among the rarest juveniles whose crime reflects permanent incorrigibility." *Id*. at 37 (brackets and internal quotation marks omitted).

Despite his excellent record, Mr. Thomas has never progressed past the first stage of parole review. To the best of his knowledge, the PPB has refused to recommend him for parole solely due to the "aggravating factors associated with the original crime." *Id*. at 13, 26, 36 (internal quotation marks omitted).

Turning to Oklahoma's parole system, Mr. Thomas states that PPB regulations establish only the timing of parole review and a two-stage review process. "The first stage is a 'jacket review,'" when the PPB votes on whether to pass the offender to stage two. *Id.* at 28. At stage two, the PPB votes to determine whether to recommend parole.

According to Mr. Thomas, these threadbare regulations make no distinctions or accommodations for individuals who committed crimes as juveniles. And to make matters worse, Mr. Thomas alleges "PPB's practices penalize [juvenile offenders] by relying on risk assessment tools that assess the individual as if frozen in time upon their arrival," and, as such, do not consider their "maturation over time, accomplishments, or institutional record[s]." *Id*. at 29. Further, there are no

4

evidentiary rules, no right to obtain expert assistance or testimony, no cross-examination, no compulsory process, no assistance of counsel, no right to challenge the accuracy of any information in the PPB's file, and no right to an explanation.

Mr. Thomas alleges that the authority to grant parole to any person convicted of a violent crime, rests exclusively with the Governor. Although the law contemplates that the Governor's parole power may be constrained, according to Mr. Thomas, no constraints or enforceable standards have ever been adopted. This means the Governor can reject the PPB's recommendation for any reason, without any explanation or opportunity for review.

### III.  LEGAL FRAMEWORK

Mr. Thomas's claims are based on a series of Supreme Court cases beginning with *Roper v. Simmons*, 543 U.S. 551 (2005), followed by *Graham v. Florida*, 560 U.S. 48 (2010), continuing in *Miller v. Alabama*, 567 U.S. 460 (2012) and *Montgomery v. Louisiana*, 577 U.S. 190 (2016), and addressed most recently in *Jones v. Mississippi*, 141 S. Ct. 1307 (2021). Collectively, these cases frame the contours of the Eighth Amendment as applied to the sentencing of juvenile offenders.

*Roper* held that the Eighth Amendment prohibits sentencing juvenile offenders to death. *See* 543 U.S. at 568. Building on *Roper*, which recognized the lesser culpability of juveniles and their capacity for change, *Graham* held that the Eighth Amendment categorically bars sentencing juvenile offenders to life without parole for non-homicide offenses. *See* 560 U.S. at 74.

In *Miller*, the Court extended its reasoning in *Graham* to hold that the Eighth Amendment prohibits imposing a mandatory sentence of life without parole on a juvenile homicide offender. *See* 567 U.S. at 479. Based on its recognition that a lifetime in prison is a disproportionate sentence for all but those juveniles whose crimes reflect "irreparable corruption," *id*. at 479-80, the Court held that that "mandatory penalty schemes" that "remov[e] youth from the balance" and "prevent the sentencer from taking account of these central considerations," are unconstitutional, *id*. at 474. While this does not mean that "'[a] State is . . . required to guarantee eventual freedom,' [it] must provide 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'" *Id*. at 479 (quoting *Graham*, 560 U.S. at 75).

In *Montgomery*, the Court gave retroactive effect to *Miller's* rule that "life without parole [is] an unconstitutional penalty for a class of defendants because of their status—that is, juvenile offenders whose crimes reflect the transient immaturity of youth." 577 U.S. at 208. When the State has imposed a mandatory sentence of life without parole on a homicide juvenile offender, it can cure that violation in one of two ways: (1) the State can conduct an individualized sentencing proceeding and resentence the offender to life without parole if it follows a process that considers youth and its attendant characteristics[1] or (2) the State can allow juvenile homicide

---

[1] *See Jones v. Mississippi*, 141 S. Ct. 1307, 1311 (2021) (holding that before sentencing a juvenile homicide offender to life without parole, a sentencer must "consider an offender's youth and attendant characteristics," but need not make a specific finding regarding incorrigibility)

6

offenders to be considered for parole. *See id*. at 212. "Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and those who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." *Id*. "Those prisoners who have shown an inability to reform will continue to serve life sentences," while "[t]he opportunity for release will be afforded to those who demonstrate the truth of *Miller*'s central intuition—that children who commit even heinous crimes are capable of change." *Id*.

Relying on these precedents, Mr. Thomas maintains that it is not enough for Oklahoma to impose a life sentence that makes him eligible for parole; instead, the State must operate a system that provides what the Eighth Amendment requires—a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. He further alleges that Oklahoma's ad hoc system of executive clemency falls woefully short.

## IV. STANDARD OF REVIEW

"Dismissal for failure to state a claim is a legal question we review de novo." *Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009). Our review is "for plausibility; that is, whether the complaint includes enough [well-pleaded] facts to state a claim to relief that is plausible on its face." *Id*. (internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

## V. ANALYSIS

The district court determined that Mr. Thomas's complaint failed to state a claim for relief under the Eighth Amendment claim for three reasons. First, the court found "*Graham*'s holding" that "juvenile nonhomicide offenders must be afforded some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" applies only "to offenders convicted of non-homicide offenses." Aplt. App. at 110 (internal quotation marks omitted). The court thus concluded that "to the extent *Graham*" requires a state parole system to provide a meaningful opportunity to obtain release, "th[at] requirement[] do[es] not extend to juvenile homicide offenders such as [Mr. Thomas]." *Id.* But as the Supreme Court explained in *Miller*, "*Graham*'s reasoning implicates any life-without-parole sentence imposed on a juvenile, even as its categorical bar [against life sentences without parole] relates only to nonhomicide offenses." 567 U.S. at 473.

Second, the district court found that although "*Miller* . . . prohibits mandatory life-without-parole sentences for juvenile offenders" and "*Montgomery* . . . provided that a *Miller* violation could be remedied by permitting juvenile homicide offenders to be considered for parole," neither case "expanded existing parole procedures for

8

persons convicted as juveniles." Aplt. App. at 110-11. But the Supreme Court has not specifically addressed Mr. Thomas's argument—whether the Eighth Amendment requires the State to operate a parole system that affords a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation, or whether simply making a juvenile lifer eligible for parole is enough. Also, a fair reading of the cases does not foreclose Mr. Thomas's claims.

Last, the district court found that "while *Miller*'s holding included a procedural component in that it requires a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence, that procedure was not violated here because [Mr. Thomas] was not sentenced to life without parole." *Id.* at 111 (internal quotation marks omitted). Or as Mr. Thomas frames the order:

> [T]he district court held that as long as a state on paper offers a purported "parole" system for juvenile homicide offenders, that state has satisfied its constitutional obligations even if that system operates as a wholly arbitrary system of *ad hoc* executive clemency that provides no meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.

Aplt. Opening Br. at 24.

Regardless of how the district court's order is framed, it purports to address complex issues of first impression without an opportunity for the parties to develop the facts and their legal arguments. Our careful review of Mr. Thomas's complaint and his arguments on appeal convinces us that he has stated plausible claims for

9

relief. This is not to say that Mr. Thomas will prevail; however, the complaint contains enough well-pleaded facts to plausibly entitle him to relief.

## VI. CONCLUSION

The district court's order dismissing Mr. Thomas's complaint is vacated, and the case remanded for further proceedings consistent with this order and judgment.

    Entered for the Court

    Gregory A. Phillips
    Circuit Judge

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

| | |
|---|---|
| Christopher M. Wolpert<br>Clerk of Court | Jane K. Castro<br>Chief Deputy Clerk |

February 01, 2022

Easha Anand
Roderick & Solange MacArthur Justice Center
2443 Fillmore Street, Suite 380-15875
San Francisco, CA 94115

Lauren Nicole Beebe
C. Harker Rhodes IV
Kirkland & Ellis
1301 Pennsylvania Avenue NW
Washington, DC 20004

**RE:**    **21-6011, Thomas v. Stitt, et al**
Dist/Ag docket: 5:20-CV-00944-D

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

          Sincerely,

          Christopher M. Wolpert
          Clerk of Court

cc:    Brendan Krasinski
      Colleen McElroy
      Jody Rhodes
      Rebecca Turner

CMW/jm