IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DWAIN EDWARD THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIV-20-944-D |
| v. | ) | |
| | ) | |
| KEVIN STITT, et. al.. | ) | |
| | ) | |
| Defendants. | ) | |

SECOND SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff, a state prisoner, filed this action pursuant to 42 U.S.C. § 1983 and

the Federal Declaratory Judgment Act. Before the Court is Defendants' Motion

to Dismiss (Doc. No. 37), to which Plaintiff has filed a Response (Doc. No. 46),

and Defendants have filed a Reply (Doc. No. 47).  The matter has been referred

to the undersigned Magistrate Judge for initial proceedings consistent with 28

U.S.C. § 636(b)(1)(B). For the reasons set forth herein, the undersigned

recommends Defendants' Motion to Dismiss be granted.

I. Background

On March 20, 1997, Plaintiff entered a guilty plea to three counts of Murder

in the First Degree. Order Affirming Denial of Post-Conviction Relief, *Thomas v. State*, No. PC-2019-116 (Okla. Crim. App. Sept. 6, 2019). "He was sentenced to life imprisonment on each count, with two counts to run concurrently with each other but consecutively to the third count. [He] was fifteen years old when the crimes were committed." *Id.* at 1. Relevant to the current case, the Oklahoma Court of Criminal Appeals explained, in affirming the state court's denial of Plaintiff's request for post-conviction relief:

> Petitioner's crimes in this case were committed in 1995 before the statute was enacted requiring service of a minimum percentage of his sentences. Petitioner is eligible for parole consideration after serving fifteen years of each of his consecutive life sentences. *See* 57 O.S.Supp.2013, § 332.7; *see also Fields v. State*, [] 501 P.2d 1390, 1394 [(Okla. Crim. App. 1972)]. Petitioner thus has a material opportunity to obtain release on parole during his natural lifetime . . . .

*Id.* at 2 (additional citation omitted).

In this action, Plaintiff challenges many aspects of Oklahoma's parole system. He primarily alleges that because he was a juvenile homicide offender and he is allegedly not afforded a meaningful opportunity for release through Oklahoma's parole system, his sentences violate the Eighth Amendment pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012) and *Montgomery v. Louisiana*, __ U.S. __, 136 S. Ct. 718 (2016). Doc. No. 1 at 38-39. Plaintiff also contends that Oklahoma parole procedures violate his Eighth Amendment rights as set forth in

2

*Miller* because, in considering whether to recommend parole, the Oklahoma Pardon and Parole Board ("PPB") is not required to consider that he was a juvenile when he committed the underlying crimes. Additionally, Plaintiff asserts that because the Oklahoma Department of Corrections prohibits inmates imprisoned under life sentences from reaching a lower classification than medium security, Plaintiff does not have an adequate chance of parole. Finally, Plaintiff contends the Oklahoma parole system does not provide adequate due process because, *inter alia*, he is not permitted to challenge the accuracy of certain information the PPB considers.

In a separate claim, Plaintiff asserts that his sentences violate the Oklahoma Constitution's prohibition against cruel or unusual punishment. *Id.* at 39-40. Finally, Plaintiff asks the Court to declare Okla. Stat. tit. 57, § 332.7 unconstitutional as violative of the Eighth Amendment. *Id.* at 41.

On October 30, 2020, the undersigned issued a Supplemental Report and Recommendation recommending the Court dismiss this case, pursuant to 28 U.S.C. § 1915A. Doc. No. 12. The undersigned concluded that the Supreme Court's decision in *Miller*, upon which Plaintiff primarily relies and discussed in more detail herein, is not implicated by Plaintiff's criminal proceedings because the state court did not sentence him to a mandatory or *de facto* sentence of life

3

without parole. On December 21, 2020, United States District Judge Timothy D. DeGuisti entered an Order adopting the Supplemental Report and Recommendation and dismissing the case. Doc. Nos. 16, 17.

Plaintiff appealed to the United States Court of Appeals for the Tenth Circuit. The Tenth Circuit reversed and remanded the matter, characterizing the Complaint as presenting matters of first impression and stating that the Court should provide the parties an opportunity to develop the facts and their legal arguments. Doc. No. 24 at 9. To that end, Defendants have presented the Court with a Motion to Dismiss, Plaintiff has responded, and Defendants have replied. Thus, the matter is now at issue.[1]

II. Juvenile Offenders and the Eighth Amendment

The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend VIII. Over the past twenty years, the Supreme Court has found the

---

[1] Although *Miller* challenges are more typically brought as habeas claims, as Plaintiff is seeking injunctive and declaratory relief rather than release from confinement, his cause of action properly seeks relief under 42 U.S.C. § 1983. *See Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 3 (1979) (involving § 1983 due process challenge to parole procedures); *Herrera v. Harkins*, 949 F.2d 1096, 1097 (10th Cir. 1991) ("A prisoner may use [§] 1983 to attack parole procedures."); *Richards v. Bellmon*, 941 F.2d 1015, 1018 n.3 (10th Cir. 1991) ("A single complaint may seek relief partly under [28 U.S.C.] § 2254 and partly under [42 U.S.C.] § 1983.").

application of certain punitive measures to juvenile offenders violates this Amendment. In *Roper v. Simmons*, 543 U.S. 551, 125 (2005), the Supreme Court held that the Eighth Amendment prohibits capital punishment for juveniles. In *Graham v. Florida*, 560 U.S. 48, 82 (2010), the Court found the Eighth Amendment prohibits sentencing juveniles who commit non-homicide offenses to life without parole.

In *Miller*, upon which Plaintiff relies, the Supreme Court held that a law mandating life imprisonment without the possibility of parole for a homicide offense is unconstitutional as applied to juveniles. *Miller*, 567 U.S. at 480. The Court determined the sentencing scheme violated the Eighth Amendment by making an offender's youth "irrelevant to imposition of that harshest prison sentence[.]" *Id.* In so holding, the Supreme Court observed:

> State law mandated that each juvenile [convicted of homicide] die in prison even if a judge or jury would have thought that his youth and its attendant characteristics, along with the nature of his crime, made a lesser sentence (for example, life *with* the possibility of parole) more appropriate. Such a scheme prevents those meting out punishment from considering a juvenile's "lessened culpability" and greater "capacity for change," *Graham v. Florida*, 560 U.S. 48, 68, 74 [] (2010), and runs afoul of our cases' requirement of individualized sentencing for defendants facing the most serious penalties.

*Id.* at 465. Thus, the Supreme Court determined that a sentencing scheme that mandates life imprisonment without parole for a homicide offense is

unconstitutional as applied to juvenile offenders because such scheme precludes the sentencing court from considering proportionality-related factors such as the characteristics of youth, the offender's own circumstances, and circumstances of the crime itself. *Id.* at 477-80.

The Court also noted that its ruling did "not foreclose a sentencer's ability to [sentence juvenile offenders to life without parole] in homicide cases." *Id.* at 480. In this regard, *Miller* extends beyond mandatory sentencing schemes. The Supreme Court further held that a sentencing court is required to "follow a certain process-considering an offender's youth and attendant characteristics-before imposing [a life-without-parole sentence upon a juvenile offender]." *Id.* at 483. Thus, *Miller* requires all jurisdictions to specifically consider a juvenile offender's youth and attendant characteristics prior to imposing a sentence of life imprisonment without parole.

In *Montgomery*, the Court held that *Miller* applied retroactively. *Montgomery*, 577 U.S. at 212-13. The Court also explained,

> Giving *Miller* retroactive effect [] does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. *See, e.g.,* Wyo. Stat. Ann. § 6–10–301(c) (2013) (juvenile homicide offenders eligible for parole after 25 years). Allowing those offenders to be considered for parole ensures that juveniles whose

crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.

*Id.* at 212.

### III. *Miller's* Application to Plaintiff's Sentences

Relying primarily on the Supreme Court's decision in *Miller*, Plaintiff contends that because he was a juvenile when he committed the homicides underlying his convictions, Oklahoma's parole procedures violate the Eighth Amendment because they do not provide a reasonable opportunity for release. As previously explained, *Miller* prohibited a mandatory sentence of life without parole and required a court to consider the offender's youth prior to sentencing him to the same. *Id.* at 479, 483. Thus, Plaintiff's sentences do not implicate the Supreme Court's decision in *Miller* as the state court did not sentence Plaintiff to life without parole and significantly, neither did it sentence him to the functional equivalent thereto.

Plaintiff was sentenced to essentially two consecutive life sentences. *See, supra.* However, as applied to offenders like Plaintiff whose crimes were committed before July 1, 1998, Oklahoma's Truth in Sentencing Act sets initial docket dates for parole consideration at either a percentage of the mid-point of a sentencing matrix for the crime or at one-third of the actual sentence, whichever

is earlier. Okla. Stat. tit. 57, § 332.7(A). By his own admission, the PPB has already considered Plaintiff for parole several times, though thus far it has denied it. Doc. No. 1 at 19, 24, 35, 36, 37-38. Once denied parole, inmates, such as Plaintiff, convicted of a violent crime are eligible for reconsideration in three years.[2] Okla. Stat. tit. 57, § 332.7(E)(1); *see Traylor v. Jenks*, 223 F. App'x 789, 790 (10th Cir. 2007) ("Under the Truth in Sentencing Act, a person who committed a violent crime before July 1, 1998, and has been denied parole, is eligible for reconsideration at least once every three years.").

In *Lewis v. Oklahoma Pardon & Parole Board*, No. CIV-18-1205-G, 2019 WL 1500671 (W.D. Okla. April 5, 2019), the plaintiff raised strikingly similar claims to those raised herein. The state court had convicted him to life imprisonment at the age of 14 on a charge of first degree murder. *Lewis*, 2019 WL 1500671, at *1. He had subsequently been considered for and denied parole six times "without being afforded an opportunity to demonstrate maturity and rehabilitation." *Id.* (quotations omitted). He brought suit pursuant to 42 U.S.C. § 1983 contending that he had "been denied a meaningful opportunity for release" in violation of the Eighth Amendment, as prescribed in *Miller*. *Id.* This Court

---

[2] First degree murder is classified as a violent crime. Okla. Stat. tit. 57, § 571(2)(i).

dismissed the plaintiff's claims concluding *Miller* was "inapplicable because Plaintiff was not sentenced to life-without-parole and has in fact been considered for parole on at least six occasions." *Id.* (quotations omitted).

> To establish a *Miller* violation, Plaintiff must show: (1) that he was sentenced to life without parole; and (2) that such sentence was imposed without an individualized assessment. *See Montgomery*, 136 S. Ct. at 725 (noting *Miller's* holding that "a juvenile convicted of a homicide offense could not be sentenced to life in prison without parole absent consideration of the juvenile's special circumstances"). Plaintiff cannot show that he was sentenced to life without the possibility of parole, and he does not complain about a lack of individualized assessment at sentencing. *See Contreras v. Davis*, 716 F. App'x 160, 163 (4th Cir. 2017) (holding that habeas claims were "not cognizable under *Miller* because [the petitioner] [was] not subject to a mandatory sentence without parole"); *Starks v. Easterling*, 659 F. App'x 277, 280 (6th Cir. 2016) (same).

*Id.* (additional citation omitted).

The plaintiff also argued that his sentence violated *Graham v. Florida*, 560 U.S. 48 (2010) because he was not afforded a meaningful opportunity for release. *Lewis,* 2019 WL 1500671, at *2. This Court explained that it had "considered this argument but conclude[d] that because Plaintiff was convicted of homicide, he does not fall within the category of juvenile offenders entitled to a meaningful opportunity for release under *Graham*." *Id.* (citing *Budder v. Addison*, 851 F.3d 1047, 1055 (10th Cir. 2017) (explaining that *Graham* applies only to juvenile offenders not convicted of homicide)). "It is therefore unnecessary to determine

whether the complained-of state parole procedures afforded Plaintiff an opportunity to demonstrate maturity and rehabilitation." *Lewis,* 2019 WL 1500671, at *2 (quotations omitted).

The plaintiff in *Lewis* also asserted a Fourteenth Amendment claim predicated on "allegations that, in denying him parole, state officials did not consider his youth, failed to provide a reason for denial, did not provide him with an attorney, and did not allow him to appeal the denial." *Id.* This Court concluded the plaintiff had not asserted a viable Fourteenth Amendment claim because the plaintiff "has no liberty interest in obtaining parole because, under Oklahoma law, the granting of parole is entirely discretionary." *Id.* The plaintiff countered with his contention that juvenile offenders have a liberty interest in parole under *Graham* and *Miller*. *Id.* This Court again explained that the plaintiff's sentence did not implicate either *Graham* or *Miller*. *Id.*

Similarly, in *Bias v. Stitt*, No. CIV-20-989-SLP, 2020 WL 10731244 (W.D. Okla. Dec. 15, 2020), the plaintiff challenged the adequacy of Oklahoma's parole procedures under *Miller*. *Id.* at *1. The state court convicted the plaintiff of first degree murder, committed when he was 17 years of age, and sentenced him to life imprisonment. *Id.* The plaintiff became eligible for parole 15 years after his conviction. *Id.* at *2. This Court held that the plaintiff's sentence did not implicate

*Miller* because he "was neither sentenced to life without parole nor was he sentenced to the functional equivalent of life without parole." *Id.* at *3.

> Plaintiff's life sentence did not implicate *Miller* because he did not receive a sentence of life without parole nor the equivalent of such a sentence. Plaintiff stated he [last] received a parole hearing in July 2020, and suggests he has received one every three years. He just disagrees with the procedure in place. He cannot establish an Eighth Amendment violation with *Miller* underpinning his claim. *See Lewis [], []* 2019 WL 1500671, at *1 [] (concluding that *Miller* did not apply because "Plaintiff was not sentenced to life-without-parole and has in fact been considered for parole on at least six occasions" and dismissing § 1983 complaint).

*Id*. (additional citation omitted).

The plaintiff in *Bias* also alleged Fifth and Fourteenth Amendment claims based on Oklahoma's PPB failing to "consider evidence that might show rehabilitation under *Montgomery*. He maintains the current policy allows no procedure to demonstrate the crime did not reflect irreparable corruption relying on *Montgomery* (and other Supreme Court cases, including *Miller*)." *Id.* (quotations and citations omitted). This Court, however, disagreed with the plaintiff's theory, explaining that he "roots his assertions in a constitutional liberty interest in parole. But Plaintiff has never had a liberty interest in parole consideration or procedure, given its discretionary nature." *Id.*

In the present case, Plaintiff was sentenced only to life imprisonment *with* the possibility of parole and has already been considered for parole on multiple

11

occasions. *See, supra*. Thus, as in *Lewis* and *Bias*, Plaintiff's sentences do not implicate *Miller* or its related cases and therefore, he cannot establish an Eighth Amendment violation pursuant to *Miller*.[3]

IV. <u>Consideration of Youth in Parole</u>

Plaintiff contends *Miller* requires the Oklahoma PPB to specifically consider his youth at the time he committed his underlying crimes. Other courts that have considered this issue have rejected such a proposition. In *Bowling v. Director, Virginia Department of Corrections*, 920 F.3d 192, 197 (4th Cir. 2019), the Fourth Circuit specifically held that *Miller* did not extend to a juvenile offender's parole proceedings. After discussing *Roper*, *Graham, Miller*, and *Montgomery*, the court explained:

> Appellant asks this court to extend the Supreme Court's Eighth Amendment jurisprudence to juvenile parole proceedings and find that it is cruel and unusual punishment for a parole board to deny juvenile offenders parole without specifically considering age-related mitigating characteristics as a separate factor in the decision-making process. Granting that request would require us to extend the legacy of *Roper*, *Graham*, and *Miller* in two ways. First, we would have to find that juvenile-specific Eighth Amendment protections extend to juvenile homicide offenders sentenced to life with parole. And second, we would have to find that those protections extend beyond sentencing proceedings. We decline to go so far.

---

[3] While the Court concludes the above analysis resolves Plaintiff's constitutional claims, out of an abundance of caution, the Court will review additional individual aspects of Plaintiff's allegations asserted herein.

*Id.*

The Eighth Circuit Court of Appeals recently held the same in *Brown v. Precythe*, 46 F.4th 879 (8th Cir. 2022). Among the petitioner's arguments was that the parole process must consider the so-called *Miller* factors, including an offender's level of maturity, his family and home environment, the circumstances of the offense, and the possibility for rehabilitation. *Id.* at 886. The court rejected this argument, stating:

> The *Miller* factors [] apply as a constitutional matter only to a judge's decision at sentencing whether to impose a term of life imprisonment without parole for a juvenile homicide offender. *Montgomery*, 577 U.S. at 209-10 []. *Miller* held that consideration of these factors was necessary at sentencing, because the Eighth Amendment forbids a mandatory sentence of life without parole for juvenile offenders. 567 U.S. at 479 []. By operation of Missouri law, the inmates here were resentenced to life with the possibility of parole. *Hicklin*, 613 S.W.3d at 787-88. *Miller* and *Montgomery* did not purport to go further and direct federal courts to scrutinize in a civil rights action whether a State's parole procedures afford "some meaningful opportunity" for release of a juvenile homicide offender. As the Fourth Circuit observed, accepting the inmates' argument here would require this court to conclude (1) that the Supreme Court's juvenile-specific Eighth Amendment protections extend to juvenile homicide offenders sentenced to life *with* the possibility of parole, and (2) that those protections extend beyond sentencing proceedings. *Bowling* [], 920 F.3d [at] 197 []. Like the Fourth Circuit, we decline to go that far.

*Id. See also Pickens v. S.C. Dep't of Prob., Parole, and Pardon Servs.*, No. 8:22-cv-00500-RBH, 2022 WL 2965626, at *3 (D.S.C. July 27, 2022) (explaining that

*Miller* does not extend (1) to juvenile offenders sentenced to life *with* parole and (2) beyond sentencing proceedings).

The Court agrees with the Fourth and Eighth Circuits on this issue. The Supreme Court has not held, explicitly or otherwise, that the *Miller* decision extends beyond a state court's consideration of life without parole sentences for juvenile homicide offenders, nor that it applies to parole procedures. Moreover, as set forth below, to the extent Plaintiff contends that *Miller* and *Montgomery* established requirements for juvenile homicide offenders, the Oklahoma parole procedures meet the same.

V. <u>Oklahoma's Parole Process</u>[4]

As previously explained, Plaintiff's sentences fall under a previous sentencing state law, allowing him to be considered for parole at either a

---

[4] Plaintiff's complaints regarding Oklahoma's parole procedure include an allegation that the file the PPB reviews during the first stage of the parole process may contain inaccurate information and that "offenders have learned [of this] only indirectly, through the statements of PPB members in their hearings[.]" Doc. No. 1 at 27. Plaintiff does not indicate that he has experienced this. Similarly, Plaintiff complains that even when the PPB recommends parole for an inmate to the Governor, the Governor is not required to consider certain factors, nor explain his decision in granting or denying parole. *Id.* at 25. However, Plaintiff concedes the PPB has never recommended his parole to the Governor. *Id.* at 24. As such, Plaintiff does not have standing to raise these claims. *See Reynoldson v. Shillinger*, 907 F.2d 124, 125 (10th Cir. 1990) ("[T]o the extent a complaint concerns inmates rather than the plaintiff himself, it is dismissable for failure to allege the plaintiff's standing to proceed." (quotations omitted)).

percentage of the mid-point of a sentencing matrix for the crime or at one-third of the actual sentence, whichever is earlier. Okla. Stat. tit. 57, § 332.7(A). Once denied parole, Plaintiff is eligible for reconsideration every three years. Okla. Stat. tit. 57, § 332.7(E)(1). Because Plaintiff is a violent offender, when the PPB considers his application for parole, it first considers only "a completed report conducted by the staff of the [PPB]," informally known as a "jacket review," rather than holding an in-person hearing. Okla. Stat. tit. 57, § 332.7(D)(1) ("The parole hearings conducted for persons . . . convicted of a violent crime. . . shall be conducted in two stages. . . . At the initial hearing, the [PPB] shall review the completed report submitted by the staff . . . and shall conduct a vote regarding whether, based upon that report, the [PPB] decides to consider the person for parole at a subsequent meeting . . . ."); *Taylor v. Hargett*, No. 99-6102, 2000 WL 135172, at *1 (10th Cir. 2000); *see also, cf., Maynard v. Fallin*, 564 F. App'x 943, 945 (10th Cir. 2014) (detailing the change in parole consideration brought by the Truth in Sentencing Act). Additionally, Okla. Stat. tit. 57, § 332.7 provides that the PPB shall consider both the "prior criminal record of inmates under consideration for parole recommendation or granting of parole" and "the conduct and the record of [] said person during his custody in the Department of Corrections[.]" Okla. Stat. tit. 57, § 332.7(J), (L).

15

It is well established that inmates in Oklahoma do not have a liberty interest in parole. See *Greenholtz*, 442 U.S. at 11 ("That the state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained . . . a hope which is not protected by due process."); *Griffith v. Bryant*, 625 F. App'x 914, 917-18 (10th Cir. 2015) ("[B]ecause Oklahoma's parole scheme is discretionary, [the plaintiff] has no constitutionally protected due process liberty interest in parole." (citing *Shabazz v. Keating*, 977 P.2d 1089, 1093 (Okla. 1999) and *Shirley v. Chestnut*, 603 F.2d 805, 807 (10th Cir. 1979))). Therefore, none of Plaintiff's alleged deficiencies in the PPB's application of its procedure violate his due process rights. *See, cf. Pettigrew v. Zavaras*, 574 F. App'x 801, 809-15 (10th Cir. 2014) (affirming dismissal of the plaintiff's claim that the PPB violated his procedural and substantive due process rights when they relied on false information in his prison file to deny parole because the plaintiff lacked a due process right to parole and thus lacked a constitutional right to "fair parole procedures"). Additionally, this Court has previously ruled that to the extent a plaintiff who has been sentenced to life with the possibility of parole argues that *Miller* and *Montgomery* create a liberty interest, the plaintiff "would not fall within the category of juvenile offenders to whom that liberty interest applies." *Lewis*, 2019 WL 1500671, at *2. As a result, Plaintiff's claims should be

16

dismissed for failure to state a claim upon which relief can be granted.

Moreover, presuming without deciding that *Miller* and *Montgomery* require particular considerations during parole proceedings under either the Eighth or Fourteenth Amendments, it is clear Oklahoma's parole procedures meet those requirements. In 2021, after Plaintiff initiated the current lawsuit, the Supreme Court clarified the *Miller* and *Montgomery* decisions. In *Jones v. Mississippi*, __ U.S. __, 141 S.Ct. 1307, 1319 (2021), the Supreme Court held that *Miller* operates on a *presumption* that a trial court will consider an offender's youth prior to sentencing him. The trial court is neither required to make a finding of permanent incorrigibility, nor make any record whatsoever that it did in fact consider the youth of the juvenile offender prior to sentencing.

> [A]n on-the-record sentencing explanation is not necessary to ensure that a sentencer considers a defendant's youth. . . . [I]f the sentencer has discretion to consider the defendant's youth, the sentencer necessarily *will* consider the defendant's youth, especially if defense counsel advances an argument based on the defendant's youth.

*Id. See also White v. State*, 499 P.3d 762, 769 (Okla. Crim. App. 2021) ("In light of *Jones*, the State no longer has the burden under the federal constitution of proving a juvenile defendant is irreparably corrupt and permanently incorrigible beyond a reasonable doubt. *Jones* makes clear that such is neither an eligibility factor nor a factual predicate to a life-without-parole sentence but, instead, is a

17

mere sentencing factor." (citing *Jones*, 141 S.Ct. at 1316-21)).[5]

In the present case, Plaintiff essentially argues that *Miller* and *Montgomery* require the PPB to allow a juvenile homicide offender, including those sentenced only to life *with* the possibility of parole, to demonstrate maturation and rehabilitation. Indeed, in Plaintiff's Complaint, he relies on *Montgomery* to assert that an inmate must be allowed to demonstrate this by showing, *inter alia*, that he "has become 'a model member of the prison community;' whether the juvenile offender participates in programs and is a 'trainer and coach;' and whether the juvenile offender offers 'advice and serve[s] as a role model to other inmates.'" Doc. No. 1 at 18-19 (quoting *Montgomery*, 136 S.Ct. at 736).

As previously established, Oklahoma law specifically requires the PPB to consider the "the conduct and the record of [] said person during his custody in the Department of Corrections[.]" Okla. Stat. tit. 57, § 332.7(L) ("It shall be the duty of the [PPB] to cause an examination to be made at the penal institution where the person is assigned, and to make inquiry into the conduct and the record

---

[5] In his Complaint, Plaintiff cites to *Stevens v. State*, 422 P.3d 741 (Okla. Crim. App. 2018) and *Luna v. State*, 387 P.3d 956 (Okla. Crim. App. 2016) for the proposition that state courts are required to make a specific finding on-the-record that a juvenile homicide offender is "irreparably corrupt and permanently incorrigible" before sentencing him to life without parole. Doc. No. 1 at 22 n.2, 33. However, as recognized in *White*, each of those cases were subsequently overruled by *Jones*, which specifically held that neither *Miller* nor *Montgomery* required such a finding. *White*, 499 P.3d at 769.

of the said person during his custody in the Department of Corrections, which shall be considered as a basis for consideration of said person for recommendation to the Governor for parole."). An inmate's conduct and record would inherently encompass the *Montgomery* factors included in Plaintiff's Complaint, and provide the PPB an opportunity to consider the inmate's maturation and rehabilitation.

Plaintiff does not mention in his Complaint that the PPB is required to consider the inmate's conduct and record while incarcerated, though he complains the PPB is not required to "provide any verbal or written explanation of its decision." Doc. No. 1 at 27. However, in *Jones*, the Court held that *Miller's* requirement that the sentencer consider the youth of the juvenile homicide offender is sufficient and that no on-the-record finding is necessary. *Jones*, 141 S.Ct. at 1319. While the *Jones* decision was referencing the initial sentencer's obligation, the same reasoning would apply to the entity considering parole for a juvenile homicide offender. Thus, it is sufficient that the PPB is required to consider the inmate's conduct and record since incarcerated to determine whether the inmate has demonstrated maturation and rehabilitation. Based on *Jones*, if the PPB is required to consider the inmate's conduct and record since being imprisoned, an "on-the-record [parole] explanation is not necessary to ensure" it

does so. *Jones,* 141 S.Ct. at 1319.[6]

As previously explained, the Court concludes that Plaintiff's claims fail because they rely upon *Miller* and *Montgomery*, which are not implicated by Plaintiff's sentences. *Bias*, 2020 WL 10731244, at *3; *Lewis*, 2019 WL 1500671, at *1. However, to the extent Plaintiff argues that *Miller* and *Montgomery* either create a liberty interest and/or are relevant to Plaintiff's sentences for Eighth Amendment purposes, it is clear, particularly in light of *Jones*, that Oklahoma's parole procedures meet any requirement set forth in these Supreme Court decisions.[7] Thus, Defendants' Motion requesting dismissal of Plaintiff's claims

---

[6] Additionally, neither *Miller*, *Montgomery*, nor *Jones* require that a sentencer only consider a defendant's youth prior to sentencing, it is merely one factor. *White*, 499 P.3d at 769. Thus, the fact that the PPB is required to consider the inmate's prior criminal record, *see* Okla. Stat. tit. 57, § 332.7(J), *as well as* the inmate's record during imprisonment does not negate the fact that the parole procedures meet any requirement a party could discern in these Supreme Court cases.

[7] Defendants also request dismissal of Plaintiff's claims based on his failure to exhaust administrative remedies, as required under the Prison Litigation Reform Act ("PLRA"). Doc. No. 37 at 15-17 (citing Doc. No. 36-15). In his Response, Plaintiff dies not dispute that he has not exhausted but instead argues that he was not required to do so because his claims related to parole procedures rather than conditions of confinement. He also contends that the issue of exhaustion cannot be resolved in a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) because Defendants relied on materials outside the Complaint to request dismissal on this basis. Doc. No. 46 at 15-21. The Court agrees with Plaintiff's first contention with the exception of one potential claim. Plaintiff asserts that Oklahoma's prohibition on classifying an inmate sentenced to life imprisonment lower than medium security prevents his ability to participate in certain programs in which he could further demonstrate maturation and rehabilitation. Doc. No. 1 at 20, 28-32. Plaintiff specifically states that "security classifications

seeking declarative judgment that Oklahoma's parole procedures are unconstitutional should be granted.

VI. <u>State Law Claim</u>

In his second claim, Plaintiff contends that Okla. Const. Art. II, § 9's prohibition against cruel or unusual punishment is violated by his sentences and/or Oklahoma's parole process. Doc. No. 1 at 39-40. Because Plaintiff has not asserted a viable federal claim herein and has not alleged or established any basis for jurisdiction for this claim other than supplemental jurisdiction, *see id.* at 8, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claim.  *See* 28 U.S.C. § 1367(c)(3); *cf., Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction

---

determine virtually all aspects of an individual's conditions of confinement." *Id.* at 28. To the extent Plaintiff intended to rely on this classification prohibition as a basis for a separate legal claim, Plaintiff was required to first exhaust administrative remedies prior to asserting said claim in a lawsuit. 42 U.S.C. § 1997e. *See also Ross v. Blake*, 578 U.S. 632, 635 (2016) ("The [PLRA] of 1995 mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions."). As to Plaintiff's second contention, in the Court's Order notifying Plaintiff of his right to respond to Defendants' Motion to Dismiss, the Court specifically stated that when a dispositive motion is supported by documentary evidence outside of the Complaint, the motion may be converted to one for summary judgment and the opposing party should respond with similar evidence as is appropriate under Federal Rule of Civil Procedure 56. Doc. No. 38 at 1.

over any remaining state claims.").[8]

RECOMMENDATION

Based on the foregoing findings, the undersigned recommends Defendants' Motion to Dismiss (Doc. No. 37) be GRANTED. Additionally, to the extent Plaintiff intended to assert a federal claim based on the Oklahoma Department of Corrections' security classification prohibition, the Motion should be converted to a Motion for Summary Judgment and should be granted. The parties are advised of their right to file an objection to this Second Supplemental Report and Recommendation with the Clerk of this Court by <u>December 7th</u>, 2022, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Second Supplemental Report and Recommendation would waive appellate review of the recommended ruling. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991); *cf. Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Second Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and

---

[8] Based on the recommendation herein, it is unnecessary to address Defendants' additional bases for dismissal.

any pending motion not specifically addressed herein is deemed denied.

Dated this  17th  day of November, 2022.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE