## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

DWAIN EDWARD THOMAS,       )
                                      )
              Plaintiff,       )
                                      )
v.                               )     Case No. 20-cv-944-D
                                      )
KEVIN STITT, et al.,         )
                                      )
             Defendants.   )

## DEFENDANT GOVERNOR J. KEVIN STITT'S MOTION FOR
## <u>SUMMARY JUDGMENT AND BRIEF IN SUPPORT</u>

Phillip G. Whaley, OBA #13371
Grant M. Lucky, OBA #17398
RYAN WHALEY
400 North Walnut Avenue
Oklahoma City, OK  73104
(405) 239-6040
(405) 239-6766 FAX
pwhaley@ryanwhaley.com
glucky@ryanwhaley.com

*Attorneys for Defendant*
*J. Kevin Stitt, Governor of Oklahoma*

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

STATEMENT OF MATERIAL FACTS AS TO WHICH NO GENUINE ISSUE EXISTS...........................................................................................................3

ARGUMENT AND AUTHORITIES.....................................................................7

  I. STANDARD OF REVIEW ..........................................................................7

  II. THIS COURT SHOULD GRANT GOVERNOR STITT JUDGMENT, OR OTHERWISE DISMISS THE CLAIMS AGAINST HIM, BECAUSE THOMAS CANNOT ESTABLISH A LEGALLY SUFFICIENT ARTICLE III CASE AND CONTROVERSY ...................................................................................7

    A. Thomas lacks standing to sue the Governor..................................9

      i. Thomas cannot establish an injury-in-fact fairly traceable to the Governor..........10

      ii. Thomas cannot demonstrate the alleged injury will be redressed by a favorable decision against the Governor .......................................................13

    B. Thomas cannot establish ripeness..................................................14

  III. THIS COURT SHOULD GRANT GOVERNOR STITT JUDGMENT BECAUSE OKLAHOMA'S STATUTORY SCHEME DOES NOT VIOLATE THE EIGHTH AMENDMENT ....................................................................15

    A. Thomas's life with parole sentence does not implicate, let alone violate, Miller v. Alabama, 567 U.S. 460 (2012) ................................................16

      i. Thomas was not sentenced under a mandatory life-without-parole sentencing scheme..........................................................................20

      ii. Thomas was sentenced to life with the possibility of parole, not life without the possibility of parole........................................................22

    B. Thomas's life sentence does not implicate, let alone violate, Graham v. Florida, 560 U.S. 48 (2010) because he was convicted of first-degree murder.....................................24

  IV. OKLAHOMA'S DISCRETIONARY PAROLE SYSTEM DOES NOT VIOLATE THE EIGHTH AMENDMENT ........................................................25

CONCLUSION ....................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ACORN v. City of Tulsa, Okla.*,
  835 F.2d 735 (10th Cir. 1987) ............................................................................. 12, 13

*Adler v. Wal-Mart Stores, Inc.*,
  144 F.3d 664 (10th Cir. 1998) ....................................................................................5

*Aptive Envtl., LLC v. Town of Castle Rock*,
  959 F.3d 9617 (10th Cir. 2020) ................................................................................10

*Brown v. Buhman*,
  822 F.3d 1151 (10th Cir. 2016) ..................................................................................6

*Budder v. Addison*,
  851 F.3d 1047 (10th Cir. 2017) ................................................................................23

*Champagne Metals v. Ken-Mac Metals, Inc.*,
  458 F.3d 1073 (10th Cir. 2006) ..................................................................................5

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)...................................................................................... 9, 10

*Cnty. Court of Ulster Cnty. v. Allen*,
  442 U.S. 140 (1979)...................................................................................................11

*Comm. to Save the Rio Hondo v. Lucero*,
  102 F.3d 445 (10th Cir. 1996) ...................................................................................11

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006)....................................................................................................6

*Davis v. McCollum*,
  798 F.3d 1317 (10th Cir. 2015) ........................................................................ 15, 18

*Espinoza v. Rogers*,
  470 F.2d 1174 (10th Cir. 1972) ...............................................................................10

*Ex parte Young*,
  209 U.S. 123 (1908)...................................................................................................12

*FDA v. Alliance for Hippocratic Medicine*,
  602 U.S. 367 (2024)....................................................................................................8

*Garrison v. Gambro, Inc.*,
    428 F.3d 933 (10th Cir. 2005) ................................................................5

*Graham v. Florida*,
    560 U.S. 48 (2010).................................................................passim

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*,
    442 U.S. 1 (1979)....................................................................24

*Heredia v. Blythe*,
    638 F.Supp.3d 984 (W.D. Wisc. 2022)...........................................25, 26

*Initiative and Referendum Inst. v. Walker*,
    450 F.3d 1082 (10th Cir. 2006) ....................................................12

*Jones v. Dowling*,
    CIV-20-1311-C, 2021 WL 1550349 (W.D. Okla. Apr. 20, 2021) (unpublished). ...............20

*Jones v. Mississippi*,
    593 U.S. 98 (2021)..................................................................passim

*Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996 ........................................6

*Lewis v. Okla. Pardon & Parole Bd.*,
    CIV-18-1205-G, 2019 WL 1500671 (W.D. Okla. Apr. 5, 2019) (unpublished)......20, 22, 23

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)...........................................................5, 6, 7, 11

*Meyer v. McMaster*,
    394 F. Supp. 3d 550 (D.S.C. 2019) ...................................................10

*Miller v. Alabama*,
    567 U.S. 460 (2012).................................................................passim

*Montgomery v. Louisiana*,
    577 U.S. 190 (2016................................................................16, 17, 23

*Morgan v. McCotter*,
    365 F.3d 882 (10th Cir. 2004) .......................................................12

*Mullaney v. Wilbur*,
    421 U.S. 684 (1975)..................................................................21

*Murthy v. Missouri*,
    144 S.Ct. 1972 (2024) ...............................................................6, 9

*Nat'l Org. for Women, Inc. v. Scheidler,*
  510 U.S. 249 (1994)...................................................................................................6

*New Mexicans for Bill Richardson v. Gonzales,*
  64 F.3d 1495 (10th Cir. 1995) ...............................................................................7

*Ohio Adult Parole Auth. v. Woodard,*
  523 U.S. 272 (1998)...............................................................................................25

*Ong Vue v. Henke,*
  746 Fed. App'x 780 (10th Cir. 2018) (unpublished).............................................24

*Pavatt v. Oklahoma,*
  2007 OK CR 19, 159 P.3d 272 ..............................................................................19

*Peck v. McCann,*
  43 F.4th 1116 (10th Cir. 2022) ...............................................................................7

*People v. Wilson,*
  220 N.E.3d 1068 (Ill. 2023) ..................................................................................18

*Ponder v. Brownlee,*
  506CV00134SWW, 2007 WL 3231804 (E.D. Ark. Nov. 1, 2007) (unpublished)........... 9, 10

*Reynoldson v. Shillinger,*
  907 F.2d 124 (10th Cir. 1990) ...............................................................................11

*Roper v. Simmons,*
  543 U.S. 551 (2005)...............................................................................................13

*Salmon Spawning & Recovery All. v. Gutierrez,*
  545 F.3d 1220 (9th Cir. 2008) ...............................................................................11

*Schrock v. Wyeth, Inc.,*
  727 F.3d 1273 (10th Cir. 2013) .............................................................................21

*Shirley v. Chestnut,*
  603 F.2d 805 (10th Cir. 1979) ...............................................................................24

*Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.,*
  165 F.3d 1321 (10th Cir. 1999) ...............................................................................5

*State v. Dejaynes-Beaman,*
  8 N.W.3d 779 (Neb. 2024) ....................................................................................18

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009)..............................................................................................6, 7

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014)..................................................................................7, 9

*United States v. Greer,*
    881 F.3d 1241 (10th Cir. 2018) ...........................................................15

*United States v. Sparks,*
    941 F.3d 748 (5th Cir. 2019)............................................................ 18, 20

*US Ecology, Inc. v. Dep't of Interior,*
    231 F.3d 20 (D.C. Cir. 2000) ...............................................................11

*Warth v. Seldin,*
    422 U.S. 490 (1975)................................................................................6

*White v. State,*
    2021 OK CR 29, 499 P.3d 762 ........................................................ 18, 19

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008)..................................................................................11

*Wyo. Sawmills Inc. v. U.S. Forest Serv.,*
    383 F.3d 1241 (10th Cir. 2004) ...........................................................12

**Statutes**

21 O.S. § 701.9(A) (1991) ..................................................................... 1, 18

57 O.S. § 332......................................................................................... 4, 8

57 O.S. § 332.7(A) (1991) ..................................................................... 2, 21

57 O.S. § 332.7(E)(1)............................................................................ 2, 22

57 O.S. §§ 332–332.21 ......................................................................... 4, 26

28 U.S.C. § 2201 ......................................................................................10

28 U.S.C. § 2254(d)(1)(C) ......................................................................20

42 U.S.C. § 1983 ...................................................................................9, 10

**Rules**

Fed. R. Civ. P. 12(h)(3) ................................................................................................6

Fed. R. Civ. P. 56(a) ...................................................................................................5

**Other Authorities**

OKLA. ADMIN. CODE 515:25-1-1 ........................................................................... 4, 26

OKLA. CONST. art. VI, § 10 ................................................................................ 4, 8, 26

U.S. CONST. amend. VIII........................................................................................13

U.S. CONST. art. III, § 2 ..........................................................................................5

## INTRODUCTION

Defendant, Governor J. Kevin Stitt ("Governor" or "Governor Stitt") respectfully requests summary judgment in his favor pursuant to Fed. R. Civ. P. 56 because there is no substantial controversy as to any material fact, and Governor Stitt is entitled to judgment as a matter of law.[1]

First, Plaintiff Dwain Edward Thomas ("Thomas") has not, and cannot, overcome his burden of establishing two jurisdictional prerequisites: standing and ripeness. Thomas cannot establish a concrete or imminent legally cognizable injury-in-fact that is fairly traceable to the Governor or his office that is redressable by this Court. Oklahoma law conditions the Governor's exercise of his parole power upon a favorable recommendation from the Oklahoma Pardon and Parole Board ("Board" or "PPB"). Because the Board has never made a favorable recommendation, the Governor has had no opportunity to consider, grant, or deny Thomas parole. Thus, Thomas cannot establish a concrete, imminent, or actual injury fairly traceable to the Governor—a necessary prerequisite to establish legal standing before this Court for his claims. Even if Thomas could allege an injury-in-fact traceable to the Governor, such an injury is too immature, speculative, or contingent to warrant judicial intervention at this juncture. As a result, the jurisdictional and prudential limitations of Article III prevent this Court from adjudicating Thomas's claims against the Governor.

---

[1] As previously noted by this Court (Doc. 59), Plaintiff's Complaint seeks only prospective declaratory and injunctive relief against Governor Stitt pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201 for alleged violations of the Eighth Amendment. Since Plaintiff's federal claims are legally infirm, the Court should decline Plaintiff's request for supplemental jurisdiction over Plaintiff's claim that Oklahoma's parole system violates the Oklahoma Constitution, Art. II, § 9.

Second, even if Thomas's claims satisfied Article III, Thomas cannot overcome his burden of establishing Oklahoma's statutory scheme violates the Eighth Amendment to the U.S. Constitution. The undisputed fact that Thomas was sentenced under a discretionary sentencing scheme to life *with* the possibility of parole for the three murders he committed as a juvenile is fatal to his claim. *Graham v. Florida,* 560 U.S. 48 (2010) (holding life without parole sentences for juveniles for nonhomicide offenses violates the Eighth Amendment); *Miller v. Alabama*, 567 U.S. 460 (2012) (holding mandatory life without parole sentences for juvenile murderers violates the Eighth Amendment). As a matter of law, Thomas cannot establish a *Graham* claim because he committed three homicide offenses. As a matter of law, Thomas cannot establish a *Miller* claim because he was not sentenced under a mandatory life without parole sentencing scheme and is eligible for parole.

Even if Thomas could establish his life *with the possibility of parole* sentence somehow violated *Miller*, the undisputed fact that Thomas is eligible for parole remedies any violation. And nothing in precedent supports an argument that more than consideration for parole—*i.e.* a certain parole procedure preferred by the inmate—is required to pass constitutional muster. If that weren't enough to foreclose Thomas's challenge to Oklahoma's parole system, the undisputed fact that Oklahoma's parole system is discretionary, allowing the decision maker to consider any mitigating factor including youth at the time of the offense, is. In sum, despite being granted the opportunity to "develop facts" and "legal arguments,"[2] the undisputed facts establish the Governor is entitled to judgment in his favor as a matter of law.

---

[2] Doc. 24.

## STATEMENT OF MATERIAL FACTS AS TO WHICH
## NO GENUINE DISPUTE EXISTS

1.      In 1997, Thomas was convicted of three counts of Murder in the District Court of Sequoyah County, Oklahoma following his guilty plea. Doc. 1 at ¶ 1; Judgment & Sentence, attached as Ex. 1.

2.      Thomas was fifteen (15) years old at the time of the murders. Doc. 1 at ¶¶ 1, 108.

3.      At the time Thomas was convicted and sentenced in 1997, Oklahoma did not have a mandatory life-without-parole sentencing scheme for homicide offenders. 21 O.S. § 701.9(A) (1991) ("[A] person who is convicted . . . of murder in the first degree shall be punished by death, by imprisonment for life without parole or by imprisonment for life."); Order Affirming Denial of Post-Conviction Relief at 2, No. PC-2019-116 (Okla. Crim. App. Sept. 6, 2019), attached as Ex. 2.

4.      The district court sentencing Thomas in 1997 retained discretion to impose a sentence less than life without parole. *Id.*

5.      The district court sentencing Thomas in 1997 retained discretion to consider the mitigating qualities of youth before sentencing Thomas. *Id.*

6.      Thomas was sentenced to life imprisonment on each of the three Murder counts, with the first two counts to run concurrently and the third count running consecutively. Doc. 1 at ¶¶ 1, 8; Ex. 1.

7.      Thomas was sentenced to life *with* the possibility of parole. Ex. 1; Ex. 2 at 2; Pardon & Parole Board Docketing Worksheet, attached as Ex. 3.

8.      Thomas's life sentences are parole-eligible. *Id*; Doc. 1 at ¶¶ 16, 55, 61.

9.      Thomas became eligible for parole after serving fifteen (15) years of a portion of his sentence. *See* Ex. 3; 57 O.S. § 332.7(A) (1991) ("Upon completion of one-third (⅓) of the sentence of any person in the custody of the Department of Corrections, such person shall be eligible for consideration for a parole . . . ."); Ex. 2 at 2.

10.     In April of 1997, the Board calculated that Thomas would be eligible for parole in December of 2010 and informed Thomas that he was eligible to apply for parole on the October 2010 parole docket. Ex. 3; Notification of Parole Consideration Date, attached as Ex. 4.

11.     Thomas has been considered for parole by the Board five times: October 12, 2010, October 13, 2013, October 12, 2016, October 9, 2019, and on October 12, 2022. 2010 Ballot and Investigative Report, attached as Ex. 5; 2013 Ballot and Investigative Report, attached as Ex. 8; 2016 Ballot and Investigative Report, attached as Ex. 7; 2019 Ballot and Investigative Report, attached as Ex. 8; 2022 Ballot and Investigative Report, attached as Ex. 9.

12.     Thomas "has never been recommended for parole" by the Board. Doc. 1 at ¶ 55; Exs. 5-9.

13.     Thomas is eligible to be reconsidered for parole every three (3) years. 57 O.S. § 332.7(E)(1).

14.     Before an inmate is considered for parole by the Board, the inmate has the opportunity to provide information to a parole investigator. Bates Depo. Tr. at 72–81, 89–99, attached as Ex. 10; Parole Interview Questionnaire, attached as Ex. 11.

15.     The parole investigator prepares an investigative report for the Board to review. Exs. 5-9; Luck Depo. Tr. at 82–84, attached as Ex. 12; Doyle Depo. Tr. at 55, 69, 101, attached as Ex. 13; Bates Ex. 10 at 56–57.

16.     The investigative report provides the inmate's birthdate and the case number for the convicted offense, among other information. Exs. 5-9; Luck Ex. 12 at 111–17, 164–65.

17.     "The information that would be needed to know the individual's age at the time the crime was committed is available on every [investigative] report." Luck Ex. 12 at 164; *Id.* at 111–17, 165–66; Doyle Ex. 13 at 67–69; Exs. 5-9.

18.     "[I]t was common for" parole investigators to include the fact "an inmate [] was a juvenile at the time of their arrest . . . in the investigator recommendation" section of the investigative report. Luck Ex. 12 at 116; Exs. 7-8.

19.     When an inmate is being considered for executive clemency by the Board, the inmate and members of the public have the opportunity to write "opposition and support letters" to the Board. Luck Ex. 12 at 82; *Id.* at 88–89; Doyle Ex. 13 at 55; Thomas support letters, attached as Ex. 14.

20.     In addition to the investigative report, the Board reviews opposition and support letters submitted in considering whether to recommend executive clemency. Luck Ex. 12 at 82, 88–89; Doyle Ex. 13 at 55, 69, 101; Bates Ex. 10 at 26–27, 56–57.

21.     Nothing in Oklahoma law prevents the Board from considering any fact or circumstance, including youth of the offender, in exercising its discretion to recommend

executive clemency. *See* Okla. Const. art. VI, § 10; 57 O.S. §§ 332–332.21; Okla. Admin. Code 515:25-1-1 *et seq.*

22.     "[A] PPB member could consider an inmate's age at the time of the underlying offense as a part of their consideration to grant or deny parole . . . ." Luck Ex. 12 at 164.

23.     Board members deposed by Thomas establish that they actually consider an inmate's youth at the time of the offense as a factor in exercising their discretion to recommend executive clemency. Doyle Ex. 13 at 67 (describing that she found "age of the inmate at the time of the underlying offense" "to be an important factor in [her] decision making."); Luck Ex. 12 at 123 (describing that he considered the investigator recommendation "[s]imilar to all the other information included in the investigative report. . . . [I]t provides information to include in making a decision.").

24.     The Governor's authority to grant—and even to consider—commutations, pardons, and paroles is contingent upon a favorable recommendation made by the Board. Okla. Const. art. VI, § 10; 57 O.S. § 332.

25.     Because the Governor has not received a favorable recommendation by the Board for Thomas's parole, the Governor has never considered granting or denying Thomas parole. Doc. 1 at ¶ 55, 111; Exs. 5-9; Gov'r's Resp. to Pl.'s First Set of Requests for Admission at 5, 10 and 14, attached as Ex. 15.

26.     Nothing in Oklahoma law prevents the Governor from considering any fact or circumstance, including youth of the offender, in exercising his discretion to grant executive clemency. *See* Okla. Const. art. VI, § 10; 57 O.S. §§ 332–332.21; Okla. Admin. Code 515:25-1-1 *et seq.*

27.    "[U]pon the Pardon and Parole Board's submission of favorable parole or clemency recommendations to the Governor, the Governor considers within the Constitutional and statutory bounds whether to grant parole or clemency, on a case-by-case basis." Gov'r's Resps. To Pl.'s First Set of Interrogatories at 3, attached as Ex. 16.

## ARGUMENT AND AUTHORITIES

### I.    STANDARD OF REVIEW.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While "the burden of showing the absence of a genuine issue of material fact is upon the movant, the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts." *Champagne Metals v. Ken-Mac Metals, Inc.¸* 458 F.3d 1073, 1084 (10th Cir. 2006) (cleaned up).  In so doing, the "nonmovant cannot rest upon [their] pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [they] carr[y] the burden of proof." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (quoting *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). What's more, an issue of fact is only material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

### II.    THIS COURT SHOULD GRANT GOVERNOR STITT JUDGMENT, OR OTHERWISE DISMISS THE CLAIMS AGAINST HIM, BECAUSE THOMAS CANNOT ESTABLISH A LEGALLY SUFFICIENT ARTICLE III CASE AND CONTROVERSY.

Article III limits federal court jurisdiction to actual cases and controversies. *See* U.S. CONST. art. III, § 2; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992). One of the three

doctrines within the case-and-controversy requirement is standing. *See Brown v. Buhman*, 822 F.3d 1151, 1163 (10th Cir. 2016). Standing is "a jurisdictional requirement which remains open to review at all stages of the litigation." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994); *see also Warth v. Seldin,* 422 U.S. 490, 498 (1975). Accordingly, a "court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). And "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) ("If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so.").

As the Supreme Court has explained: "standing is not dispensed in gross." *Id.* at 353 (citation omitted). A plaintiff must therefore "demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek." *Murthy v. Missouri*, 144 S.Ct. 1972, 1988 (2024) (cleaned up).[3] A plaintiff also "bears the burden of establishing standing as of the time he brought th[e] lawsuit and maintaining it thereafter." *Id.* at 1986 (citation omitted). When "the parties have taken discovery, the plaintiff cannot rest on 'mere allegations,' but must instead point to factual evidence." *Id.* (citing *Lujan*, 504 U.S. at 561).

Another of the three doctrines within the case-and-controversy requirement is ripeness. Because the doctrine of ripeness originates from the same Article III limitation,

---

[3] As the Supreme Court put it in a somewhat different context: "[i]f the right to complain of one administrative deficiency automatically conferred the right to complain of all administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).

standing and ripeness often "boil down to the same question." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 n.5 (2014) (citation omitted); *see also Peck v. McCann*, 43 F.4th 1116, 1133 (10th Cir. 2022) ("Standing and ripeness are closely related in that each focuses on whether the harm asserted has matured sufficiently to warrant judicial intervention."). But ripeness focuses "not on whether the plaintiff was in fact harmed, but rather whether the harm asserted has matured sufficiently to warrant judicial intervention." *Peck*, 45 F.4th at 1133 (citation omitted). Ripeness—like standing—is a constitutional prerequisite to a court's exercise of jurisdiction. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498–99 (10th Cir. 1995) ("The question of whether a claim is ripe for review bears on a court's subject matter jurisdiction under the case or controversy clause of Article III of the United States Constitution.").

## A. *Thomas lacks standing to sue the Governor.*

To show standing, "[t]he party invoking federal jurisdiction bears the burden of establishing" an injury in fact, or "an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) 'actual or imminent, not "conjectural" or "hypothetical,"' . . . a causal connection between the injury and the conduct complained of[,]" and a likelihood "the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561, 560 (citations omitted). Standing "is not 'an ingenious academic exercise in the conceivable,'" but requires "a factual showing of perceptible harm." *Summers*, 555 U.S. at 499 (citation omitted). When a plaintiff seeks forward-looking or injunctive relief, he "must establish a substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction against them." *Murthy*, 144 S.Ct. at 1993. And the "links in the

chain of causation" between the alleged harm and conduct cannot be "too speculative or too attenuated . . . ." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 382–84 (2024). Here, Thomas cannot make these showings as to any claim against the Governor or his office.

      i.    <u>Thomas cannot establish an injury-in-fact fairly traceable to the Governor</u>.

Thomas cannot establish the concrete or imminent invasion of a legally protected interest to support his claims against the Governor. Although Thomas makes much ado about the Governor's legal authority to grant parole,[4] the Governor's authority to grant—and even to consider—commutations, pardons, and paroles is contingent upon a favorable recommendation made by the Board. OKLA. CONST. art. VI, § 10; 57 O.S. § 332. And the undisputed facts establish that Thomas "has never been recommended for parole" by the Board. Doc. 1 at ¶¶ 55, 111; Exs. 5-9. Because the Governor has not received a favorable recommendation by the Board for Thomas's parole, the Governor has not—and could not have—considered Petitioner's parole request. Thus, Thomas cannot point to any action or inaction by the Governor that has directly injured him.

Instead, Thomas complains that "**if** the PPB were to recommend Mr. Thomas for release, the governor who receives such a recommendation can reject it for any reason without explanation and without any opportunity for review." Doc. 1 at ¶ 112 (emphasis added). Put another way, the only injury or constitutional delict Thomas alleges against the Governor is the mere *future* possibility of having his parole request denied *if* the Board makes a favorable recommendation. This supposed injury is conjectural, abstract, and hypothetical. It falls woefully short of establishing the concrete or imminent injury-in-fact required by Article III.

---

[4] *See, e.g.,* Doc. 1 at ¶¶ 17, 47, 57, 69–78, 106.

As the Supreme Court has "repeatedly reiterated[,]" a "threatened injury must be certainly impending to constitute injury in fact, and . . . allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up).

Thomas's supposed injury relies on a highly attenuated chain of future possibilities and contingencies that cannot be predicted to any degree of likelihood. Before it can even become a possibility, a Board of five individuals must make a particular determination. If that possibility becomes a reality, then the Governor must make a particular determination. And as Thomas repeatedly emphasizes, that theoretical determination rests within the discretion—and inside the mind—of one individual: the Governor. Thus, Thomas "can only speculate as to how" the Governor will exercise his discretion upon a favorable recommendation by the Board. *Clapper*, 568 U.S. at 412.[5] Thomas cannot establish that an injury from the Governor's potential denial of his parole request is certainly impending or fairly traceable to the Governor. *See Driehaus*, 573 U.S. at 158; *Murthy*, 144 S.Ct. at 1994.

In a similar case out of the Eastern District of Arkansas, a plaintiff serving a life sentence on a first-degree murder conviction challenged the constitutionality of the Arkansas clemency procedures under 42 U.S.C. § 1983. *See Ponder v. Brownlee*, 506CV00134SWW, 2007 WL 3231804, at *1–2 (E.D. Ark. Nov. 1, 2007) (unpublished). The plaintiff argued that a change in the guidelines for the grant of clemency after his conviction violated the *ex post facto* and the equal protection clauses of the U.S. Constitution. *Id.* at *2. The defendants, which included the Governor of Arkansas, moved to dismiss in part for lack of standing and ripeness.

---

[5] Recently, Governor Stitt approved the Board's recommendation of parole for a 47-year old inmate who received a life sentence with the possibility of parole for a murder he committed as a juvenile.  *See* Ex. 17.

*Id.* The defendants highlighted the fact that plaintiff had not re-applied for clemency in the eight years following his first and only denial, despite a letter at that time advising him he could reapply for clemency after four years. *Id.* at *3.

The court agreed with the defendants and granted the motion to dismiss. *Id.* The court explained that because plaintiff never sought clemency under the new guidelines, he "does not know whether his waiver request would be, or would have been, granted, nor whether the request for review that would follow the waiver might be granted." *Id.* Consequently, "[a]ny injury is speculative, at best, as to what might have happened had Plaintiff sought this relief." *Id.* Because Thomas's supposed injury as to the Governor is equally speculative here, this Court should reach the same conclusion as the Eastern District of Arkansas in *Ponder*.

The conjectural nature of Thomas's supposed injury also fails to satisfy the traceability requirement of standing. After all, "[a] party does not satisfy the traceability requirement when they 'can only speculate' about whether a party will pursue a certain action in a specific way." *Meyer v. McMaster*, 394 F. Supp. 3d 550, 561 (D.S.C. 2019) (quoting *Clapper*, 568 U.S. at 413); *see also Aptive Envtl., LLC v. Town of Castle Rock*, 959 F.3d 961, 977 (10th Cir. 2020) ("To satisfy the traceability requirement, the defendant's conduct must have caused the injury.") (internal marks and citations omitted). Since no conduct of the Governor is at issue, Thomas cannot establish a substantial likelihood that any injury was caused by that (non-existent) conduct. Because the Governor or his office has not "acted under color of state law" as to Thomas, Thomas cannot maintain a claim under 42 U.S.C. § 1983. *Espinoza v. Rogers*, 470 F.2d 1174, 1174 (10th Cir. 1972). Because there is no "case of actual controversy" between Thomas and the Governor, Thomas cannot maintain a claim under 28 U.S.C. § 2201. And because the

Governor has not caused Thomas any "irreparable harm[,]" Thomas cannot maintain a claim

for injunctive relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[6]

    ii.   <u>Thomas cannot demonstrate the alleged injury will be redressed by a favorable decision against the Governor.</u>

    Even if Thomas could establish a cognizable injury-in-fact as to the Governor, he

cannot establish that a favorable decision by this Court would redress that injury. To show

redressability, "a plaintiff must ... establish it is likely, as opposed to merely speculative, that

the injury will be redressed by a favorable decision." *Comm. to Save the Rio Hondo v. Lucero*, 102

F.3d 445, 452 (10th Cir. 1996). Courts have long observed that "discretionary efforts by the

agencies are too uncertain to establish redressability." *Salmon Spawning & Recovery All. v.

Gutierrez*, 545 F.3d 1220, 1228 (9th Cir. 2008); *see also US Ecology, Inc. v. Dep't of Interior*, 231 F.3d

20, 24 (D.C. Cir. 2000) ("Courts have been loath to find standing when redress depends largely

on policy decisions yet to be made by government officials."). When a favorable ruling

"depends on the unfettered choices" of actors "whose exercise of broad and legitimate

discretion the courts cannot presume either to control or to predict[,]" the plaintiff must

"adduce facts showing that those choices have been or will be made in such manner as to

produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562.

    Here, Thomas cannot make that showing. Again, Thomas's supposed injury depends

on a chain of possibilities and future choices made by six individuals, that neither Thomas nor

---

[6] Nor can Thomas rely on supposed injuries to other inmates not before the Court. *See Cnty. Court of Ulster Cnty. v. Allen*, 442 U.S. 140, 155 (1979) ("As a general rule, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations."); *see also Reynoldson v. Shillinger*, 907 F.2d 124, 125 (10th Cir. 1990).

this Court can presume to control or predict. Because the Governor has not taken any action, there is nothing to redress. Moreover, the only relief this Court could award to cure such a hypothetical injury would clash with the long-standing recognition that "the court cannot control the exercise of the discretion of an officer." *Ex parte Young*, 209 U.S. 123, 158 (1908); *see also Wyo. Sawmills Inc. v. U.S. Forest Serv.*, 383 F.3d 1241, 1249 (10th Cir. 2004) (explaining that when a government agency "has complete discretion as to whether to offer the opportunity sought by the plaintiff," a reviewing court "do[es] not have the power to grant the only relief that would rectify the alleged injury.").

### B.    *Thomas cannot establish ripeness.*

For many of the same reasons Thomas cannot establish standing, he cannot establish his claims against the Governor are ripe. Unlike standing, which "is designed to determine who may institute the asserted claim for relief[,]" ripeness "addresses a timing question: when in time is it appropriate for a court to take up the asserted claim." *ACORN v. City of Tulsa, Okla.*, 835 F.2d 735, 738 (10th Cir. 1987) (citation omitted). Thus, ripeness "focuses not on whether the plaintiff was in fact harmed, but rather whether the harm asserted has matured sufficiently to warrant judicial intervention." *Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004) (citation omitted). An injury is not ripe if it "involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082, 1097 (10th Cir. 2006).[7]

---

[7] In two recent cases, the Tenth Circuit rejected on ripeness grounds a juvenile defendant's constitutional claim that a murder charge should not be transferred for adult prosecution because the penalties were unconstitutional when applied to a juvenile. *See United States v. Doe*, 58 F.4th 1148 (10th Cir. 2023); *United States v. B.N.M.*, 107 F.4th 1152 (10th Cir. 2024). The

Here, Thomas's alleged injury—a possibility the Governor may in the future exercise his discretion in a way that harms him—is not ripe for adjudication under Article III. It relies entirely on uncertain or contingent future events that neither Thomas nor this Court can predict.[8] Disposing of Thomas's purely abstract claims against the Governor would not result in hardship to Thomas, who can pursue any viable claims against other defendants. *See ACORN*, 835 F.2d at 739 (explaining the two factors of ripeness as "the fitness of the issue for judicial decision" and "the hardship to the parties of withholding court consideration.") (citation omitted).

## III. THIS COURT SHOULD GRANT GOVERNOR STITT JUDGMENT BECAUSE OKLAHOMA'S STATUTORY SCHEME DOES NOT VIOLATE THE EIGHTH AMENDMENT.

The Eighth Amendment to the U.S. Constitution prevents the infliction of "cruel and unusual punishments" and thus "guarantees individuals the right not to be subjected to excessive sanctions." U.S. CONST. amend. VIII; *Roper v. Simmons*, 543 U.S. 551, 560 (2005). Proportionality of punishment is the touchstone of the Eighth Amendment. *Graham v. Florida*, 560 U.S. 48, 59 (2010). When it comes to punishment for juveniles, the Supreme Court has articulated through a series of cases that "youth matters in sentencing." *Jones v. Mississippi*, 593 U.S. 98, 105 (2021). Starting with *Roper*, the Supreme Court held that capital punishment for juvenile murders violated the Eighth Amendment. In *Graham*, the Supreme Court held that

---

Court found that the potential penalties (death and/or life without parole) rely upon contingent future events that may or may not occur.

[8] For that matter, if the Governor were to approve a recommendation by the Board for Thomas's parole, any premise for judicial intervention would dissipate. For this additional reason, the jurisdictional and "important prudential limitations" of the ripeness doctrine support the Court "stay[ing] [its] hand until the issues in this case have become more fully developed." *Morgan*, 365 F.3d at 890.

life without parole sentences for juveniles who committed *nonhomicide* offenses violated the Eighth Amendment. And then in *Miller v. Alabama*, 567 U.S. 460 (2012), the Supreme Court held that mandatory life without parole sentences for juvenile murders violated the Eighth Amendment.

Here, the undisputed fact that Thomas was sentenced to life *with* the possibility of parole for the three murders he committed as a juvenile is fatal to his Eighth Amendment claim. As a matter of law, Thomas cannot establish a *Roper* claim because he was not given capital punishment. As a matter of law, Thomas cannot establish a *Graham* claim because he committed three homicide offenses. As a matter of law, Thomas cannot establish a *Miller* claim because he was not sentenced under a mandatory life without parole sentencing scheme and is eligible for parole. In sum, the undisputed material facts establish that the Governor is entitled to judgment in his favor.

A.    *Thomas's life with parole sentence does not implicate, let alone violate,* **Miller v. Alabama**, *567 U.S. 460 (2012).*

In *Miller v. Alabama*, 567 U.S. 460, 479 (2012), the Supreme Court held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." There, two juvenile murderers were "sentenced to life without the possibility of parole" under state law requiring "a mandatory minimum punishment of life without parole." *Id.* at 469. It was undisputed that "[i]n neither case did the sentencing authority have any discretion to impose a different punishment." *Id.* at 465.

In striking down these mandatory life-without-parole sentencing schemes, the Supreme Court explained that "mandatory penalties, by their nature, preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to

it." *Id.* at 476. By preventing the sentencer from considering the offender's age and its hallmark features, a mandatory life-without-parole "scheme poses too great a risk of disproportionate punishment." *Id.* at 479. Put another way:

> By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory-sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment.

*Id.* at 489. Thus, while the Supreme Court did not foreclose a sentencer's ability to impose a life-without-parole sentence in juvenile homicide cases, it did announce "that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.*

The Tenth Circuit has repeatedly rejected invitations to extend *Miller's* logic "beyond invalidating mandatory life-without-parole sentencing schemes for juveniles . . . ." *United States v. Greer*, 881 F.3d 1241, 1248 (10th Cir. 2018) (citation omitted). As the Tenth Circuit explains: "*Miller* invalidated sentencing schemes stripping 'the sentencing authority' of 'discretion to impose a different punishment' than life without possibility of parole on a juvenile offender." *Davis v. McCollum*, 798 F.3d 1317, 1320 (10th Cir. 2015) (citation omitted). Yet "*Miller* said nothing about non-mandatory life-without-parole sentencing schemes and thus cannot warrant granting relief from a life-without-parole sentence imposed under such a scheme." *Id.* at 1321. In other words, the right in *Miller* "is narrowly drawn: it protects juveniles who commit crimes from the mandatory imposition of life without the possibility of parole." *Id.*

This precedent is as persuasive as it is binding. The *Miller* decision itself continually and carefully framed its holding as prohibiting life-without-parole sentences under *mandatory*

sentencing schemes. *See, e.g., Miller*, 567 U.S. at 470, 474–77, 479, 487, 489 (referencing "mandatory life-without-parole sentences[,]" "mandatory penalty schemes[,]" "mandatory scheme[s,]" "a sentencing scheme that mandates life in prison without possibility of parole[,]" and "mandatory-sentencing schemes"). Notably absent from even the liveliest language of *Miller* is any indication that life-without-parole sentences are themselves unconstitutional. No doubt, the Supreme Court could have articulated that principle if it so intended. Instead, *Miller* expressly stated it "do[es] not foreclose a sentencer's ability to make that judgment" to impose "this harshest possible penalty" and "does not categorically bar a penalty for a class of offenders or type of crime—as, for example, we did in *Roper* or *Graham*." 567 U.S. at 480, 483.[9] Accordingly, the unmistakable intent of the careful language used in *Miller* was to announce a narrow rule: prohibiting only *mandatory* life-without-parole sentencing schemes.

The Supreme Court has now confirmed the narrow scope and application of *Miller* in *Jones v. Mississippi*, 593 U.S. 98 (2021). There, an inmate convicted of homicide as a juvenile argued that a sentencing authority's discretion to consider youth and impose a lesser sentence than life-without-parole did not satisfy *Miller. Id.* at 103–04. The inmate argued that *Miller* required the sentencing authority to "either (i) make a separate factual finding of permanent incorrigibility, or (ii) at least provide an on-the-record sentencing explanation with an 'implicit finding' of permanent incorrigibility." *Id.* (citation omitted). The Supreme Court rejected that argument, clarifying that "[i]n a case involving an individual who was under 18 when he or she

---

[9] When the issue came before the Supreme Court again in *Montgomery v. Louisiana*, 577 U.S. 190 (2016), the Court could have articulated a categorical bar on life-without-parole sentences. Instead, the Court reiterated that "*Miller* did not foreclose a sentencer's ability to impose life without parole on a juvenile . . . ." *Id.* at 195.

committed a homicide, a State's discretionary sentencing system is both constitutionally necessary and constitutionally sufficient." *Id.* at 105.[10] In other words, *Jones* confirmed that *Miller* demands nothing more than a discretionary sentencing procedure for juvenile murderers, which is satisfied so long as a sentencing authority has "discretion to consider youth before imposing a life-without-parole sentence . . . ." *Id.* at 109.

In holding that separate fact findings and on-the-record explanations are not required before sentencing juvenile murders to life-without-parole, the Court reaffirmed that *Miller* did not "impose a categorical bar against life without parole for murderers under 18." *Id.* After all, under discretionary sentencing procedures, "the sentencer will necessarily consider relevant mitigating circumstances." *Id.* at 116. Thus, "a sentencing explanation is [] not necessary to ensure that the sentencer in juvenile life-without-parole cases considers the defendant's youth" because the discretion alone "suffices to ensure individualized consideration of a defendant's youth . . . ." *Id.* at 116, 118; *see also id.* at 111–12 ("The key assumption of both *Miller* and *Montgomery* was that discretionary sentencing allows the sentencer to consider the defendant's youth, and thereby helps ensure that life-without-parole sentences are imposed only in cases where that sentence is appropriate in light of the defendant's age."). To hold otherwise would "intrud[e] more than necessary upon the States' sovereign administration of their criminal justice systems." *Id.* at 117 (quoting *Montgomery v. Louisiana*, 577 U.S. 190, 211 (2016)).

Even before *Jones*, the majority of courts agreed with the Tenth Circuit that discretionary life-without-parole juvenile sentences do not violate *Miller*. *See Davis*, 798 F.3d at

---

[10] The Supreme Court also expressly found that "*Montgomery* did not . . . add to *Miller*'s requirements" *Id.* at 109.

1321; *United States v. Sparks*, 941 F.3d 748, 753–54 (5th Cir. 2019) (collecting cases). As the Fifth Circuit summarized: "if a sentencing court has the option to choose a sentence other than life without parole, it can choose life without parole without violating *Miller*." *Sparks*, 941 F.3d at 754. In the wake of *Jones*, the narrow scope of *Miller* is now unmistakable. *See, e.g., White v. State*, 2021 OK CR 29, ¶ 6, 499 P.3d 762, 766; *State v. Dejaynes-Beaman*, 8 N.W.3d 779, 784 (Neb. 2024); *People v. Wilson*, 220 N.E.3d 1068, 1076–77 (Ill. 2023) (collecting cases). Because Thomas was not sentenced under a mandatory life without parole sentencing scheme, and is actually eligible for parole, he cannot establish a *Miller* violation.

  i. <u>Thomas was not sentenced under a mandatory life-without-parole sentencing scheme</u>.

  Unlike the state law at issue in *Miller*, Oklahoma did not mandate life-without-parole sentences for juveniles when Thomas was sentenced in 1997. At the time of Plaintiff's offense, Oklahoma law provided that "a person who is convicted of . . . murder in the first degree shall be punished by death, by imprisonment for life without parole or by imprisonment for life." 21 O.S. § 701.9(A) (1991). Plainly, the sentencing court retained discretion over whether to sentence a homicide offender to life without the possibility of parole.

  This legal conclusion has been confirmed by the Tenth Circuit, the U.S. Supreme Court, and the Oklahoma Court of Criminal Appeals. In *Davis v. McCollum*, 798 F.3d 1317, 1321 (10th Cir. 2015), the Tenth Circuit rejected the same *Miller* claim asserted by Thomas here, highlighting the fact that at the time of the plaintiff's sentencing in 1992 "Oklahoma allowed the sentencing authority discretion to impose life with the possibility of parole when sentencing a person convicted of first-degree murder." (citing 21 O.S. § 701.9(A) (1991)). The court further cited with approval an Oklahoma Court of Criminal Appeals decision that

"found *Miller* inapposite because Davis's jury had the 'option of imposing a sentence of life *with* a possibility for parole.'" (citation omitted). Unsurprisingly, the Oklahoma Court of Criminal Appeals has confirmed that a juvenile homicide offender sentenced to life without parole in 1998 was sentenced "under a discretionary sentencing system that was constitutionally sufficient." *White v. State*, 2021 OK CR 29, ¶ 7, 499 P.3d 762, 767; *see also Pavatt v. Oklahoma,* 2007 OK CR 19, ¶ 30, 159 P.3d 272, 283 ("[I]n 1987, the Oklahoma Legislature amended our law to add 'life without parole' . . . as a third punishment option for first degree murder, alongside life imprisonment (with at least the possibility of parole) and death."). Likewise, the U.S. Supreme Court confirmed the discretionary nature of Oklahoma's sentencing statute in *Miller* and *Jones*. In *Miller,* the Court excluded Oklahoma from the list of "29 jurisdictions mandating life without parole for children," and relied on a party brief omitting Oklahoma from the list of states mandating life without parole for adults. 567 U.S. at 482 n.9, 486 n.13; *see also* Brief of Resp. (Alabama) at 18. In *Jones*, the Court included Oklahoma in the list of "15 States that used discretionary sentencing regimes." 593 U.S. at 112 & n.5.

If that weren't confirmation enough, the Oklahoma Court of Criminal Appeals specifically found in *Thomas's own post-conviction relief proceeding* that he committed his murders "in 1995 before the statute was enacted requiring service of a minimum percentage of his sentences[,]" and was therefore "eligible for parole consideration after serving fifteen years of each of his consecutive life sentences." Ex. 2 at 2. In sum, the sentencing court had the discretion to impose life with the possibility of parole at Thomas' sentencing in 1997, and Thomas was not sentenced under a mandatory life-without-parole sentencing scheme.

21

Thomas's claim that Oklahoma operates a mandatory life-without-parole sentencing scheme is wholly without merit. Thomas cannot establish a *Miller* Eighth Amendment violation.

      ii.    <u>Thomas was sentenced to life with the possibility of parole, not life without the possibility of parole.</u>

Even if *Miller* did extend to discretionary life-without-parole juvenile sentencing systems, the undisputed fact that Thomas was sentenced to life with the possibility of parole is fatal to his *Miller* claim. To establish a *Miller* violation, at a minimum Thomas must show: (1) that he was sentenced to life without parole and (2) that his sentence was imposed without an individualized assessment. *See Miller*, 567 U.S. at 479; *Jones*, 593 U.S. at 118; *Lewis v. Okla. Pardon & Parole Bd.*, CIV-18-1205-G, 2019 WL 1500671, at *1 (W.D. Okla. Apr. 5, 2019) (unpublished). Thomas cannot overcome these burdens. Thomas was not sentenced to life without the possibility of parole, and plainly, "sentences of life *with* the possibility of parole or early release do not implicate *Miller*." *Sparks*, 941 F.3d at 754. Nor does Thomas complain about a lack of individualized assessment at sentencing.[11]

On March 20, 1997, Thomas was "[s]entenced to a term of Life imprisonment" on three counts of murder in the first degree, with the first two counts to run concurrently and the third count running consecutively. Ex. 1; *see also* Doc. 1 at ¶¶ 1, 8. Nothing in that Judgment & Sentence indicates Thomas was given a life-without-parole sentence. Instead, under

---

[11] Indeed, Thomas cannot challenge his conviction or sentence here without (1) improperly and collaterally attacking the final judgment of the Oklahoma Court of Criminal Appeals that Thomas "has a material opportunity to obtain release on parole during his natural lifetime from his sentences[,]" Ex. 2 at 2, and (2) conceding his 1983 claim is properly one for post-conviction relief. Of course, any post-conviction claim fails for another reason: it is permanently time-barred. *See, e.g.*, 28 U.S.C. § 2254(d)(1)(C); *Jones v. Dowling*, CIV-20-1311-C, 2021 WL 1550349 (W.D. Okla. Apr. 20, 2021) (unpublished).

applicable Oklahoma law, Thomas was eligible for parole after serving approximately fifteen (15) years or one-third (1/3) of his life sentence. *See* Ex. 2 at 2; 57 O.S. § 332.7(A) (1991) ("Upon completion of one-third (⅓) of the sentence of any person in the custody of the Department of Corrections, such person shall be eligible for consideration for a parole . . . ."). Accordingly, in April of 1997, the Board calculated that Thomas would be eligible for parole in December of 2010 and informed Thomas that he was eligible to apply for parole on the October 2010 parole docket. *See* Exs. 3–4. Again, the Oklahoma Supreme Court subsequently confirmed Thomas's parole-eligibility under Oklahoma law. *See* Ex. 2; *supra* Section III(A)(i).[12]

Any doubt as to Thomas's parole eligibility was erased on October 12, 2010, when 30-year-old Thomas was considered for and denied parole by the Board. *See* Ex. 5. At 33 years old on October 13, 2013, Thomas was considered for and denied parole by the Board for the second time. *See* Ex. 6. At 36 years old on October 12, 2016, Thomas was considered for and denied parole by the Board for the third time. *See* Ex. 7. At 39 years old on October 9, 2019, Thomas was considered for and denied parole by the Board for the fourth time. *See* Ex. 8. At 42 years old on October 12, 2022, Thomas was considered for and denied parole by the Board for the fifth time. *See* Ex. 9.

In sum, Thomas is not only eligible for parole, but the Oklahoma Pardon and Parole Board has actually considered Thomas for parole on **five (5) occasions**. In light of this overwhelming and conclusive evidence, even Thomas conceded in his Complaint that his life

---

[12] This Court is bound by that construction of state law. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("This Court, however, repeatedly has held that state courts are the ultimate expositors of state law, . . . and that we are bound by their constructions except in extreme circumstances not present here."); *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) ("It is axiomatic that state courts are the final arbiters of state law." (quotation omitted)).

sentences were parole-eligible. *See* Doc. 1 at ¶¶ 15, 55, 61. Indeed, Thomas remains eligible for parole every three (3) years. *See* 57 O.S. § 332.7(E)(1).

The same issue also arose in *Lewis v. Oklahoma Pardon & Parole Bd.*, CIV-18-1205-G, 2019 WL 1500671 (W.D. Okla. Apr. 5, 2019) (unpublished). Just like Thomas, the plaintiff in *Lewis* was convicted of first-degree murder for a crime committed as a juvenile and sentenced to life *with* the possibility of parole. *Id.* at *1. Similar to Thomas, the plaintiff had "been considered for—and denied—parole a total of six times" and asserted he had "been denied a 'meaningful opportunity for release' . . . in violation of *Miller* . . . ." *Id.* The court rejected the plaintiff's Eighth Amendment claim, finding *Miller* "inapplicable because 'Plaintiff was not sentenced to life-without-parole and has in fact been considered for parole on at least six occasions.'" *Id.* (citation omitted).

So too here, *Miller* is inapplicable because Thomas was not sentenced to life-without-parole under a mandatory sentencing scheme. Instead, Thomas received a sentence that is not precluded by *Miller* through a non-mandatory sentencing process that was consistent with *Miller*. Judgment is proper in the Governor's favor.

**B.    *Thomas's life sentence does not implicate, let alone violate,* Graham v. Florida, *560 U.S. 48 (2010) because he was convicted of first-degree murder.***

Thomas cannot establish a violation of *Graham v. Florida*, 560 U.S. 48 (2010) because he was convicted of first-degree murder. The issue presented in *Graham* was "whether the Constitution permits a juvenile offender to be sentenced to life in prison without parole *for a nonhomicide crime.*" *Id.* at 52 (emphasis added). The Supreme Court held that "a juvenile offender convicted of a nonhomicide crime" must be given "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at 75. By its own terms, *Graham*

24

has no application in juvenile sentences for homicide offenses. *See id.* at 82 ("The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender *who did not commit homicide.*" (emphasis added)).

The Supreme Court and Tenth Circuit have since reiterated that *Graham* was a "categorical ban" on the imposition of life-without-parole sentences for nonhomicide offenses. *Miller*, 567 U.S. at 475; *Montgomery*, 577 U.S. at 206 (describing that *Graham* "held that the Eighth Amendment bars life without parole for juvenile nonhomicide offenders"); *Budder v. Addison*, 851 F.3d 1047, 1054 (10th Cir. 2017) ("[T]he Court in Graham announced a categorical rule, not a fact-specific holding."). Thus, "[f]ederal courts must determine only whether a case falls within the categorical holding announced by the Supreme Court." *Budder*, 851 F.3d at 1055.

Juvenile offenders convicted of *homicide* plainly "do[] not fall within the category of juvenile offenders entitled to a meaningful opportunity for release under *Graham.*" *Lewis*, 2019 WL 1500671 at *2 (quotations omitted). Here, Thomas was convicted of three counts of homicide. *See* Ex. 1. *Graham* is therefore inapplicable and "[i]t is . . . unnecessary to determine whether the complained-of state parole procedures afforded Plaintiff an opportunity to demonstrate maturity and rehabilitation." *Lewis*, 2019 WL 1500671 at *2 (quotations omitted). Judgment is proper in the Governor's favor.

## IV.  OKLAHOMA'S DISCRETIONARY PAROLE SYSTEM DOES NOT VIOLATE THE EIGHTH AMENDMENT.

Even if Thomas could establish his life sentence violated *Miller*, the undisputed fact that Thomas is eligible for parole remedies any violation. The Supreme Court made plain in *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016) that "[a] State may remedy a *Miller* violation

by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." Afterall, "[a]llowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." *Id.* And again, if the harshest available juvenile sentence passes constitutional muster so long as it was not mandatory, *see supra* Section III(A), the lesser parole-eligible sentence certainly passes constitutional muster. Thus, to the extent this Court could reach Thomas's parole argument, the fact that Oklahoma allows Thomas to be considered for parole defeats his Eighth Amendment claim.

Nothing in precedent supports an argument that more than consideration for parole is required to pass constitutional muster. Instead, case law repeatedly emphasizes that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). The Tenth Circuit has made this principle explicit when it comes to Oklahoma's parole system, holding that an inmate "doesn't have a liberty interest in receiving meaningful consideration for parole under Oklahoma law . . . ." *Ong Vue v. Henke*, 746 Fed. App'x 780, 782–83 (10th Cir. 2018) (unpublished); *see also Shirley v. Chestnut*, 603 F.2d 805, 807 (10th Cir. 1979) (explaining that Oklahoma's discretionary parole system "does not establish a liberty interest."). Perhaps more pertinent here, even *Graham* made clear in the case of juvenile non-homicide offenders that "[a] State is not required to guarantee eventual freedom . . ." *Graham*, 560 U.S. at 75; *see also id.* ("The Eighth Amendment does not foreclose the possibility that

persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life.").

It follows, then, that parole-eligible convicted persons, including juveniles like Thomas, have no constitutional right to certain preferred parole procedures under the Eighth Amendment. Again, no binding authority says otherwise. To the contrary, the U.S. Supreme Court has concluded "[t]here is . . . no substantive expectation of clemency" and "[u]*nder any analysis*, the Governor's executive discretion need not be fettered by the types of procedural protections sought by respondent." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 282–83 (1998) (emphasis added). Thomas cannot evade this binding precedent by framing his claim as one for relief under the Eighth Amendment.

In *Heredia v. Blythe*, 638 F.Supp.3d 984 (W.D. Wisc. 2022), the district court rejected similar arguments to the ones presented by Thomas. There, a class of juvenile offenders sentenced to at least 470 months in jail challenged the constitutionality of Wisconsin's parole process under the Eighth Amendment. *Id.* at 987. The plaintiffs argued the parole commission "has no special policies or procedures for parole applicants who were juveniles at the time of their offense[,]" and sought to extend *Graham's* meaningful opportunity to obtain release language into the parole context. *Id.* at 988, 992. The court had no difficulty rejecting the plaintiffs' argument as to juvenile homicide offenders, finding it could not be reconciled with *Jones* and that "none [of the circuit courts] have accepted it." *Id.* at 1001. The court posited that "[i]f it is permissible under the Eighth Amendment for a sentencing court to preclude the possibility of parole at the outset for a juvenile offender convicted of homicide, then it follows that the Eighth Amendment places few, if any, limitations on a parole board's decision whether

to grant or deny parole to the same offender later." *Id.* Going even further, the court found "plaintiffs haven't adduced evidence of a uniform practice by defendants to impose life sentences on juvenile offenders," highlighting "numerous instances in which the commission has considered an offender's youth when making parole decisions, and . . . no examples in which the commission refused to do so." *Id.* at 1001–02. In sum, "the Constitution does not require Wisconsin to have an ideal parole system." *Id.* at 987.

If all this were not enough to foreclose Thomas's challenge to Oklahoma's parole system, the discretionary nature of that system is. Nothing in Oklahoma law prevents the Board (or the Governor) from considering any fact or circumstance, including youth of the offender, in exercising the discretion to recommend (or grant) executive clemency. *See* OKLA. CONST. art. VI, § 10; 57 O.S. §§ 332–332.21; OKLA. ADMIN. CODE 515:25-1-1 *et seq.* Nothing in the record suggests any Defendant "expressly refuses *as a matter of law* to consider relevant mitigating circumstances" or "refuses as a matter of law to consider the defendant's youth . . . ." *Jones*, 593 U.S. at 115 n.7. Instead, "a PPB member could consider an inmate's age at the time of the underlying offense as a part of their consideration to grant or deny parole . . . ." Luck Ex. 12 at 164. The Governor likewise has stated that "upon the Pardon and Parole Board's submission of favorable parole or clemency recommendations to the Governor, the Governor considers within the Constitutional and statutory bounds whether to grant parole or clemency, on a case-by-case basis." Ex. 16 at 3. Furthermore, members of the Board have testified they actually consider an inmate's youth at the time of the offense as a factor in exercising their discretion to recommend executive clemency. Doyle Ex. 13 at 67 (describing that she found "age of the inmate at the time of the underlying offense" "to be an important

factor in [her] decision making."); Luck Ex. 12 at 123 (describing that he considered the investigator recommendation "[s]imilar to all the other information included in the investigative report. . . . [I]t provides information to include in making a decision."). Both Doyle and Luck were on the Board and participated in several of Thomas's parole review decisions.

The Board is also provided "[t]he information . . . needed to know the individual's age at the time the crime was committed . . . ." Luck Ex. 12 at 164; *Id.* at 111 –17, 165–66; Doyle Ex. 13 at 67–69; Exs. 5-9. Even if that weren't the case, the parole applicant is afforded the opportunity to present information about his or her juvenile status through letters, which the Board reviews in considering whether to recommend executive clemency. *See* Luck Ex. 12 at 82, 88–89; Doyle Ex. 13 at 55, 69, 101; Bates Ex. 10 at 26–27, 56–57. Consistent with the same, when Thomas was considered for parole by the Board, the investigative reports included information needed to know his age at the time of the murders. *See* Exs. 5-9. In fact, the 2016 and 2019 investigative reports specifically highlighted that "Thomas has been in DOC custody for these offenses since he was seventeen" and that "Thomas was 15 at the time of his arrest . . . ." Exs. 7–8. Moreover, Thomas himself submitted letters highlighting the fact that he was 15 years old at the time of the murders. *See* Ex. 14. Upon a favorable recommendation by the Board, that same information is forwarded to the Governor or his Office. *See* Ex. 15 at 6. Consequently, it is undisputed that Oklahoma's parole system is discretionary, allowing the decision maker to consider any mitigating factor including youth at the time of the offense. These discretionary parole systems, like discretionary sentencing schemes, "allow[] the [decision maker] to consider the defendant's youth, and thereby helps ensure that life-without-

parole sentences are imposed only in cases where that sentence is appropriate in light of the defendant's age." *Jones*, 593 U.S. at 111–12. Again, "if the [decision maker] has discretion to consider the defendant's youth, the [decision maker] necessarily *will* consider the defendant's youth, especially if defense counsel advances an argument based on the defendant's youth." *Id.* at 114. The undisputed fact that Thomas's age at the time of the offense was known to the Board here, and actually considered by the Board, provides proof this Court can confidently accept this binding presumption.

In sum, discretionary parole systems provide a meaningful opportunity to obtain early release based on demonstrated maturity and rehabilitation as a matter of law. Thus, Thomas's Eighth Amendment claim fails and judgment is proper in favor of the Governor.

## CONCLUSION

For these many reasons, Defendant Governor J. Kevin Stitt respectfully requests this Court enter an order granting summary judgment in his favor against the Plaintiff on all claims, and for all such other and further relief as the Court deems just and equitable.

Respectfully submitted,


*s/Phillip G. Whaley*
Phillip G. Whaley, OBA No. 13371
Grant M. Lucky, OBA No. 17398
RYAN WHALEY
400 North Walnut Avenue
Oklahoma City, OK 73104
Phone: (405) 239-6040
Fax: (405) 239-6766
pwhaley@ryanwhaley.com
glucky@ryanwhaley.com

*Attorneys for Defendant*
*J. Kevin Stitt, Governor of Oklahoma*

30

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 30, 2024, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

_Phillip G. Whaley_
Phillip G. Whaley