```
                                                                    1

 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF OKLAHOMA
 2

 3   DWAIN EDWARD THOMAS,            )
                                     )
 4                  Plaintiff,       )
                                     )
 5   -vs-                            )   CASE NO. CIV-20-944-D
                                     )
 6   KEVIN STITT, et al.,            )
                                     )
 7                  Defendants.      )

 8

 9

10

11                        * * * * *

12                  DEPOSITION OF ADAM LUCK

13              TAKEN ON BEHALF OF THE PLAINTIFF

14                    ON JULY 26, 2024

15                 VIA ZOOM VIDEOCONFERENCE

16                        * * * * *

17

18

19

20

21

22

23

24

25   STENOGRAPHICALLY REPORTED BY:  CHRYSTAL MCDANIEL, CSR
```

EXHIBIT 12

Case 5:20-cv-00944-D   Document 114-12   Filed 08/30/24   Page 2 of 17
DWAIN EDWARD THOMAS vs
KEVIN STITT
Adam Luck
July 26, 2024

82

1     A    That's --

2     Q    -- just want to make sure -- sorry, go on.

3     A    That's just how it's commonly referred to.

4     Q    Yeah, I just want to make sure we're on the same

5 page when we're referring to Stage 1 and jacket review.

6     What does PPB do on -- or during Stage 1?

7     A    We review the investigative report that is

8 prepared by the investigative staff.  And I believe at that

9 stage, there's also the possibility for opposition and

10 support letters as well.  And we review those as well.

11     Q    And Stage 2, it's fair to refer to Stage 2 review

12 as personal appearance?

13     A    Yes.

14     Q    All right.  Let's start with Stage 1.

15     What materials does PPB receive before an

16 inmate's jacket review?

17     A    The material I just stated.

18     Q    Is there anything else?

19     A    Not that I recall.

20     Q    And those are the only things that PPB members

21 consider in Stage 1?

22     A    Yes.

23     Q    Can you ask for more information during Stage 1?

24     A    You could at the meeting.  I think that was the

25 most information that we would get leading up to the

Case 5:20-cv-00944-D   Document 114-12   Filed 08/30/24   Page 3 of 17
DWAIN EDWARD THOMAS vs
KEVIN STITT
Adam Luck
July 26, 2024

83

1  meeting.
2      Q    And how do you go about asking for more
3  information at the meeting?
4      A    When the case was being voted on, you could
5  request more information or ask any question that you had
6  about the case.
7      Q    And when you had more information, who would you
8  ask?
9      A    The administrative staff.
10     Q    What kind of information would PPB members
11 request when requesting for more information?
12     A    It could -- could be anything about the case.
13     Q    And did you review -- usually review everything
14 received ahead of a PPB meeting for each inmate?
15     A    Yes.
16     Q    And you did that while you were chair as well?
17     A    Yes.
18     Q    And do you have reason to believe you ever failed
19 to review everything received for each inmate ahead of a
20 PPB meeting?
21     A    No.
22     Q    Previously, we talked about the PPB investigator
23 report.  And you said, I believe, that you receive it about
24 two weeks before the PPB meeting, correct?
25     A    I said two to three weeks.

Case 5:20-cv-00944-D   Document 114-12   Filed 08/30/24   Page 4 of 17
DWAIN EDWARD THOMAS vs
KEVIN STITT
Adam Luck
July 26, 2024

84

1  Q    Two to three weeks, okay.
2       Did you receive a full copy of the
3  investigative -- or the investigator report?
4  A    Yes.
5  Q    What information is in the PPB investigator
6  report?
7  A    There's a lot of different information presented
8  in the report.  I believe that is the document that we
9  provided.
10 Q    And how much time on average did you spend
11 reviewing all the materials, not just the PPB investigator
12 report that you got ahead of the PPB meetings?
13 A    I don't recall.  It was spread out throughout
14 those two to three weeks prior to the meeting.
15 Q    But in the aggregate, do you recall about how
16 much time you would spend to prepare for each meeting?
17 A    No.
18 Q    Going back to the PPB investigator report.
19      Do you know how the parole investigator compiles
20 that report?
21 A    No, I do not.
22 Q    So you don't know what information that report is
23 based on?
24 A    I don't know how they gather that information.
25 Q    And that investigator report contains a

Case 5:20-cv-00944-D   Document 114-12   Filed 08/30/24   Page 5 of 17
DWAIN EDWARD THOMAS vs
KEVIN STITT
Adam Luck
July 26, 2024

88

1  Objection.

2  THE WITNESS: The only other thing that I
3  can recall is the dockets. But like I said, I don't recall
4  everything that was provided and everything that I have
5  stored from what was provided.

6  Q   (BY MS. CHIANG) Let's move on from parole
7  investigator reports and turn to other materials PPB
8  reviewed at Stage 1.

9  You mentioned you received letters during jacket
10 review, right?

11 A   I believe so.

12 Q   Can you describe those letters.

13 A   As I stated previously, it's letters in support
14 or in opposition to an individual's parole.

15 Q   Who were those letters from?

16 A   They could be from anybody involved in the case.

17 Q   And when did you get them during the review
18 process?

19 A   I don't recall exactly, but at some point leading
20 up to the meeting.

21 Q   Was it before, after, or at the same time you
22 received the investigator reports?

23 A   After.

24 Q   And you always reviewed -- or sorry, strike that.

25 And you always received those letters after you

Case 5:20-cv-00944-D   Document 114-12   Filed 08/30/24   Page 6 of 17
DWAIN EDWARD THOMAS vs
KEVIN STITT
Adam Luck
July 26, 2024

89

1   received the investigator reports?
2       A   Yes, because the information provided in the
3   investigative reports was compiled and -- and sent out
4   ahead of the deadline people had to send in letters of
5   support or opposition leading up to the meeting.
6       Q   So just to understand your personal process, you
7   would review the investigative reports, right?  And then
8   you would get the letters after you received the
9   investigative reports.
10       So did you review the letters after you had
11   already received the investigative reports?
12       A   Yes.
13       Q   And then if you received the letters after you
14   reviewed them, at that time, did you re-review the
15   investigative reports after you got those letters or
16   somehow, you know, married them together?
17       A   Yes.
18       Q   Did you receive -- strike that.
19       Did you recall ever receiving support letters or
20   protest letters after the deadline for submission?
21       A   No.
22       Q   Do you receive letters of support and letters of
23   opposition at the same time?
24       A   Yes.
25       Q   In what format did you receive these letters?

Case 5:20-cv-00944-D   Document 114-12   Filed 08/30/24   Page 7 of 17
DWAIN EDWARD THOMAS vs
KEVIN STITT
Adam Luck
July 26, 2024

111

1  the investigator report?
2     A    I don't recall.  I don't recall when I first
3  received the investigative report or what I thought when I
4  reviewed his investigative report.
5     Q    Were you aware that Mr. Thomas is a JLWP inmate?
6     A    I would have been made aware of that by reviewing
7  the investigative report.
8     Q    How would you have been made aware of that by
9  reviewing the investigative report?
10    A    The investigative report includes that
11 information.
12    Q    Let's pull up that investigative report.
13         MS. CHIANG:  It's on Tab 16, previously
14 marked as Plaintiff's Exhibit 37.
15         (Plaintiff's Exhibit No. 37 previously marked for
16         identification.)
17    Q    (BY MS. CHIANG)  Mr. Luck, I'm showing you
18 Plaintiff's Exhibit 37.  It's titled Investigative Report
19 and it's dated on the top September 8th, 2019.
20         Mr. Luck, do you recognize this document?
21    A    Yes.
22    Q    And you produced this -- a copy of this document
23 to us yesterday, right?
24    A    Yes.
25    Q    And this is the investigative report for Mr.

Case 5:20-cv-00944-D   Document 114-12   Filed 08/30/24   Page 8 of 17
DWAIN EDWARD THOMAS vs
KEVIN STITT
Adam Luck
July 26, 2024

112

1   Thomas's parole consideration in 2019, correct?
2        A    Yes.
3        Q    Is this a true and accurate copy of Mr. Thomas's
4   parole investigative report from September of 2019?
5        A    I can only see the top part of it, but it appears
6   to be so.
7        Q    Well, I'll give you a moment to review the
8   document.  And just let me know when you're ready to
9   proceed.
10       A    Okay.
11            Can you please scroll down.
12            Please scroll down.
13            Please scroll down.
14            Please scroll down.
15            Please scroll down.
16            Please scroll down.
17            Okay.  I'm done.
18       Q    All right.  So we see up top right there the date
19  report completed is September 8th, '19 -- 2019.
20            So you reviewed this report as part of your
21  consideration of Mr. Thomas in -- in 2019?
22       A    That's correct.
23       Q    You reviewed the entire report?
24       A    Yes.
25       Q    Is there anything on this first page that

Case 5:20-cv-00944-D   Document 114-12   Filed 08/30/24   Page 9 of 17

DWAIN EDWARD THOMAS vs
KEVIN STITT

Adam Luck
July 26, 2024

113

1   indicates the inmate's JLWP status?
2       A   JLWP was not a term that was used very
3   frequently, but the information that JLWP would indicate,
4   meaning that he was a juvenile serving a life sentence with
5   the possibility of parole, is indicated on this page.
6       Q   Where is it indicated on this page?
7       A   The fact that he is a juvenile would have been
8   indicated -- I mean, one, it was indicated in the
9   investigator's recommendation, but it also would have been
10  indicated by his birth date and the case number.
11      Q   But you would have to, if you were a PPB member
12  looking at this first page to figure out the age of Mr.
13  Thomas at the time of incarceration, calculate the date
14  between his birth date and his reception date, correct?
15      A   No.  It was provided in the investigator's
16  recommendation.
17      Q   But on this page, you would have to do that
18  calculation, right?
19      A   I wouldn't have just looked at this page.  I
20  would have reviewed the entire report.  So all of that
21  information is considered together.
22      Q   I understand all the information is considered
23  together, and we're going to get to the investigator's
24  recommendation, but I'm saying, on this page, it doesn't
25  actually tell you.  You know, there's no label that says

Case 5:20-cv-00944-D   Document 114-12   Filed 08/30/24   Page 10 of 17

DWAIN EDWARD THOMAS vs
KEVIN STITT

Adam Luck
July 26, 2024

114

1  age at the time of incarceration, and it gives you an age,
2  correct?
3              MS. BRIGIDA:  Object to form.
4              THE WITNESS:  There's no label that says
5  that, but that information is provided in the investigative
6  report.
7       Q    (BY MS. CHIANG)  I understand that you're talking
8  about the report as a whole.  I'm talking about the first
9  page.
10             On this first page, do you see where, on just
11 this first page, the age at the time of underlying offense?
12      A    Again, I -- I don't think you can separate out
13 one page of a report and ask if information is presented on
14 that page when it's presented elsewhere in the body of the
15 report.
16      Q    But when looking at this first page, looking at
17 the birth date and reception date, if you calculated his
18 age, that would just give you his age at the time of
19 conviction, right?
20             MS. BRIGIDA:  Object to form.
21             THE WITNESS:  No, it's -- reception date is
22 different than the case file number, which is under the
23 title CF: 1995-380.  And that's what I would look at to
24 determine the age of an individual at the time the crime
25 was committed.

Case 5:20-cv-00944-D   Document 114-12   Filed 08/30/24   Page 11 of 17
DWAIN EDWARD THOMAS vs
KEVIN STITT
Adam Luck
July 26, 2024

115

1  Q   (BY MS. CHIANG)  And how do you calculate that?
2  A   By subtracting their birth date from the case
3  file date.
4  Q   So you would need to do that work based on just
5  this information to get that?
6  A   In this report, I would not have had to do that
7  because the investigator indicated the individual's age.
8  Q   In investigative reports, these fields up here on
9  the first page, they're required fields, correct?
10  A   Yes.
11  Q   And we keep talking about -- or you keeping
12  turning to the investigator recommendation, which is on the
13  last page, right?  You can scroll down if you need to.
14  A   Yes.
15  Q   And an investigator giving a recommendation,
16  that's narrative, correct?
17  A   Correct.
18          MS. BRIGIDA:  Object to form.
19          THE WITNESS:  Yes.
20  Q   (BY MS. CHIANG)  And that is information in the
21  investigator recommendation that an investigator has the
22  option of filling in how they want to, correct?
23  A   Correct.  As far as I know.  I don't -- I don't
24  know what instructions they receive on how to fill in that
25  section, but my understanding it is -- it's based on the

Case 5:20-cv-00944-D   Document 114-12   Filed 08/30/24   Page 12 of 17
DWAIN EDWARD THOMAS vs
KEVIN STITT
Adam Luck
July 26, 2024

116

1  investigator.

2     Q    So this investigator did include -- did include
3  that Mr. Thomas was 15 at the time of his arrest, correct?

4     A    Yes.

5     Q    But investigators are not required to include
6  that information in their reports, correct?

7     A    Again, I don't know what they are or are not
8  required to put in this section.

9     Q    In each investigator report that you received for
10 an inmate who was a juvenile at the time of their arrest,
11 did they always include that information in the
12 investigator recommendation?

13    A    I can't say always, but it was common for that to
14 be included in this section.

15    Q    But not always?

16            MS. BRIGIDA:  Object to form.

17            THE WITNESS:  I don't know if it was always
18 included or not, but it was common.

19    Q    (BY MS. CHIANG)  And do you see up top -- we can
20 scroll up again.

21            THE REPORTER:  Mr. Figueroa?

22            THE VIDEOGRAPHER:  (Inaudible).

23    Q    (BY MS. CHIANG)  Oh, I'm sorry.  Could we please
24 scroll up to the top of the document again.

25            And, sorry, just one more question based on what

Case 5:20-cv-00944-D   Document 114-12   Filed 08/30/24   Page 13 of 17
DWAIN EDWARD THOMAS vs
KEVIN STITT
Adam Luck
July 26, 2024

117

1  we were just discussing.

2           If an investigator did not put that information

3  about how old an inmate was at the time of his or her

4  arrest, that information would not be on the report,

5  correct?

6           MS. BRIGIDA:  Object to form.  Asked and

7  answered.

8           THE WITNESS:  It would be on the form, like

9  I said earlier, in relation to their birth date and the

10 date of the -- the date of the case.

11      Q   (BY MS. CHIANG)  So up top, it says 2019 started

12 by Lisa Reading or Reading -- I'm not sure if you know how

13 to pronounce her last name.

14      A   I don't.

15      Q   And then sub- -- submitted by Marcus Jeffries.

16 Are you familiar with these individuals?

17      A   No, I'm not.

18      Q   And Mr. Thomas was denied in his last board

19 consideration on October 1st, 2016?

20           MS. BRIGIDA:  Object to form.  Is that a

21 question or a statement?

22      Q   (BY MS. CHIANG)  Mr. Luck, was Mr. Thomas denied

23 in his last board consideration on October 1st, 2016?

24      A   I don't know.

25      Q   On the document there, do you see last board

Case 5:20-cv-00944-D   Document 114-12   Filed 08/30/24   Page 14 of 17
DWAIN EDWARD THOMAS vs
KEVIN STITT
Adam Luck
July 26, 2024

123

1  as outstanding evaluations, right?
2       A    Yes.
3       Q    And his prior evaluations were good to
4  outstanding, right?
5       A    Yes.
6       Q    And you earlier testified that you reviewed every
7  investigative report before PPB meetings, so you reviewed
8  the work performance section of Mr. Thomas's report, right?
9       A    Yes.
10      Q    And we already touched on the investigator
11 recommendation earlier.  But let's turn to that and scroll
12 down to the bottom of this page.
13           How did you consider information in this section?
14      A    Similar to all the other information included in
15 the investigative report.  They might -- it provides
16 information to include in making a decision.
17      Q    And I know you said that you don't recall
18 training on any specific section.
19           Do you, by chance, recall any training or
20 guidance on how to weigh the investigator recommendation?
21      A    I do not.
22      Q    Do you see in this investigator recommendation
23 here, it is in the third sentence, it says:
24           "Thomas was neither administered the LSIR nor the
25 ASUS."

Case 5:20-cv-00944-D   Document 114-12   Filed 08/30/24   Page 15 of 17

DWAIN EDWARD THOMAS vs
KEVIN STITT

Adam Luck
July 26, 2024

164

1      Q   (BY MS. CHIANG)  So to be clear, a PPB member
2  could consider an inmate's age at the time of the
3  underlying offense as part of their consideration to grant
4  or deny parole, right?
5      A   Yes.
6      Q   But a PPB member, or PPB members, don't have to
7  consider an inmate's age at the time the underlying offense
8  as part of their consideration to grant or deny parole,
9  right?
10           MS. BRIGIDA:  Object to form.
11           THE WITNESS:  There is no established list
12 of required factors board members have to consider when
13 making a decision.
14     Q   (BY MS. CHIANG)  So that's a "no," right?
15           MS. BRIGIDA:  Object to form.
16     Q   (BY MS. CHIANG)  We talked extensively about the
17 PPB investigative report and that sometimes the inmate's
18 age at the time the underlying offense could be in that
19 report, right?
20           MS. BRIGIDA:  Object to form.
21           THE WITNESS:  The information that would be
22 needed to know the individual's age at the time the crime
23 was committed is available on every report.
24     Q   (BY MS. CHIANG)  And it would typically be listed
25 in the parole investigative -- sorry, the parole

Case 5:20-cv-00944-D   Document 114-12   Filed 08/30/24   Page 16 of 17
DWAIN EDWARD THOMAS vs
KEVIN STITT
Adam Luck
July 26, 2024

165

1  investigator recommendation section, yes?
2           MS. BRIGIDA:  Object to form.
3           THE WITNESS:  The birthday and case number
4  is available on every report under those headings.
5      Q    (BY MS. CHIANG)  There's no header on the parole
6  investigator report that states JLWP inmate, is there?
7           MS. BRIGIDA:  Object to form.  Asked and
8  answered.
9           THE WITNESS:  There is no heading that uses
10 any shorthand to describe their sentence, other than the
11 case file and the amount of time they were sentenced to.
12     Q    (BY MS. CHIANG)  So on the parole investigative
13 report, the words "JLWP inmate" are not on there, correct?
14          MS. BRIGIDA:  Object to form.
15          THE WITNESS:  That is not a commonly used
16 term.
17     Q    (BY MS. CHIANG)  And there's no field on the
18 first page of a form that states, quote, age at time of
19 underlying offense, end quote, and lists the age, correct?
20          MS. BRIGIDA:  Object to form.
21          This has been asked several times and
22 answered several times, Annie.
23     Q    (BY MS. CHIANG)  You may answer.
24     A    The information that you would need to find out
25 the individual's age at the time they committed the crime

Case 5:20-cv-00944-D   Document 114-12   Filed 08/30/24   Page 17 of 17
DWAIN EDWARD THOMAS vs
KEVIN STITT
Adam Luck
July 26, 2024

166

1   is available in the report.

2        Q    But there's no field with those labels, right?

3              MS. BRIGIDA:  (Inaudible).

4              THE REPORTER:  I did not get what you said,

5   Ms. Brigida.

6              MS. BRIGIDA:  I was objecting to form.

7        Q    (BY MS. CHIANG)  You can answer my question.

8        A    I -- I feel like I've answered that several times

9   in several different ways.  There -- I -- I understand what

10  you're trying to illustrate, but the information we need to

11  know the individual's age at the time they committed the

12  crime is available in the report.

13       Q    Well, you've not answered my exact question.

14             MS. BRIGIDA:  Annie, yes, he has several

15  times.  I -- we can -- we can look back at the testimony

16  (inaudible) so...

17       Q    (BY MS. CHIANG)  Is there a field on the first

18  page of the form that states, and I quote, age at time of

19  underlying offense, end quote, and lists the age?

20             MS. BRIGIDA:  Object to form.  Asked and

21  answered.

22       Q    (BY MS. CHIANG)  Yes or no --

23             MS. BRIGIDA:  No (inaudible).

24       Q    (BY MS. CHIANG) -- is there a field on the first

25  page of the form that states age at time of underlying