CASE NO. CIV-20-944-D

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DWAIN EDWARD THOMAS,

Plaintiff,

v.

KEVIN STITT, OKLAHOMA BOARD OF CORRECTIONS,
OKLAHOMA DEPARTMENT OF CORRECTIONS, and OKLAHOMA PARDON
and PAROLE BOARD,

Defendants.

DEFENDANT STEVEN HARPE'S
MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

ALEJANDRA J. BRIGIDA, OBA#35381
LAUREN J. RAY, OBA#22694
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921 | Facsimile: (405) 521-4518

*Attorneys for ODOC, OBOC, and PPB*

August 30, 2024

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ...................................................................i

**TABLE OF AUTHORITIES** .........................................................iii

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** .................1

**STATEMENT OF THE CASE** ........................................................1

**STATEMENT OF UNDISPUTED MATERIAL FACTS** .....................3

    *Plaintiff's Judgment and Sentence* ...............................................3

    *Plaintiff's Parole Information and History* ..................................3

    *Plaintiff's Misconducts at ODOC* ..............................................5

    *Programs at ODOC* ...................................................................7

    *Parole Process* ..........................................................................9

    *ODOC's Role is the Parole Process* .........................................11

    *Plaintiff's Security Levels and Classifications at ODOC* ..........12

    *Res Judicata and Collateral Estoppel* ....................................13

    *Prison Litigation Reform Act ("PLRA")* ................................14

**STANDARD OF REVIEW** ...........................................................15

**ARGUMENT AND AUTHORITY** .................................................16

**PROPOSITION I:**

    **PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE
    REMEDIES**..............................................................................16

**PROPOSITION II:**

    **PLAINTIFF'S CLAIMS THAT THE OKLAHOMA PAROLE PROCESS
    VIOLATES THE EIGHTH AMENDMENT AND OKLAHOMA
    CONSTITUTION FAIL AS A MATTER OF LAW** ................18

**PROPOSITION III:**

    **EVEN IF PLAINTIFF WAS ENTITLED TO MEANINGFUL OPPORTUNITY FOR RELIEF, PLAINTIFF'S CLAIMS AGAINST HARPE/ODOC MUST FAIL**.................................................................23

    *A.  Plaintiff does not have a constitutional right to decide his eligibility for programs*....................24

    *B.  Plaintiff does not have a constitutional right to be housed at a prison of his choice, nor does he have a right to be classified in a security level of his choice*............................................................25

    *C.  ODOC does not play a role in the parole process prior to parole being granted*......................27

**PROPOSITION IV:**

    **PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF FOR HIS STATE CLAIMS**.................................................................................28

**PROPOSITION V:**

    **PLAINTIFF'S CLAIMS ARE SUBJECT TO *RES JUDICATA***........................28

**PROPOSITION VI:**

    **PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE OR DECLARATORY RELIEF**.............................................................................................30

**CONCLUSION**....................................................................................................30

**CERTIFICATE OF SERVICE**.........................................................................31

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ..................................................................................................................15

*Anderson v. State,*
2006 OK CR 6 ..........................................................................................................................23

*Bell v. Wolfish,*
441 U.S. 520 (1979) ..................................................................................................................26

*Bias v. Stitt,*
2020 WL 10731244 (W.D. Okla. Dec. 15, 2020) ....................................................................21

*Budder v. Addison,*
851 F.3d 1047 (10th Cir. 2017) ........................................................................................ 20, 23

*Byrd v. Cornell Corr. Inc,*
60 F. App'x 191 (10th Cir. 2003) ............................................................................................26

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ..................................................................................................................15

*Coker v. Georgia,*
433 U.S. 584 (1977) ..................................................................................................................19

*Cromwell v. County of Sac,*
94 U.S. 351 (1876) ....................................................................................................................29

*E.E.O.C. v. Horizon/CMS Healthcare Corp.,*
220 F.3d 1184 (10th Cir. 2000) ................................................................................................15

*Evans v. Mosely,*
455 F.2d 1084 (10th Cir. 1972) ................................................................................................26

*Graham v. Florida,*
560 U.S. 48 (2010) ....................................................................... 18, 19, 20, 21, 22, 24

*Green v. Mansour,*
474 U.S. 64 (1985) ....................................................................................................................30

*Jernigan v. Stuchell,*
304 F.3d 1030 (10th Cir. 2002) ................................................................16

*Jones v. Bock,*
549 U.S. 199 (2007) ................................................................... 16, 18

*Jones v. Marquez,*
526 F.Supp. 871 (1981) ..............................................................26

*Jones v. Mississippi,*
593 U.S. 98 (2021) ................................................................ 19, 20

*Kennedy v. Louisiana,*
554 U.S. 407 (2008) as modified (Oct. 1, 2008),
opinion modified on denial of reh'g 554 U.S. 945 (2008) ....................... 18, 19

*King v. Union Oil Co.,*
117 F.3d 443 (10th Cir. 1997) ......................................................29

*Landes v. McCollum,*
2014 WL 6455483, n.6 (W.D. Okla. Nov. 13, 2014) ............................23

*Lewis v. Okla. Pardon & Parole Bd.,*
2019 WL 1500671 (W.D. Okla. Apr. 5, 2019) ............................... 21, 22

*Li Zu v. Avalon Health Care, Inc.,*
806 F. App'x 610 (10th Cir. 2020) ...................................................5

*Martinez v. State,*
2019 OK CR 7 ............................................................................22

*Miller v. Alabama,*
567 U.S. 460 (2012) .....................................................19, 20, 21, 22

*Montana v. United States,*
440 U.S. 147 (1979) ....................................................................29

*Montez v. McKinna,*
208 F.3d 862 (10th Cir. 2000) ......................................................26

*Montgomery v. Louisiana,*
577 U.S. 190 (2016) ............................................................... 20, 21

*Pickens v. S.C. Dep't of Prob., Parole and Pardon,*
2022 WL 2965626 (D.S.C. July 27,2022)......................................................................................23

*Piercy v. Maketa,*
480 F.3d 1192 (10th Cir. 2007)......................................................................................15

*Porter v. Nussle,*
534 U.S. 516 (2002)......................................................................................16, 18

*Ramirez v. Collier,*
595 U.S. 411 (2022)......................................................................................16

*Revilla v. Glanz,*
7 F. Supp. 3d 1207 (N.D. Okla. 2014)......................................................................................22

*Rodgers v. Whitten,*
2020 WL 8768604 (W.D. Okla. Nov. 3, 2020), report and recommendation adopted
2021 WL 735647 (W.D. Okla. Feb. 25, 2021)......................................................................................21

*Roper v. Simmons,*
543 U.S. 551 (2005)......................................................................................18

*Ross v. Blake,*
578 U.S. 632 (2016)......................................................................................16

*Stan Lee Media, Inc. v. Walt Disney Co.,*
774 F.3d 1292 (10th Cir. 2014)......................................................................................29

*Thomas v. Parker,*
609 F.3d 1114 (10th Cir. 2010)......................................................................................16

*True v. United States,*
190 F.3d 1165 (10th Cir. 1999)......................................................................................16

*Turner v. Safley,*
482 U.S. 78 (1987)......................................................................................25

*Water Pik, Inc. v. Med-Systems, Inc.,*
726 F.3d 1136 (10th Cir. 2013)......................................................................................15

*Wilson v. Seiter,*
501 U.S. 294 (1991)......................................................................................25

*Woodford v. Ngo*,
548 U.S. 81 (2006) ...........................................................................................................16

## STATUTES

OKLA. STAT. tit. 21, § 13.1 ..........................................................................................23

OKLA. STAT. tit. 57 § 332.7 ...........................................................................................9

OKLA. STAT. tit. 57 § 566.4(C) ............................................................................. 11, 28

OKLA. STAT. tit. 57 § 571 ...........................................................................................11

42 U.S.C. § 1983 ................................................................................................. 14, 21

42 U.S.C. § 1997(e) ............................................................................................ 14, 16

42 U.S.C. § 1997(e)(a) ........................................................................................ 16, 18

## RULES

Fed. R. Civ. P. 56...........................................................................................................1, 15

## OTHER

OKLA. CONST. art. II, § 9...........................................................................................2, 22

OKLA. CONST. art. VI, § 10 ..................................................................................... 11, 12

IN THE UNTED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

DWAIN EDWARD THOMAS,

      Plaintiff,

v.                                                    **Case No.: CIV-20-944-D**

KEVIN STITT, *et al.,*

      Defendants.

### DEFENDANT STEVEN HARPE'S MOTION FOR
### SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Plaintiff's claims against Executive Director of the Oklahoma Department of Corrections ("ODOC") Steven Harpe ("Director Harpe," "Harpe" or "ODOC") fail as a matter of law under the undisputed material facts, as: (1) Plaintiff failed to exhaust his administrative remedies; (2) Plaintiff's claims under the Eighth Amendment and the Oklahoma Constitution are legally untenable; (3) Plaintiff is relitigating an issue which has already been fully adjudicated; and (4) Plaintiff is not entitled to injunctive or declaratory relief. Director Harpe hereby moves for summary judgment pursuant to Fed. R. Civ. P. 56. In support, Defendant states as follows.

### STATEMENT OF THE CASE

Plaintiff, a 44-year-old currently in ODOC custody, pled guilty to the heinous murders of his mother, step-father, and his step-grandfather. *See ODOC Field File*, attached as Exhibit 1 at ODOC 495, 502, 512. Although Plaintiff was a minor at the time of his offenses, he was convicted and sentenced as an adult due to their violent nature. *Id.* at ODOC 326, 344. Plaintiff is currently serving three life sentences with the possibility of parole. *Id.* Plaintiff filed this action pursuant to 42 U.S.C. § 1983 alleging that he is not afforded a meaningful and realistic

opportunity for release through Oklahoma's parole system, in violation of his rights under the Eighth Amendment and the Oklahoma Constitution. [Doc. 1 at p. 37 ¶ 119, pp. 38–39] (citing *Miller v. Alabama*, 567 U.S. 460 (2012); *Montgomery v. Louisiana*, 577 U.S. 190, 136 S. Ct. 718 (2016)). Specific to Harpe, Plaintiff claims that ODOC's prison security classification system prohibits inmates imprisoned under life sentences from reaching a classification lower than medium security, thereby allegedly denying Plaintiff a meaningful and realistic opportunity for release. [Doc.1 at p. 37, ¶ 119].

Plaintiff seeks both a declaration that Oklahoma's parole process[1] is "unconstitutional . . . to the extent that it fails to provide adequate consideration of youth status," and injunctive relief "to remedy Oklahoma's unconstitutional failure to provide a meaningful and realistic opportunity for release to Mr. Thomas, as well as others similarly situated."[2] Plaintiff specifically alleges he "received neither adequate consideration of his youth at sentencing nor any meaningful and realistic opportunity [sic] release . . . in violation of the Eighth Amendment and OKLA. CONST. art. II, § 9." [Doc. 1 at pp. 41–44]. As discussed below, each of Plaintiff's claims fail as a matter of law.

---

[1] For the purposes of this lawsuit, only regular parole consideration is at issue. This litigation does not address medical parole, administrative parole, or aging prisoner parole.

[2] Additionally, Plaintiff has not been appointed to represent a class, nor has Plaintiff even filed a motion for class certification. Therefore, relief can only be granted as to this Plaintiff.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

*Plaintiff's Judgment and Sentence*

1.      On December 9, 1995, Plaintiff was arrested in Sequoyah County, OK, on three (3) counts of Murder in the First Degree of his mother, step-father, and step-grandfather. *See* Ex.1 at ODOC 318-321.

2.      On March 20, 1997, Plaintiff entered a plea of guilty to three (3) counts of First-Degree Murder in Sequoyah County (CF 1995-380) for the murders of his mother, step-father, and step-grandfather. Plaintiff is serving his sentences as to Counts I and II concurrently. Plaintiff will then serve his sentence as to Count III consecutively to Counts I and II. *Id.*

3.      Plaintiff shot and killed his mother and step-father. Plaintiff also stabbed his step-grandfather to death. *Id.* at ODOC 495, 502, 512.

4.      Plaintiff was convicted and sentenced as an adult. *Id.* at ODOC 326, 344.

5.      Plaintiff is serving three (3) Life Sentences **that are all eligible for Parole.** *See Plaintiff's Pardon and Parole Board File*, attached as Exhibit 2 at PPB 20-45; *see also* Ex. 1 at ODOC 323, 356.

6.      As of the date of this filing, Plaintiff is 44 years old. *See* Ex. 2 at PPB 21.

*Plaintiff's Parole Information and History*

7.      Plaintiff was first considered for parole in October of 2010 at the age of 30, after serving one-third (i.e., 15 years) of the concurrent life sentences he received for Count I and Count II. *Id.* at PPB 44-45.

8.     The Pardon and Parole Board ("PPB" or "Board") considered Plaintiff for parole, regularly every three (3) years, for a total of five (5) times. (October 2010 Parole, October 2013 Parole, October 2016 Parole, October 2019 Parole, October 2022 Parole). *Id.*

9.     Each of the five (5) times Plaintiff appeared on the parole docket, a PPB Parole Investigator conducted an investigation and then prepared and submitted an Investigative Report. *Id.* at PPB 21-23, 27-29, 33-38,40-42.

10.     In Plaintiff's 2010 Investigative Report, the parole investigator wrote, "Mr. Thomas is incarcerated for violent offenses for the death of three people. He has accumulated nine total misconduct reports, including four for assaultive behavior and three for possession of a homemade knife. Given the nature of his offenses, I would need to see a longer period of non-assaultive behavior to make a favorable recommendation." *Id.* at PPB 42.

11.     In Plaintiff's 2013 Investigative Report, the parole investigator set forth, in pertinent part, "No. The offender is incarcerated for three violent offenses. He has accumulated ten misconduct reports, including four for assaultive behavior, and three for possession of a homemade knife. Parole is not recommended." *Id.* at PPB 38.

12.     In Plaintiff's 2016 Investigative Report, the parole investigator determined that Plaintiff's "[a]ssessed security level is minimum." *Id.* at PPB 35.

13.     In Plaintiff's 2019 Investigative Report, the parole investigator stated the following about Plaintiff in his report to the Parole Board: "Thomas' current security level is assessed at minimum." *Id.* at PPB 29.

14.     In Plaintiff's 2022 Investigative Report, the parole investigator set forth the following about Plaintiff: "No, parole is not recommended. Even though it is his first

incarceration, the violent nature of the crimes and consistent pattern of misconducts shows that the offender is still a continued risk to the public." *Id.* at PPB 23.

15.    Plaintiff has never received a favorable vote by the Pardon and Parole Board and has never made it past stage one (*i.e.*, jacket review). *Id.* at PPB 20-45. Plaintiff has never been passed to stage two. *Id.*

*Plaintiff's Misconducts at ODOC*

16.    Plaintiff has earned multiple misconducts during his incarceration at ODOC, including multiple Class X misconducts. *See* Ex. 1 at ODOC 875-876.

17.    "Class X misconducts are the most severe misconduct provided by the ODOC disciplinary policy." *See* [Doc. 36-15]

18.    On September 6, 1998, Plaintiff battered an ODOC employee, and accordingly received a Class X misconduct for battery of staff. (Ex. 1 at ODOC 875-876). On January 27, 1999, Plaintiff battered a fellow inmate, thus earning yet another misconduct. *Id.* On April 17, 1999, Plaintiff received a misconduct for lying to a staff member. *Id.* On July 9, 1999, Plaintiff's conduct warranted another Class X misconduct, that time for possession of a weapon and marijuana seeds. *Id.* On July 10, 1999, Plaintiff jumped on a staff member's back and tried to choke ODOC Correctional Officer Reese Lane with a microphone cord. This dangerous behavior resulted in another Class X misconduct for battery of staff. *Id.* Also on July 10, 1999, Plaintiff received a Class X misconduct for possession of multiple weapons (4 syringes and 2 shanks). *Id.* On July 14, 1999, Plaintiff threatened sexual assault against an ODOC staff member, thereby earning yet another Class X misconduct. *Id.* Plaintiff made the following expletive-laden threat against ODOC correctional officer Strader: "open this door and I'll f*ck

you in the a*s Strader, I'll f*ck you like a b*tch"[3] *Id.* On December 13, 1999, Plaintiff received yet another Class X misconduct for possession of a weapon. *Id.*

19.     On August 2, 2000, Plaintiff's manufacturing of intoxicants led to his receipt of a misconduct. *Id.*

20.     On October 11, 2011, Plaintiff received a misconduct for unauthorized use of state property. Plaintiff was found in possession of an electrical device taken from maintenance. *Id.*

21.     On January 31, 2017, Plaintiff received a Class X misconduct for possession of five cellphones and three chargers. *Id.* On June 22, 2017, a reporting officer conducted a urine test on Plaintiff. Plaintiff tested positive for Methamphetamines and received a misconduct. *Id.* On November 28, 2017, Plaintiff received a Class X misconduct for possession of a cell phone. *Id.*

22.     On July 30, 2020, Plaintiff received a Class X misconduct for selling/bartering homemade brew (i.e., dark red liquid that was being made into brew was found in his cell during cell inspections). *Id.*

23.     On January 3, 2022, Plaintiff received a Class X misconduct for possession of a cellphone and phone charger. *Id.* On January 23, 2022, Plaintiff received a Class X misconduct for possession of a cellphone. *Id.*

24.     On January 8, 2024, Plaintiff received a Class X misconduct for possession of a cellphone. *See* Ex. 1 at ODOC 1121-1126.

---

[3] The details to Plaintiff's misconduct are relevant to this lawsuit and further illustrate Plaintiff's behavior while incarcerated at ODOC.

25.    Plaintiff received all misconducts at ODOC while over the age of 18 years old. *See* Ex. 1 at ODOC 873-876; *see also* Ex. 2 at PPB 21.

26.    On Plaintiff's ODOC Cell Assignment Form, in 2000, his ODOC case manager states the following: "Inmate claims to be member of white supremacist group and refuses to live with 'ni**ers'" and cites to a letter written by Plaintiff for supporting evidence. *See* Ex. 1 at ODOC 854-856.

27.    While incarcerated at ODOC, Plaintiff wrote a letter to his ODOC case manager stating:

> I would like it to be noted, and logged in my jacket, that I am an extreme white supremacist and am a member of the white identity movement, it is against my Christian belief along with a violation of my constitutional rights to live with a ni**er."…"If a situation does arise in which you have no choice, then I will oppose to the best of my ability, even physically necessary. So therefore, to save future problems, avoid the circumstance of placing a ni**er in my cell. Respectfully, and sincerely, Dwain Thomas.

Ex. 1 at ODOC 600.

*Programs at ODOC*

28.    The content of programs and educational services at minimum security prisons is the same as the content of programs and educational services at medium security prisons. *See Castleberry Depo,* attached as Exhibit 3 at p. 30:9-20, p. 31:7-9.

29.    The same content of programs and educational services is available at maximum security prisons. *Id.* at p. 30:25-31:9.

30.    ODOC offers educational services, which include everything from literacy to basic education, to a GED, to a diploma in educational services. *Id.* at p. 31:21-24.

31.    ODOC has an interagency agreement with the Oklahoma State Department of Career Tech to provide vocational programming to inmates. There is a large variety of vocational programs and tracks that exist across security levels at ODOC. *Id.* at p. 31:25-32:5.

32.    Substance abuse programming exists across various security levels at ODOC. *Id.* at p.32:12-13.

33.    Reentry programming exists across various security levels at ODOC. *Id.* at p. 32:14-16.

34.    ODOC provides religious and volunteer services at every facility and security level. *Id.* at p. 32:6-9.

35.    The purpose of programming that ODOC offers to inmates is to provide essential activities, opportunities to learn, and rehabilitative efforts for individuals as they are preparing to reenter community. *Id.* at p. 32:19-25.

36.    While incarcerated at ODOC, Plaintiff received his GED certificate. Plaintiff attended and completed several college courses (66 credit hours overall) through Langston University (an accredited university) and received college achievement credits. (Ex. 1 at ODOC 469-479, 488-490, 584-585). Plaintiff participated in, and completed, Module 1 of the Licensed Trades Academy program. (*Id.* at ODOC 548, 725-726,750). Plaintiff also earned 30 credits for completing six months of Session 3 of the Licensed Trades Academy program. (*Id.* at ODOC 748-749). Plaintiff participated in, and completed, the Victim Impact- Listen & Learn program, the Building Social Networks program, the SAMHSA Anger Management program, the Biblical Interpretation program, and the Thinking for a Change program. (*Id.* at ODOC 481-483, 659,742). Plaintiff applied for a maintenance job and received approval for

the job. (*Id.* at ODOC 723). Plaintiff received his Refrigeration Technician certification. (*Id.* at ODOC 728). Plaintiff received his Residential Electrician's Assistant certification, and also received his Commercial/Industrial Electrician's Assistant certification. (*Id.* at ODOC 729-730). Plaintiff participated in, and completed, the HVAC Esco Institute training and received his Universal Technician certification through the Esco Institute. (*Id.* at ODOC 731-732). Plaintiff attended the RMC Research Corp. and took the critical thinking CAPP (collegiate assessment of academic proficiency) test. (*Id.* at ODOC 735-736). Plaintiff participated in, and completed, the 2006 Mechanical Code Training, and passed his Mechanical Journeyman examination and received his license from the State of Oklahoma Construction Industries Board. (*Id.* at ODOC 738-740). Plaintiff participated in, and completed, the Paralegal Studies Certificate Program through Blackstone Career Institute. (*Id.* at ODOC 1080).

*Parole Process*

37.     When an individual is brought into ODOC custody, PPB parole investigators are responsible for the docketing of the inmates' eligibility for parole, and for reviewing and confirming eligibility for parole throughout the parole process. *See Bates Depo*, attached as Exhibit 5 at p. 74:4-21; *see also Long Depo,* attached as Exhibit 6 at pp. 118:14-119:7; 133:18-134:4.

38.     Parole eligibility date calculations are based on statute. *See* Ex. 5 at p. 72:5-9; *see also PPB Admin. Rules*, attached as Exhibit 7 at 515:25-3-1; and OKLA. STAT. tit. 57 § 332.7.

39.     This date is calculated when offenders are processed into ODOC custody. Ex. 5 at p. 72:10-13; Ex. 6 at p. 133:25-134:4; Ex 7 at 515:25-3-1; and OKLA. STAT. tit. 57 § 332.7.

40.     For violent offenders, there is a two-step process for parole. The first step is called stage one or jacket review. In stage one, the PPB members review the set of materials provided to PPB, and then vote on whether or not to pass the inmate to stage two. *See* Ex. 5 at p. 67:6-25; Ex. 7 at 515:25-7-2; and *Doyle Depo,* attached as Exhibit 4 at p. 54:4-15.

41.     PPB board members are given the investigative report prepared by the PPB investigator, all support letters (if any), all victim/protest letters (if any), and all district attorney ("DA") narratives (if any). *See* Ex. 5 at pp. 56:24-57:8; Ex. 4 at p. 55:7-19; p. 69:20-25.

42.     The parole investigator, an employee of PPB, is responsible for conducting an investigation and then preparing, drafting, and submitting an investigative report in advance to the parole hearing. *See* Ex. 5 at p. 73:16; p. 74:3; and Ex. 6 at pp. 133:11-134:12; p. 180:14-17; *see also* OKLA. CONST. art. VI § 10.

43.     As a part of their investigations, parole investigators shall conduct face to face interviews with each offender scheduled on monthly dockets, unless an interview is not possible, and an exception applies. *See PPB Investigator Handbook*, attached as Exhibit 8 at p. 6; *see* also Ex. 6 at pp. 166:23-167:1; p. 179:8-10.

44.     If a face-to-face interview with the offender is not possible, then parole investigators may conduct personal interviews through a telephone call. *See* Ex. 6 at p. 229:12-25, p. 230:1-8.

45.     If a personal interview is not possible, interview questionnaires may be used. *See* Ex. 8 at p. 7; and Ex. 6 at pp. 229:12- 230:8.

46.     Once the parole dockets are finalized, the investigative reports are given to the PPB members for review about three weeks prior to the hearing/meeting date. *See* Ex. 5 at p. 55:5-22.

47.     While the PPB may grant parole for nonviolent offenses, for violent offenses it is limited to making a recommendation of parole to the Governor. *See* Ex. 7 at 515:25-9-1; *see also* OKLA. CONST. art. VI § 10.

48.     During stage one, the offender, victim, and the district attorney are not allowed to speak to the board. *See* Ex. 5 at p. 69:12-25.

49.     If PPB members vote to move the violent offender through the parole process, the next step is stage two, where the inmate makes a personal appearance. *See* Ex. 5 at pp. 70:18-71:20; and Ex. 7 at 515:25-7-2.

50.     At the stage two parole hearing for a violent offense, the PPB members will vote to either recommend or deny parole for the inmate. There are no limitations on the factors that the PPB members may consider in making its recommendations to the Governor. *See* Ex. 7 at 515:25-9-1.

51.     Whether an inmate is classified as violent or nonviolent offender is defined by statute (as enumerated in OKLA. STAT. tit. 57 § 571). *See* Ex. 5 at p. 64:10-14; and Ex. 7 at 515:25-1-2.

*ODOC's Role in the Parole Process*

52.     ODOC's only role in the parole process prior to parole decisions being made by the PPB is providing the Board access to inmates, access to inmate records (i.e., Field File/Jacket), and providing adequate office space at ODOC facilities for use by

11

PPB investigators as outlined in ODOC policy. *See* [Doc. 36-13 at p. 2]; *see also* Ex. 3 at p. 54:20-22; *Romine Depo*, attached as Exhibit 9 at p.35:14-24; p. 38:2-13; p. 40:24-41:4; p. 61:12-17; p.101:23-102:1; Ex. 5 at p. 28:8; p. 29:9; *see also* OKLA. CONST. art. VI § 10.

53.     The PPB parole investigators review and utilize inmates' Field Files (i.e., ODOC offender records) to then prepare and draft their Investigative Reports. These reports are then given to the PPB Board members. *See* Ex. 5 at p. 29:7-14; *Luck Depo,* attached as Exhibit 10 at pp.101:23-102:21.

54.     ODOC has no policies specifically related to the parole review process. *See* Ex. 10 at pp. 19:18-20:7.

55.     ODOC does **not** have any direct interaction with the Governor's Office with respect to parole decisions. *See* Ex. 9 at p. 47:18-21.

56.     ODOC does **<u>not</u>** determine eligibility for parole, set parole hearings, make parole decisions. This is done by the PPB or dictated by statute. *Id.* at pp. 38:6-9; p. 100:18-25; *see also* [Doc. 36-13 at pp. 2-9]; Ex. 5 at p. 72:5-9; Ex. 7 at 515:25-3-1; 515:25-9-1; and OKLA. CONST. art. VI § 10.

*Plaintiff's Security Levels and Classification at ODOC*

57.     ODOC has three (3) different security levels: minimum, medium, and maximum. *See* [Doc. 36-3 at p. 11]; Ex. 3 at pp. 61:18-62:2.

58.     Inmates are placed into different security levels based on their custody assessment score. These custody assessments are evaluated at least annually. *See* Ex. 3 at p. 62:3-11.

59.    ODOC custody assessment scores are based on a variety of factors (i.e., Severity of Convictions on Current Incarceration, Disciplinary History, Current Age, Escape history). ODOC Male Custody Assessment Procedures Policy OP-060103(M). *Id.* at p. 62:12-17.

60.    Pursuant to ODOC Policy OP-060103(M), inmates may be subject to "mandatory overrides" or "discretionary overrides" based on factors such as the crimes for which they have been convicted, the amount of time left to serve on their sentence, or their escape history. *See* [Doc. 36, p. 5]; [Doc. 36-3 at p. 12].

61.    Due to the nature of the instant Plaintiff's crimes and sentence length, he is subject to a mandatory override as specified in ODOC policy. [Doc. 36-3 at p.12]; [Doc. 36-5 at pp. 1-28] Ex. 3 at p. 83:5-10.

### Res Judicata and Collateral Estoppel

62.    Plaintiff filed his Petition-in-Error with Brief-in-Support to the Oklahoma Court of Criminal Appeals on February 19, 2019, alleging the district court abused its discretion when it denied his application for Post-Conviction Relief. *See Petition-in-Error*, attached as Exhibit 11; *Application for Post-Conviction*, attached as Exhibit 12; *State's Response to Application for Post-Conviction*, attached as Exhibit 13; and *Order Post Conviction Relief*, attached as Exhibit 14.

63.    In his brief, Plaintiff claimed that although he was not serving a sentence of life without parole, he was nonetheless subject to a life without parole as he was denied meaningful opportunity for release within his lifetime. *See* Ex. 11 at p. 12; *see also* Exs. 12-14.

64.    The Oklahoma Court of Criminal Appeals affirmed the denial of Plaintiff's Application for Post-Conviction relief, stating "Petitioner is eligible for parole consideration

13

after serving fifteen years of each of his consecutive life sentences," and therefore he "has a material opportunity to obtain release on parole during his natural lifetime from his sentences in Sequoyah County District Court Case. No. CF-1995-380A". *See Order,* attached as Exhibit 15 at p. 2.

### *Prison Litigation Reform Act ("PLRA")*

65.    Plaintiff is an inmate within the custody of ODOC. *See* [Doc. 1] and [Doc. 36].

66.    Plaintiff filed this suit under 42 U.S.C. §1983. [Doc. 1].

67.    Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

68.    A grievance is used for formally addressing complaints or issues regarding conditions of confinement and classification. *See* [Doc. 36-14 at IV].

69.    To exhaust available administrative remedies, an inmate in ODOC custody must follow the ODOC Grievance Process policy, OP-090124. An inmate has only exhausted all available administrative remedies upon receiving a final decision from ODOC's Administrative Review Authority ("ARA") or Medical Services Administrative office ("MSA"). [Doc. 36].

70.    Plaintiff failed to file any Requests to Staff, or any Grievances; Plaintiff has no appeals concerning any of the claims he now brings. *See* [Doc. 36-15].

71.    Plaintiff Thomas did not, and still has not, exhausted his administrative remedies regarding the issues in the Complaint. *See* [Doc. 36-15].

## STANDARD OF REVIEW

Summary judgment shall be granted when the moving party demonstrates that it is entitled to judgment as a matter of law because there is no evidence within the pleadings, depositions, answers to interrogatories, or affidavits to support the claims of the nonmoving party, or that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). An issue is "genuine" only if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "Conclusory, self-serving assertions, devoid of factual support, do not create a genuine issue of material fact." *Li Zu v. Avalon Health Care, Inc.*, 806 F. App'x 610, 617 (10th Cir. 2020).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Although a plaintiff is entitled to all reasonable inferences from the record, she must still marshal sufficient evidence requiring submission of the matter to the jury in order to avoid summary judgment." *Piercy v. Maketa*, 480 F.3d 1192, 1197 (10th Cir. 2007). Thus, if the plaintiff bears the burden of persuasion on a claim at trial, then summary judgment may be warranted if (a) defendant points out a lack of evidence to support an essential element of that claim, and (b) plaintiff cannot identify specific facts that would create a genuine issue. *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143–44 (10th Cir. 2013). Even so, the existence of a fact issue does not preclude entry of summary judgment where there is no

evidence to support a dispute on that issue or the evidence is so one-sided that no reasonable juror could find for the other side. *True v. United States*, 190 F.3d 1165, 1177 (10th Cir. 1999).

## ARGUMENT AND AUTHORITY

**PROPOSITION I: PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.**

The PLRA requires prisoners who would file suit based upon conditions of their confinement to exhaust all administrative remedies prior to bringing suit. 42 U.S.C. § 1997(e), *et seq.*; *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Ross v. Blake*, 578 U.S. 632, 635 (2016); UMF 67. Such "exhaustion is *mandatory* under the [PLRA] of 1995 . . . 42 U.S.C. § 1997e(a)." *Ramirez v. Collier*, 595 U.S. 411, 142 S. Ct. 1264, 1275 (2022) (emphasis added); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Porter v. Nussle*, 534 U.S. 516, 520 (2002). This mandatory exhaustion requirement applies to "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532. A prisoner's disagreement as to the appropriateness of a particular procedure does not excuse the plaintiff's obligation to comply with the available process. *Thomas v. Parker,* 609 F.3d 1114, 1119 (10th Cir. 2010). Prisoners must exhaust their remedies prior to filing suit even if doing so seems futile. *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002). When ruling on ODOC's Motion to Dismiss, this Court denied ODOC's motion as it found Plaintiff's Complaint alleged claims regarding the constitutionality of Oklahoma's Parole process and therefore the PLRA was not applicable. [Doc. 59 at p.4]. However, after discovery the record is clear that plaintiff's lawsuit concerns conditions of his confinement. As addressed below, ODOC is not involved in the Parole process.

Complaints pertaining to classification or conditions of confinement are subject to the grievance process. UMF 67. Thus, according to the foregoing authority, Plaintiff was required to exhaust that process prior to initiating this lawsuit. *Id.* That process requires an inmate to first seek an informal resolution of an issue by speaking with the appropriate staff members. [Doc. 36-17 at part V]. If such an attempt is unavailing, the inmate must then submit a Request to Staff ("RTS") to the appropriate staff member. *Id.* If the issue remains unresolved, the offender may then begin the formal grievance procedure by submitting a Grievance to the Reviewing Authority. *Id.* at Part VI. If that step again fails to resolve the issue, the proper course of action is to appeal to the Administrative Review Authority ("ARA"), where a final ruling on the matter will be issued by the ODOC Director's Designee. *Id.* at Part VII. Only after all these steps are completed has the grievance process been exhausted. *Id.* at Part VIII.

Plaintiff is challenging ODOC's security classifications. Specifically, he claims that ODOC's Security Classification System prohibits him, (as someone imprisoned pursuant to a life sentence), from reaching a lower classification than medium security. Plaintiff claims this denies him critical rehabilitative opportunities. Complaint, [Doc.1 at pp. 40, ¶¶ 132, 89-90, 92, 93-94, 115-116, 119, 125]. But as Plaintiff himself admits: "security classifications determine virtually all aspects of an individual's ***conditions of confinement*** . . ." [Doc. 1 at p. 90] (emphasis added). Thus, his claims fall directly under the purview of the PLRA's

Exhaustion Requirements. UMF 65-71; *see also* 42 U.S.C. § 1997(e), *et seq.*; *Jones,* 549 U.S. at 202; *Porter,* 534 U.S. at 532.[4]

Plaintiff has not filed a RTS, Grievance, or appeal concerning any of the issues described in the Complaint. UMF 70-71. Because the PLRA required him to exhaust those remedies prior to initiating this suit, he cannot maintain his claims against Harpe or ODOC. UMF 65-71.

**PROPOSITION II:   PLAINTIFF'S CLAIMS THAT THE OKLAHOMA PAROLE PROCESS VIOLATES THE EIGHTH AMENDMENT AND OKLAHOMA CONSTITUTION FAIL AS A MATTER OF LAW.**

Through a series of cases since 2005, the United States Supreme Court has found that the application of certain punitive measures to juvenile offenders violates the Eighth Amendment. First, in *Roper v. Simmons*, 543 U.S. 551 (2005), the Supreme Court held that the Eighth Amendment prohibits capital punishment for juveniles. Second, in *Graham v. Florida*, 560 U.S. 48, 82 (2010), the Court found the Eighth Amendment prohibits sentencing juveniles who commit *non*-homicide offenses to life *without* parole. In *Graham*, the Court specifically found that non-homicide offenders could not be required to serve life in prison without "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Graham*, 560 U.S. at 75. This is because "there is a line between homicide and other serious violent offense" as non-homicide offenses "cannot be compared to murder in their severity and irrevocability." *Id.* at 69, (quoting *Kennedy v. Louisiana*, 554 U.S. 407, 438 (2008), as

---

[4] Plaintiff seems to argue his claims against Harpe are related to "parole procedures" and/or the "parole process" rather than a topic falling under the PLRA. However, his Complaint's reference to "conditions of confinement" betrays that argument.

modified (Oct. 1, 2008), opinion modified on denial of reh'g, 554 U.S. 945 (2008), *See also Coker v. Georgia,* 433 U.S. 584, 598 (1977) (plurality opinion).

In noting the difference between homicide and non-homicide offenders, *Graham* did not require that juvenile homicide offenders receive the same meaningful opportunity for release. *Graham* does not even require a juvenile non-homicide offender to be released from prison during his or her lifetime. *Graham,* 560 U.S. at 75 ("The Eighth Amendment does not foreclose the possibility that persons convicted of non-homicide crimes committed before adulthood will remain behind bars for life.").

Third, in *Miller v. Alabama*, 567 U.S. 460, 480 (2012), the Supreme Court held that a law *mandating* life imprisonment without the possibility of parole for a homicide offense is unconstitutional as applied to juveniles. The Court's ruling in *Miller* did "not foreclose a sentencer's ability to [sentence juvenile offenders to life without parole] in homicide cases." *Id.* Instead*, Miller* requires all jurisdictions to specifically consider a juvenile offender's youth and attendant characteristics prior to imposing a sentence of life imprisonment **without** parole. *Miller*, 567 U.S. at 483. *Miller* is not applicable to juveniles sentenced to life with the possibility of parole.

Most recently, the Supreme Court held in *Jones v. Mississippi* that "[i]n a case involving an individual who was under 18 when he or she committed a homicide, a State's discretionary sentencing system is both constitutionally necessary and constitutionally sufficient" and thus did not violate the Eighth Amendment. 593 U.S. 98, 105, 107 (2021). The Court recognized that before sentencing a juvenile offender to life without parole, *Miller* required that a sentencer have discretion to consider youth before imposing a life-without parole sentence.

*Id.* at 109. The Court noted that *Miller* "'did not impose a formal factfinding requirement' and added that 'a finding of fact regarding a child's incorrigibility is not required.'" *Jones*, at 105, 107 (quoting *Montgomery*, 577 U.S. 190, 211 (2016)). Thus, even when sentencing a juvenile to life without parole, a sentencer is not required to perform any specific fact-finding, but instead must only "have discretion to consider youth before imposing a life-without-parole sentence." *Id.* at 109.

Plaintiff seeks to extend these cases—all of which address sentences for life *without* parole for juveniles who committed *non-homicide* crimes—to his sentence of life *with the possibility of parole* for the crime of homicide. This approach is fundamentally mistaken. None of these cases contain any suggestion that they would or should be applied in circumstances wherein a juvenile was convicted of homicide. Nor do these cases apply in circumstances in which juveniles sentenced to life retained the possibility of parole. In fact, *Graham* distinctly drew a line between homicide and non-homicide offenders. *Graham*, 560 U.S. at 69. Simply put, Plaintiff, as a homicide offender, is not of the class of offender which retains a constitutional right to a meaningful opportunity for parole. Likewise, the fact that Plaintiff was sentenced to life with the possibility for parole—despite his status as a homicide offender—renders *Miller* and *Montgomery* inapplicable. UMF 1-6.

The inapplicability of Plaintiff's cited cases is further reflected by Tenth Circuit case law interpreting *Graham*. In *Budder v. Addison*, the Tenth Circuit explained that *Graham* applies only to juvenile offenders "who **did not** commit homicide." *Budder v. Addison*, 851 F.3d 1047, 1057 (10th Cir. 2017) (citing *Graham*, 560 U.S. at 60-61) (emphasis added). Accordingly, because Plaintiff did commit homicide, *Graham* is inapplicable.

This point is further reinforced by analogous local District Court Opinions. The first is *Rodgers v. Whitten*, a recent, strikingly similar case from the Western District of Oklahoma. No. CIV-20-839-PRW, 2020 WL 8768604, at *2 (W.D. Okla. Nov. 3, 2020), report and recommendation adopted, No. CIV-20-00839-PRW, 2021 WL 735647 (W.D. Okla. Feb. 25, 2021). There, a state prisoner filed an action pursuant to 42 U.S.C. § 1983 arguing his life sentence for a murder he committed at the age of sixteen violated his Eighth Amendment rights under *Miller v. Alabama*, 567 U.S. 460 (2012). The plaintiff further argued that Oklahoma's parole procedures did not provide a reasonable opportunity for release. *Id.* In his Order adopting the Report and Recommendation, United States District Judge Patrick R. Wyrick stated "Petitioner has several problems. First, as a homicide offender, he is not in the class of offenders with a constitutional right to a meaningful opportunity for parole. Under *Miller*, he could have been sentenced to life with no possibility of parole." *Id.* at *1. Judge Wyrick then stated, in relevant portions:

> The Supreme Court in *Graham v. Florida, 560 U.S. 48 (2010)* and its progeny merely held that those who commit a **non-homicide** offense as a juvenile must be given a meaningful opportunity for parole… Petitioner's bigger problem is that he committed a homicide (felony murder), which places him in the class of juveniles who can be denied the possibility of parole, so long as the sentencing judge had the opportunity to consider and impose a sentence that included the opportunity for parole. Given that Petitioner was sentenced to life, his sentencing judge clearly had that opportunity.

*Id.* at *1 (emphasis added). *See also Bias v. Stitt*, No. CIV-20-989-SLP, 2020 WL 10731244 (W.D. Okla. Dec. 15, 2020), report and recommendation adopted, No. CIV-20-989-SLP, 2021 WL 3008606 (W.D. Okla. July 15, 2021)(concluding that the plaintiff's Eighth amendment claim fails as neither *Miller* nor *Montgomery* applies to his life sentence with the opportunity for parole and dismissing § 1983 complaint); *Lewis v. Okla. Pardon & Parole Bd.*,

No. CIV-18-1205-G, 2019 WL 1500671, at *1 (W.D. Okla. Apr. 5, 2019)(concluding that *Miller* did not apply because "Plaintiff was not sentenced to life-without-parole and has in fact been considered for parole on at least six occasions" and dismissing § 1983 complaint); *Pickens v. S.C. Dep't of Prob., Parole, and Pardon Servs.*, No. 8:22-cv-00500-RBH, 2022 WL 2965626, at *3 (D.S.C. July 27, 2022)(explaining that *Miller* does not extend (1) to juvenile offenders sentenced to life *with* parole and (2) beyond sentencing proceedings).

Even under the Oklahoma Constitution, and *Miller* and *Graham*, "[a] State is not required to guarantee eventual freedom to a juvenile offender." *Martinez v. State*, 2019 OK CR 7, ¶ 8. There, the plaintiff was sixteen years old when he committed murder and shooting with intent to kill. The plaintiff claimed he would not be considered for parole until he was 54 years of age, and not eligible for release on parole until he was 79 years old in violation of *Miller*. The Oklahoma Court of Criminal Appeals determined that that "[b]ased upon the length of Petitioner's sentences and the current status of the law, we find that Petitioner has some meaningful opportunity to obtain release on parole during his lifetime" and therefore, there was no violation of the Eighth Amendment or the Oklahoma Constitution. *Id.*

As an inmate who was sentenced as a juvenile for a homicide, Plaintiff's claim under the Eighth Amendment and Oklahoma Constitution must fail. Article II, § 9 of the Oklahoma Constitution is virtually identical to the Eighth Amendment to the United States Constitution; § 9 prohibits "cruel or unusual punishments," while the Eighth Amendment prohibits "cruel and unusual punishments." *Revilla v. Glanz*, 7 F. Supp. 3d 1207, 1219 (N.D. Okla. 2014).

In the present case, Plaintiff (1) committed several homicide offenses and is a homicide offender, (2) was sentenced to Life with the possibility of parole, and (3) thus, his sentencing

judge clearly had that opportunity to consider and impose a sentence that included the opportunity for parole. UMF 1-6.

Plaintiff was convicted of three (3) violent homicide offenses he committed when he was a juvenile. UMF 2-4. Because of the violent nature of his crimes, Plaintiff does not fall within the ambit of the Eighth Amendment's prohibition on life sentences without the possibility of parole. *Budder*, 851 F.3d at 1057. Plaintiff could have received a life sentence without the possibility of parole. Even if Plaintiff received a "de facto" life sentence without parole, this is not a violation of the Eighth Amendment or the Oklahoma Constitution as the court had the discretion to sentence him to life without the possibility of parole.

**PROPOSITION III: EVEN IF PLAINTIFF WAS ENTITLED TO A MEANINGFUL OPPORTUNITY FOR RELIEF, PLAINTIFF'S CLAIMS AGAINST HARPE/ODOC MUST FAIL.**

Contrary to Plaintiff's assertions, the undisputed facts reflect that he has been afforded a meaningful opportunity for parole—even though he is within the class of juvenile inmates who may be required to serve life without parole. For purposes of parole in Oklahoma, a life sentence is calculated as 45 years. *Anderson v. State*, 2006 OK CR 6, ¶ 24.[5] Plaintiff was eligible for parole after serving 15 years, one-third (1/3) of his sentence, in October of 2010. UMF 7. Plaintiff has since been considered for parole on five different occasions, beginning at age 30. UMF 7-8.

---

[5] In 2000, Oklahoma adopted a statute requiring prisoners convicted of certain crimes to serve at least 85% of a sentence of imprisonment. OKLA. STAT. tit. 21, § 13.1. However, because Plaintiff was convicted prior to that date, it does not apply to him. *Landes v. McCollum*, No. CIV–14–190–R, 2014 WL 6455483, at *3 n.6 (W.D. Okla. Nov. 13, 2014).

### (A) Plaintiff does not have a constitutional right to decide his eligibility for programs.

Nonetheless, Plaintiff maintains that "[i]n some prisons, moreover, the system itself becomes complicit in the lack of development . . . [i]t is the policy in some prisons to withhold counseling, education, and rehabilitation programs for those who are ineligible for parole consideration." [Doc. 1 at p. 51] (citing *Graham*, 560 U.S. at 79). However, as noted above, Plaintiff is eligible for parole, and has in fact been considered for parole multiple times. Moreover, Plaintiff fails to identify any policy showing that any prison in ODOC has withheld counseling, education, and/or rehabilitation programs for those who are ineligible for parole. Indeed, the record is clear that access to these types of programs is the same across all levels of security. UMF 28-34. ODOC provides educational services, which is everything from literacy to basic education, to diplomas. UMF 30. ODOC has an interagency agreement that allows ODOC to work with the State Department of Career Tech to provide vocational programming, which exists across security levels. UMF 31. ODOC provides religious and volunteer services at every facility and security level. UMF 34. Substance abuse programs also exist across all security levels. UMF 32. The purpose of the programming is to provide essential activities, opportunities to learn and rehabilitative efforts for individuals as they're preparing to reenter community. UMF 35.

While certain specific programs may not be available at each level of each prison, the *content* of the programs remains available at all levels of security. UMF 28-34. Plaintiff's participation and completion of numerous programs at ODOC contradicts his claims that ODOC denies access to such programs. UMF 36. Furthermore, the PPB members are aware that some courses might not be available at all facilities, and they took that into account in

making their parole determinations. (Ex. 10 at p. 111:5-20). If an inmate had not taken a recommended program, PPB members would ask for more information. *Id.* at pp. 111:25-112:6. However, Plaintiff cannot point to a situation in which this occurred.

Finally, Plaintiff does not have a right to decide his eligibility for programs. "The Constitution," the Supreme Court says, "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted). Because Plaintiff does not have a constitutional right to decide his eligibility for programs, Plaintiff's claim fails as a matter of law against Defendant Harpe for Eighth Amendment violations due to a purported lack of access to programs.

### (B) *Plaintiff does not have a constitutional right to be housed at the prison of his choice, nor does he have a right to be classified in the security level of his choice.*

Plaintiff also claims a lack of access to a facility below medium security, alleging that "he has been assigned to the same institution for more than three years, with no hope of transferring to another facility in order to achieve and demonstrate further rehabilitation." [Doc.1 at p. 96]. However, Plaintiff does not have a right to the housing of his choice, nor to a specific security level.

Federal courts have long recognized, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are particularly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Accordingly, the supervision and internal affairs of correctional facilities rests with the prison administrators and is not subject to judicial

review. *Bell v. Wolfish*, 441 U.S. 520 (1979); *Evans v. Mosely*, 455 F.2d 1084 (10th Cir. 1972). That discretion extends to housing, and "there is no federal constitutional right to incarceration in any particular prison or portion of a prison." *Montez v. McKinna*, 208 F.3d 862 (10th Cir. 2000) (internal citations omitted).

Likewise, prison officials enjoy broad discretion to place inmates in what those officials deem to be appropriate security classifications. *Byrd v. Cornell Corr. Inc*, 60 F. App'x 191, 192–93 (10th Cir. 2003) (holding penal facility did not violate prisoner's rights by placing him in medium security status). The maintenance of institutional security and the preservation of internal order and discipline are so essential that each may necessitate the limitation or restriction of the constitutional rights of inmates, including those related to security classifications. *Bell,* 441 U.S. at 546, *Jones v. Marquez,* 526 F. Supp. 871 (1981).

ODOC places inmates into different security levels based on their custody assessment scores, which are evaluated annually. UMF 57-61. These are based on a variety of factors. UMF 59. Pursuant to ODOC policy, inmates may be subject to mandatory overrides based on the crime they have committed. UMF 60-61. As Plaintiff was convicted of three homicides and is currently serving a life sentence, he is subject to a mandatory override, placing him in a medium security prison. UMF 61.

In addition, while Plaintiff's security level is noted on his PPB investigative report, this was not a determining factor in the PPB investigator's recommendation. (Ex. 6 at p. 203:1-7). In any case, both parole investigators and PPB members have full discretion to carefully consider and weigh several factors when making their recommendations. (Ex. 10 at p. 119:21; p. 121:1; Ex. 6 at pp. 274:24-275:5).

Plaintiff does not enjoy a constitutional right to choose his security level, nor his place of incarceration. As a result, Plaintiff's claims on this topic fail as a matter of law as against Director Harpe.

### (C) ODOC does not play a role in the parole process prior to parole being granted.

Plaintiff further claims that ODOC Director Harpe "is responsible for making investigations and inquiries as to prisoners at the penal institution who is to be, or might be, considered for parole". [Doc. 1 at p. 8]. While ODOC does have policies which relate to inmates *after* they have been granted parole: (1) ODOC itself does not determine parole eligibility; (2) ODOC does not make parole determinations or decisions; (3) ODOC does not review or consider inmates for parole; (4) ODOC does not "make investigations" or inquire upon inmates related to their parole eligibility; (5) ODOC does not maintain any policies related to the parole process; (6) ODOC does not have any direct interaction with the Governor's Office with respect to parole decisions; and (7) ODOC does not set parole dates. UMF 37-47, 49-50, 52-56. Instead, ODOC's role in the parole process, prior to the PPB making its decision, is in providing the PPB investigators with access to inmates to conduct interviews; access to inmate records; and office space for PPB investigators to utilize at ODOC facilities. UMF 52, *see also* [Doc. 36-13].

Because the undisputed material facts reflect that neither Harpe nor ODOC plays a role in establishing eligibility for parole, setting parole hearings, making parole decisions, or any other part of the parole process, Plaintiff's claims against Harpe fail to the extent they rely on ODOC's participation in that process.

**PROPOSITION IV: PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF FOR HIS STATE CLAIMS.**

OKLA. STAT. tit. 57 § 566.4(C) provides that "[n]o civil action of any type may be brought seeking an injunction or temporary restraining order against any . . . state agency, or any officer or employee thereof, brought by a plaintiff who is currently incarcerated in any jail . . . if the claim alleges matters arising from the incarceration of the plaintiff and related to management of the prison, including . . . prison transfers, cell assignments . . . and disciplinary action."

The immediate action is precisely the type of action proscribed by § 566.4(C). Plaintiff is an incarcerated individual seeking injunctive relief against a state agency for matters arising from his incarceration and related to Defendant's role as an officer and employee of ODOC. Specifically, Plaintiff's claims depend on matters relating to prison management, transfers, assignments, and work. To illustrate further, Plaintiff claims he is "categorically barred from moving below medium security regardless of his record of accomplishment." [Doc. 1 at p. 30, ¶ 93]. Thus, Plaintiff's claims are barred by statute and should be dismissed.

**PROPOSITION V: PLAINTIFF'S CLAIMS ARE SUBJECT TO *RES JUDICATA*.**

Plaintiff filed his Petition in Error on February 19, 2019, claiming that even though he was not serving a life without the possibility of parole, he was nonetheless subject to a life without parole sentence, as he was denied meaningful opportunity for release within his lifetime. UMF 62-64. After a review of Plaintiff's briefing, the Court of Criminal Appeals found Plaintiff "has a material opportunity to obtain release on parole." UMF 64.

Under the doctrine of *Res Judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating any issues which were or could have

been raised in the original action. *Cromwell v. County of Sac*, 94 U.S. 351, 352 (1876). Likewise, collateral estoppel provides that, once a court has decided an issue of fact or law necessary to render its judgment, that decision may preclude relitigating the same issue in a suit based upon a different cause of action involving a party to the first case. *Montana v. United States*, 440 U.S. 147, 153 (1979). The purpose of these doctrines is to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication. *Id.* at 153-154.

These doctrines are applicable in § 1983 actions such as this, where a plaintiff attempts to relitigate in federal court issues decided against them in state criminal proceedings. A party asserting issue preclusion must show: (1) the issue previously decided is identical to that presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Stan Lee Media, Inc. v. Walt Disney Co.,* 774 F.3d 1292, 1300 (10th Cir. 2014). Similarly, "claim preclusion" requires a showing of three elements: (1) a final judgment on the merits in the previous action; (2) the identities of the parties were the same in both suits; and (3) the causes of action in both suits were identical. *King v. Union Oil Co.,* 117 F.3d 443, 445 (10th Cir. 1997).

Here, Plaintiff's claims are identical to those he set forth in his Petition in Error. UMF 62-64. As was set forth in detail in the resulting Order, the issue of whether Plaintiff was entitled to a meaningful opportunity for parole was previously, fully, and fairly litigated. *Id.* The parties were the same, and Plaintiff had the ability to litigate the issues he now presents,

and in fact did so. *Id.* All of this resulted in a final order on the merits. Plaintiff is therefore barred from maintaining these claims now.

**PROPOSITION VI:  PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE OR DECLARATORY RELIEF.**

Plaintiff asks this Court to determine he is entitled to declaratory and injunctive relief. Plaintiff specifically asks this Court to declare that the Oklahoma Parole Process violates his Eighth Amendment and Oklahoma constitutional rights. However, Plaintiff has failed to state a claim for a constitutional violation. Since there is no ongoing constitutional violation, Plaintiff's request for injunctive and declaratory relief must accordingly be denied. *Green v. Mansour*, 474 U.S. 64 (1985).

## CONCLUSION

Plaintiff's lawsuit and the undisputed material facts developed herein fail to demonstrate that he is entitled to any relief. The undisputed material facts, when viewed in the light of applicable law, show that Plaintiff's claims must fail. For the reasons stated above, ODOC Executive Director Steven Harpe requests that the Court enter judgment in his favor and against Plaintiff on his claims, and grant all other relief deemed just and equitable.

Respectfully submitted,

s/ *Alejandra J. Brigida*
**ALEJANDRA J. BRIGIDA, OBA# 35381**
**LAUREN J. RAY, OBA# 22694**
ASSISTANT ATTORNEYS GENERAL
OKLAHOMA ATTORNEY GENERAL'S OFFICE
LITIGATION DIVISION
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-2951
Facsimile: (405) 521-4518
*Attorneys for Defendants ODOC, OBOC, and PPB*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of August 2024, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to all counsel of record in this action.

/s/ *Alejandra J. Brigida*
Alejandra J. Brigida

31