**In the Matter Of:**

*THOMAS v*

*STITT*

*DEBORAH ROMINE*

*June 06, 2024*



Exhibit 9

1   Q.   Okay.  One of the topics that you
2   are prepared to testify about today is the
3   organizational relationship between the
4   Governor of Oklahoma, the Pardon and Parole
5   Board, the Board of Corrections and the
6   Department of Corrections as it relates to
7   pardon and parole, correct?
8   A.   Yes.
9   Q.   At a high level, what role can
10  does the DOC, Department of Corrections,
11  play in the parole process?
12  A.   Can you tell me what you mean "at
13  a high level"?
14  Q.   Can you just describe in your
15  words what role the Department of
16  Corrections plays in the Oklahoma parole
17  process?
18  A.   Yes.  We -- the Department of
19  Corrections makes offender records
20  available to the parole investigators at
21  our assessment and reception centers.  And
22  based upon that information, the parole
23  investigator determines a parole date for
24  the offenders.
25       The Department of Corrections, the

1   down a little bit.
2          So in the first instance, DOC
3   makes offender records available to the
4   parole investigator, right?
5       A.   Correct.
6       Q.   And then based on that
7   information, the parole investigator
8   determines the parole date, correct?
9       A.   Correct.
10      Q.   And then DOC also provides the
11  parole investigator with housing and
12  offices to meet with the inmate, correct?
13      A.   Correct.
14      Q.   And just going sequentially, I
15  think you said that if something
16  significant changes after the parole
17  investigator meets with the offender, then
18  the DOC notifies the Pardon and Parole
19  Board of that change, right?
20      A.   Correct.
21      Q.   And then once the parole hearing
22  is scheduled, DOC is responsible for making
23  sure the inmate gets to the parole hearing
24  or makes it to the remote hearing, correct?
25      A.   Correct.

Exhibit 9

1   investigators as part are of the parole
2   process, correct?
3       A.   We provide the inmate's record.
4       Q.   And as part of the inmates record
5   that DOC provides to the parole
6   investigator the inmate's record of
7   completion of DOC programs?
8       A.   Yes.
9       Q.   And then another part of the
10  inmate's records that DOC provides to the
11  parole investigator is the inmate's custody
12  assessments, correct?
13      A.   Yes.
14      Q.   And DOC conducts those custody
15  assessments, correct?
16      A.   Yes.
17      Q.   You're familiar with the Oklahoma
18  Board of Corrections, correct?
19      A.   Yes.
20      Q.   And the Oklahoma Board of
21  Corrections generally sets policies for the
22  Department of Corrections, correct?
23           MS. BRIGIDA:   Object to form.
24      A.   I can't testify -- I don't know.
25      Q.   Do you understand whether the

1   Board of Corrections plays any role in
2   setting policies related to parole process
3   for DOC?
4        A.    I do not -- I do not know.  I
5   know that there's policies, OP policies,
6   and I know that there are P policies.  And
7   the P policies are directing the Board of
8   Corrections.  But I honestly, I don't know
9   the functions of the Board of Corrections.
10       Q.    Do you understand that Topic 5,
11  which you are designated to testify about
12  today, relates to the organizational
13  relationship between the governor, the
14  Pardon and Parole Board, the Board of
15  Corrections and the Department of
16  Corrections as it relates to the pardon and
17  parole process?
18       A.    Yes.
19       Q.    And so are you not prepared to
20  testify today about the role that the Board
21  of Corrections plays in the parole process?
22             MS. BRIGIDA:  Object to form.
23       A.    I'm not aware of the Pardon and
24  Parole Board's active involvement in the
25  parole process.

1   decisions with respect to parole for
2   violent offenders?
3       A.   The governor either signs the
4   parole certificate authorizing the parole
5   or he does not sign the parole certificate,
6   meaning he's not authorizing the parole.
7       Q.   Other than not signing the parole
8   certificate, does the governor indicate
9   anything about his reasons for denying
10  parole?
11          MS. BRIGIDA:  Object to form.
12      A.   I have -- the Department of
13  Corrections is only advised approved or
14  denied.  We -- if there are reasons given
15  for approval or denied, a denial, those
16  reasons are not conveyed to the Department
17  of Corrections.
18      Q.   Does DOC have any direct
19  interaction with the Governor's Office with
20  respect to parole decisions?
21      A.   No.
22      Q.   Who interacts with the Governor's
23  Office with respect to parole decisions?
24          MS. BRIGIDA:  Object to form.
25          MR. LUCKY:  Object to form.

Exhibit 9

1   A.   Yes.
2   Q.   Okay.  And then it says:  The PPU
3   tracks them until they parole to CS,
4   detainer and to the street.
5        Do you see that?
6   A.   Yes.
7   Q.   And that's consistent with your
8   testimony earlier, that DOC maintains files
9   on inmates that are recommended for parole
10  and shares those files with the Pardon and
11  Parole Board, correct?
12  A.   No, that was different testimony
13  about -- I was -- what you are referring to
14  is the case managers in the facility
15  maintain a file on every offender and
16  allows the Pardon and Parole Board access
17  to those files.  This is --
18  Q.   I see.
19  A.   -- talking about something
20  different.
21  Q.   And this is talking about a
22  process by which the PPU maintains files
23  specifically on individuals who are
24  recommended for parole, is that fair?
25  A.   Yes.

Exhibit 9

```
 1   Statute 332.7, Ms. Romine?
 2        A.    I have read it, yes.
 3        Q.    Okay.
 4        A.    I can't say I've memorized it,
 5   but I have read it, yes.
 6        Q.    And was this consistent with your
 7   testimony that certain crimes are eligible
 8   for parole at different times based on the
 9   years in which they were committed?
10        A.    Yes.  I don't know if it's based
11   on -- let me take that back.  I don't think
12   it's based on the years that -- I don't
13   know that it's based on the years the crime
14   was committed.  I know that there's
15   different eligibility for different crimes.
16   So if eligibility is based on the date of
17   conviction, I'm not aware of that.
18        Q.    Okay.  So you just don't know a
19   whole lot about eligibility for parole, is
20   that fair?
21        A.    No, I don't.  No, that's not --
22   that's not -- our -- that's not Department
23   of Corrections.  The Department of Parole
24   Board is the one who determines
25   eligibility.
```

Case 5:20-cv-00944-D   Document 115-9   Filed 08/30/24   Page 9 of 10
THOMAS v STITT                    30(b)(6)                    Deborah Romine
                                                              June 06, 2024
101

1   Q.   Okay.
2        MS. LONG:  Can we take a quick
3   break?
4        THE WITNESS:  Sure.
5        MS. BRIGIDA:  How long do you
6   want, Emily?
7        MS. LONG:  Other than just a
8   couple of minutes is fine, however you
9   all would like.
10       MS. BRIGIDA:  So you want to just
11  do five?
12       MS. LONG:  Sure.
13       MS. BRIGIDA:  Okay.
14       THE VIDEOGRAPHER:  The time is
15  1:44 p.m.  We are now going off the
16  record.
17       (Recess taken from 1:44 p.m. to
18  1:53 p.m. CDT)
19       THE VIDEOGRAPHER:  The time is
20  1:53 p.m.  We are now back on the
21  record.
22  BY MS. LONG:
23  Q.   Okay.  Ms. Romine, I'm going to
24  ask you a couple of questions about the
25  information provided by DOC to parole

1  investigators as part of the parole report

2  process.

3          So you're aware that parole

4  investigators are responsible for preparing

5  an investigative report ahead of the parole

6  hearing, correct?

7      A.   Yes.

8      Q.   And the parole investigator

9  usually interviews the inmate ahead of the

10 parole hearing, correct?

11     A.   Yes.

12     Q.   And the case managers at DOC are

13 responsible for facilitating that interview

14 among other things, right?

15     A.   Yes.  I wouldn't -- again, I

16 don't know who is responsible for setting

17 it up.  I talked to different case

18 managers, supervisors, and the parole

19 investigator in one facility they set up

20 their own meetings.  But we provide the

21 file, the information, yes.

22     Q.   Okay.  So depending on the

23 facility, case managers may help to set up

24 the meetings or they may not help to set up

25 the meetings, is that fair?