CASE NO. CIV-20-944-D

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DWAIN EDWARD THOMAS,

Plaintiffs,

v.

KEVIN STITT, OKLAHOMA BOARD OF CORRECTIONS,
OKLAHOMA DEPARTMENT OF CORRECTIONS, and OKLAHOMA PARDON
and PAROLE BOARD,

Defendants.

DEFENDANT TOM BATES'
MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

ALEJANDRA J. BRIGIDA, OBA#35381
LAUREN J. RAY, OBA#22694
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921 | Facsimile: (405) 521-4518

*Attorneys for ODOC, OBOC, and PPB*

September 4, 2024

# TABLE OF CONTENTS

TABLE OF CONTENTS .............................................................................................i

TABLE OF AUTHORITIES ..................................................................................iii

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT .............................1

STATEMENT OF THE CASE .................................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................3

    *Plaintiff's Judgment and Sentence* ....................................................................3

    *Oklahoma's Parole Process* .................................................................................3

    *Contents of the Investigative Report* ................................................................6

    *Plaintiff's Parole Information and History* ....................................................8

    *Plaintiff's Misconducts at ODOC* ..................................................................10

    *Res Judicata and Collateral Estoppel* ...........................................................12

    *Programs at ODOC* ...........................................................................................13

STANDARD OF REVIEW ....................................................................................14

ARGUMENT AND AUTHORITY ......................................................................15

PROPOSITION I:

    PLAINTIFF'S CLAIMS THAT THE OKLAHOMA PAROLE PROCESS
    VIOLATES THE EIGHTH AMENDMENT AND OKLAHOMA
    CONSTITUTION FAIL AS A MATTER OF LAW ................................15

PROPOSITION II:

    PLAINTIFF ENJOYED A MEANINGFUL OPPORTUNITY FOR
    RELEASE ......................................................................................................21

PROPOSITION III:

    PLAINTIFF'S CLAIMS ARE SUBJECT TO *RES JUDICATA* .........26

**PROPOSITION IV:**

**PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE OR DECLARATORY RELIEF** ..................................................................................................27

**CONCLUSION** .................................................................................................28

**CERTIFICATE OF SERVICE** .................................................................................28

## TABLE OF AUTHORITIES

### CASES

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ................................................................................................................... 14

*Anderson v. State,*
2006 OK CR 6 ............................................................................................................................... 21

*Bias v. Stitt,*
2020 WL 10731244 (W.D. Okla. Dec. 15, 2020) ........................................................ 19

*Bowling v. Director, Virginia Department of Corrections,*
920 F.3d 192 (4th Cir. 2019) ................................................................................... 20, 21,

*Budder v. Addison,*
851 F.3d 1047 (10th Cir. 2017) .............................................................................. 18, 21

*Brown v. Precythe,*
46 F.4th 879 (8th Cir. 2022) ................................................................................... 22, 23

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ................................................................................................................... 14

*Coker v. Georgia,*
433 U.S. 584 (1977) ................................................................................................................... 16

*Cromwell v. County of Sac,*
94 U.S. 351 (1876) ..................................................................................................................... 26

*E.E.O.C. v. Horizon/CMS Healthcare Corp.,*
220 F.3d 1184 (10th Cir. 2000) ........................................................................................ 14

*Graham v. Florida,*
560 U.S. 48 (2010) .......................................................................... 15, 16, 17, 18, 19, 20

*Green v. Mansour,*
474 U.S. 64 (1985) ..................................................................................................................... 28

*Jones v. Mississippi,*
593 U.S. 98 (2021) .................................................................................................. 16, 17, 25

*Kennedy v. Louisiana,*
554 U.S. 407 (2008) as modified (Oct. 1, 2008),
opinion modified on denial of reh'g 554 U.S. 945 (2008)..................................... 15, 16

*King v. Union Oil Co.,*
117 F.3d 443 (10th Cir. 1997) ............................................................................27

*Landes v. McCollum,*
2014 WL 6455483, n.6 (W.D. Okla. Nov. 13, 2014) ..........................................21

*Lewis v. Okla. Pardon & Parole Bd.,*
2019 WL 1500671 (W.D. Okla. Apr. 5, 2019) ....................................................19

*Li Zu v. Avalon Health Care, Inc.,*
806 F. App'x 610 (10th Cir. 2020).....................................................................14

*Martinez v. State,*
2019 OK CR 7 ....................................................................................................19

*Miller v. Alabama,*
567 U.S. 460 (2012) ...........................................................2, 16, 17, 18, 19, 20, 22

*Montana v. United States,*
440 U.S. 147 (1979) ...........................................................................................26

*Montgomery v. Louisiana,*
577 U.S. 190 (2016) ...........................................................2, 16, 17, 18, 19, 20, 22

*Pickens v. S.C. Dep't of Prob., Parole and Pardon,*
2022 WL 2965626 (D.S.C. July 27,2022)..........................................................19

*Piercy v. Maketa,*
480 F.3d 1192 (10th Cir. 2007) .........................................................................15

*Revilla v. Glanz,*
7 F. Supp. 3d 1207 (N.D. Okla. 2014)...............................................................20

*Rodgers v. Whitten,*
2020 WL 8768604 (W.D. Okla. Nov. 3, 2020), report and recommendation adopted
2021 WL 735647 (W.D. Okla. Feb. 25, 2021) ............................................... 18, 19

*Roper v. Simmons,*
543 U.S. 551 (2005) .......................................................................................15, 20

*Stan Lee Media, Inc. v. Walt Disney Co.,*
774 F.3d 1292 (10th Cir. 2014) ................................................................. 27

*True v. United States,*
190 F.3d 1165 (10th Cir. 1999) ................................................................. 15

*Water Pik, Inc. v. Med-Systems, Inc.,*
726 F.3d 1136 (10th Cir. 2013) ................................................................. 15

## STATUTES

OKLA. STAT. tit. 21, § 13.1 ......................................................................... 21

OKLA. STAT. tit. 57 § 332.7 ........................................................................ 23

OKLA. STAT. tit. 57 § 571 ............................................................................. 6

42 U.S.C. § 1983 .................................................................. 2, 18, 19, 27

42 U.S.C. § 1997(e) ..................................................................................... 14

## RULES

Fed. R. Civ. P. 56 ................................................................................... 1, 14

## OTHER

OKLA. CONST. art. II, § 9 ....................................................................... 2, 20

OKLA. CONST. art. VI, § 10 ............................................................ 2, 4, 5, 11, 12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

DWAIN EDWARD THOMAS,

     Plaintiff,

v.

                                 **Case No.: CIV-20-944-D**

KEVIN STITT, *et al,*

     Defendants.

## DEFENDANT TOM BATES' MOTION FOR
## SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Plaintiff's claims against Executive Director of the Oklahoma Pardon and Parole Board ("PPB") Tom Bates ("Director Bates," "Bates," or "PPB")[1] in his official capacity fail as a matter of law under the undisputed material facts, as: (1) Plaintiff's claims under the Eighth Amendment and the Oklahoma Constitution are legally untenable; (2) Plaintiff was provided a meaningful access to parole, and (3) Plaintiff is re-litigating an issue which has already been fully adjudicated. Director Bates hereby moves for summary judgment pursuant to Fed. R. Civ. P. 56.

## STATEMENT OF THE CASE

Plaintiff, a 44-year-old currently in the custody of Oklahoma Department of Corrections ("ODOC"), pled guilty to the heinous murders of his mother, step-father, and his step-grandfather. *See ODOC Field File,* attached as Exhibit 1, at ODOC 495, 502, 512. Although Plaintiff was a minor at the time of his offenses, he was convicted and sentenced as an adult due to their violent nature. *Id.* at ODOC 326, 344. Plaintiff is currently serving

---

[1] As of 2020, Tom Bates replaced Steven Bickley as the Executive Director of the PPB.

three life sentences with the possibility of parole. *Id.* Plaintiff filed this action pursuant to 42 U.S.C. § 1983 alleging that he is not afforded a meaningful and realistic opportunity for release through Oklahoma's parole system, in violation of his rights under the Eighth Amendment and the Oklahoma Constitution. [Doc. 1 at p. 37 ¶ 119, pp. 38–39] (citing *Miller v. Alabama*, 567 U.S. 460 (2012); *Montgomery v. Louisiana*, 577 U.S. 190 (2016). Specific to Bates, Plaintiff alleges that the PPB's policies fail to explicitly consider youth at the time of the offense. [Doc.1 at p. 26 ¶ 80-82].

Plaintiff seeks both a declaration that Oklahoma's parole process is "unconstitutional . . . to the extent that it fails to provide adequate consideration of youth status," as well as injunctive relief "to remedy Oklahoma's unconstitutional failure to provide a meaningful and realistic opportunity for release to Mr. Thomas, as well as others similarly situated."[2] Plaintiff specifically alleges he "received neither adequate consideration of his youth at sentencing nor any meaningful and realistic opportunity [sic] release . . . in violation of the Eighth Amendment and OKLA. CONST. art. II, § 9." [Doc. 1 at ¶ 41–44][3]. As discussed below, each of Plaintiff's claims fail as a matter of law.

---

[2] Additionally, Plaintiff has not been appointed to represent a class, nor has Plaintiff even filed a motion for class certification. Therefore, relief can only be granted as to this Plaintiff.

[3] Plaintiff brings this lawsuit solely based on his claim that the Oklahoma Parole System does not provide him meaningful access to parole. However, parole is only one part of the system in Oklahoma, which also includes pardon and commutation. An offender can apply for commutation, which allows an inmate to petition PPB to seek correction of an "unjust or excessive sentence." *See Commutation Application,* attached as Exhibit 14. PPB has authority under Oklahoma law to recommend reducing Life sentences to definite (shorter) terms and/or commuting consecutive Life sentences to run concurrently, so that an offender would only need to be paroled once to be released. OKLA. CONST art. VI, § 10, 57 O.S. 332.2(H). If denied, applicants are then eligible to reapply for commutation every three years, doubling the opportunities for a violent offender to be considered for relief. Plaintiff has been eligible to

## STATEMENT OF UNDISPUTED MATERIAL FACTS

*Plaintiff's Judgment and Sentence*

1.      On December 9, 1995, Plaintiff was arrested in Sequoyah County for three (3) counts of Murder in the First Degree of his mother, step-father, and step-grandfather. *See* Ex 1 at ODOC 318-321.

2.      On March 20, 1997, Plaintiff pled guilty to three (3) counts of First-Degree Murder in Sequoyah County (CF 1995-380). Plaintiff is serving his sentences to Counts I and II concurrently. Plaintiff will then serve his sentence as to Count III consecutively to Counts I and II. *Id.*

3.      Plaintiff shot and killed his mother and stepfather. Plaintiff also stabbed his step-grandfather to death *Id.* at ODOC 495, 502, 512.

4.      Plaintiff was convicted and sentenced as an adult. *Id at* ODOC 326, 344.

5.      Plaintiff is serving three (3) Life Sentences **that are all eligible for Parole.** *See Plaintiff's PPB File*, attached as Exhibit 2 at PPB 20-45; *see also* Ex. 1 at ODOC 323, 356.

6.      As of the date of this filing, Plaintiff is 44 years old. *See* Ex. 2 at PPB 21.

*Oklahoma Parole Process[4]*

7.      When an individual is brought into ODOC custody, PPB parole investigators are responsible for the docketing of the inmate's eligibility for parole, and for reviewing and

---

apply for commutation since his reception into ODOC—yet has **never** applied. Rather than exercising his legal rights to make his opportunity for release more meaningful, Plaintiff seeks to impose partiality into the parole process, requesting special treatment for his status as a juvenile at the time of his offenses.

[4] For the purposes of this lawsuit, regular parole docket consideration is at issue not medical parole, administrative parole, or aging prisoner parole.

confirming eligibility for parole throughout the parole process. *See Bates Depo*, attached as Exhibit 3 at p. 74:4-21, *see also Long Depo* attached as Exhibit 4 at pp. 118:14-119:7, pp. 133:18-134:4.

8.      Parole eligibility date calculations are based on statute. *See* Ex. 3, at 72:5-9, *See also PPB Admin. Rule*, attached as Exhibit 5, at 515:25-3-1.

9.      This date is calculated when an inmate is processed into ODOC custody. Ex. 3, at p. 72:10-13; Ex. 4, at pp. 133:18-134:4.

10.     For violent offenders, there is a two-step process for parole. The first step is called stage one or jacket review. In stage one, the PPB members review the set of materials provided to PPB, and then vote on whether to pass the inmate to stage two. *See* Ex. 3 at pp. 67:6-68:1; *see also* Ex. 5 at 515:25-7-2.

11.     PPB members are given the investigative report prepared by the PPB parole investigator, all support letters (if any), all victim letters (if any), and all district attorney ("DA") narratives (if any). Ex. 3 at pp. 56:24-57:9.

12.     The parole investigator, an employee of PPB, is responsible for conducting an investigation and then preparing, drafting, and submitting an investigative report in advance to the parole hearing. Ex. 3 at pp. 73:16-74:3; *see also* Ex. 4 at p. 133:11-14, p. 134:10-12, p. 180:14-17 and OKLA. CONST. art. VI, § 10.

13.     PPB members consider many factors in making parole decisions. *See Luck Depo*, attached as Exhibit 6 at p. 125:4-6.

14.     As a part of their investigations, parole investigators conduct face to face interviews with each offender scheduled on monthly dockets, unless an interview is not

possible, or an exception applies. *See PPB Investigator Handbook*, attached as Exhibit 7 at p. 6, *see also* Ex. 4 pp. 166:23-167:1, p. 179:8-10.

15.     If a face-to-face interview with the offender is not possible, parole investigators can conduct personal interviews through a telephone call. Ex. 4 at p. 229:12-230:8.

16.     If a personal interview is not possible, interview questionnaires may be used. *See* Ex. 7 at p. 7; *see also* Ex. 4 at p. 229:21-230:8.

17.     The parole investigator makes a recommendation as to whether an inmate should be recommended for parole. Ex. 7 at p. 31; Ex. 4 at p. 272:13-15, p. 274:7-12. However, Board members are not required to follow the investigator's recommendation. *See* Ex. 6 at p. 85:10-15; 19-21; *see also Doyle Depo*, attached as Exhibit 8 at p. 111:19; p. 120:5; pp. 65:21-66:10.

18.     Once the parole dockets are finalized, the investigative reports are given to the PPB members for review about three weeks out from the hearing/meeting date. *See* Ex. 3 at p. 55:5-22.

19.     While the PPB may grant parole for nonviolent offenses, for violent offenses, PPB members can only vote to recommend release to parole to the Governor. *See* Ex. 5 at 515:25-9-1; s*ee also* OKLA. CONST. art. VI § 10.

20.     During stage one, the offender, victim, and the district attorney are not allowed to speak to the PPB members. Ex. 3 at p. 69:12-25.

21.     If PPB members vote to move the violent offender through the parole process, the next step is stage two, where the inmate makes a personal appearance. Ex. 3 at p. 70:18-23, p. 71:17-20; *see also* Ex. 5 at 515:25-7-2.

22.     At the stage two parole hearing for a violent offense, the Board will vote to either recommend or deny parole for the inmate. There are no limitations on the factors the Board may consider in making its recommendations to the Governor. *Id.* at 515:25-9-1.

23.     The parole docket sheets provide the information needed to determine an individual's age at the time of the offense. Ex. 6 at pp. 168:12-169:8.

24.     An inmate's classification as violent or nonviolent offender is defined by statute (as enumerated in 57 O.S. § 571). *See* Ex. 3 at p. 64:10-14; *see also* Ex. 5 at 515:25-1-2.

*Contents of the Investigative Report*

25.     Section 1 contains the name, date of birth, and gender of the inmate. Ex. 7 at p. 8.

26.     Section 2 contains the docket information, including where the inmate is assigned, his security level and reception date, the amount of county jail time served for the current sentence, number of other convictions, as well as the number of prior incarcerations. *Id.* at pp. 8-9.

27.     Section 3 contains information about the controlling case, or the one with the longest running case. Ex. 4 at pp. 212:16-213:5. This includes the offense type, offense, sentence, and county of conviction, along with any prior parole considerations. Ex. 7 at pp. 12-13.

28.     Section 4 includes information on concurrent or consecutive sentences. *Id.* at pp. 14-15.

29.     Section 5 of the report provides the district attorney's version of the offense. Ex. 4 at p. 216:22-25; Ex. 7 at p. 16.

30.     Section 7 provides the inmate's version of the offense. *Id.* at 17.

31.     Section 9 includes other relevant information, including undocumented felony convictions, explanations that cannot be entered elsewhere, explanations of discrepancies between information as shown on documents and in current records, all information for which the inmate is the sole source, informal disciplinary sanctions not related to substance abuse or violent behavior, and Native American tribal affiliation, if any. *Id.* at. 20.

32.     Section 13 includes ODOC disciplinary records. Ex. 4 at p. 251:10-12. This includes all misconducts the inmate has received during the previous year as well as all misconducts for violent behavior and drug/alcohol related rule violations imposed within the past ten years. Ex. 7 at p. 23.

33.     Section 14 includes information about substance abuse and mental health history. *See* Ex. 4 at p. 252:17-20; Ex. 7 at pp. 23-26.

34.     Section 15 of the report is for documented violent behavior. Ex. 4 at p. 252:17-20. The purpose of this is to illustrate behavioral progression. These are for misconduct reports more than ten years old and not already duplicated in Section 13. Ex. 7 at pp. 26-27.

35.     Section 16 of the report is for program needs and participation. Ex. 4 at p. 259:19-22; Ex. 7 at pp. 27-29. This includes information on programs the offender is currently participating in, programs completed, and describes those the types of programs (education, substance, etc.). *Id.*

36.     Section 17 is for the inmate's parole plan, including where the offender would live, any expected employment, or plans for education. Ex. 4 at p. 260:20-22; Ex. 7 at p. 29.

37.    Section 18 is for the inmate's personal information, including his or her marital status and number of dependents. Ex. 4 at pp. 262:21-263:1. It also includes job skills an inmate had before incarceration, the employment history prior to incarceration, and the family history of the inmate. Ex. 7 at pp. 30-31; Ex. 4 at p. 265:4-12, p. 267:22-24.

38.    Section 20 contains the investigator's recommendation. Ex. 4 at p. 272:13-15, Ex. 7 at p. 31. Investigators have full discretion when determining what to include in this section of the report. Ex. 4 at pp. 274:24-275:5.

39.    The information regarding the inmate's age at the time of the underlying offense is available in every investigative report, as the birth date and case file date are available on every report. *See* Ex. 6 at pp. 164:21-165:4, p. 111:6-11, p. 114:21-25, *see also* Ex. 8 at p. 67:2-16.

40.    The age of the inmate at the time of the underlying offense is an important factor in parole consideration and decision making. Ex. 8 at p. 67:12-23.

*Plaintiff's Parole Information and History*

41.    Plaintiff was first considered for parole in October of 2010 at the age of 30 after serving one third (15 years) of the concurrent life sentences he received for Count I and Count II. Ex. 2 at PPB 44-45.

42.    The Board considered Plaintiff for parole, regularly every three (3) years, for a total of five (5) times. (October 2010 Parole, October 2013 Parole, October 2016 Parole, October 2019 Parole, October 2022 Parole). *Id.* at. PPB 20-45.

43.    Each of the five (5) times Plaintiff appeared on the parole docket, a PPB parole investigator conducted an investigation and then prepared and submitted an Investigative Report. *Id.* at PPB 21-23, 27-29, 33-38,40-42.

44.    In Plaintiff's 2010 Investigative Report, the parole investigator wrote, "Mr. Thomas is incarcerated for violent offenses for the death of three people. He has accumulated nine total misconduct reports, including four for assaultive behavior and three for possession of a homemade knife. Given the nature of his offenses, I would need to see a longer period of non-assaultive behavior to make a favorable recommendation." *Id.* at PPB 42.

45.    In Plaintiff's 2013 Investigative Report, the parole investigator set forth, in pertinent part, "No. The offender is incarcerated for three violent offenses. He has accumulated ten misconduct reports, including four for assaultive behavior, and three for possession of a homemade knife. Parole is not recommended." The risk assessment notes that Plaintiff was 16 years or younger at the time of his arrest. *Id.* at PPB 36-38.

46.    In Plaintiff's 2016 Investigative Report, the parole investigator stated the following about Plaintiff in his recommendation to the Parole Board: "Mr. Thomas has been in DOC custody for these offenses since he was seventeen." *Id.* at PPB 33-35.

47.    In Plaintiff's 2019 Investigative Report, a parole investigator stated the following about Plaintiff in their investigator recommendation to the Parole Board: "Thomas was 15 at the time of his arrest." *Id.* at PPB 27-29.

48.    In Plaintiff's 2022 Investigative Report, a parole investigator set forth the following about Plaintiff: "No, parole is not recommended. Even though it is his first

incarceration, the violent nature of the crimes and consistent pattern of misconducts shows that the offender is still a continued risk to the public." *Id.* at PPB 20-23.

49.     Plaintiff has never received a favorable vote by the Pardon and Parole Board and has never made it past stage one (i.e., jacket review). *See* Ex. 2 at PPB 20-45. Plaintiff has never been passed to stage two. *Id.*

*Plaintiff's Misconducts at ODOC*

50.     Plaintiff has earned multiple misconducts during his incarceration at ODOC, including multiple Class X misconducts. Ex. 1 at ODOC 875-876.

51.     "Class X misconducts are the most severe misconduct provided by the ODOC disciplinary policy." *See* [Doc. 36-15].

52.     On September 6, 1998, Plaintiff battered an ODOC employee, and accordingly received a Class X misconduct for battery of staff. (Ex. 1 at ODOC 875-876). On January 27, 1999, Plaintiff battered a fellow inmate, thus earning yet another misconduct. *Id.* On April 17, 1999, Plaintiff received a misconduct for lying to a staff member. *Id.* On July 9, 1999, Plaintiff's conduct warranted another Class X misconduct, this time for possession of a weapon and marijuana seeds. *Id.* On July 10, 1999, Plaintiff jumped on a staff member's back and tried to choke ODOC Correctional Officer Reese Lane with a microphone cord. This dangerous behavior resulted in another Class X misconduct for battery of staff. *Id.* Also on July 10, 1999, Plaintiff received a Class X misconduct for possession of multiple weapons (4 syringes and 2 shanks). *Id.* On July 14, 1999, Plaintiff threatened sexual assault against an ODOC staff member, thereby earning yet another Class X misconduct. *Id.* Plaintiff made the following expletive-laden threat against ODOC correctional officer Strader: "open this door and I'll f*ck

you in the a*s Strader, I'll f*ck you like a b*tch"[5] *Id.* On December 13, 1999, Plaintiff received yet another Class X misconduct for possession of a weapon. *Id.*

53.    On August 2, 2000, Plaintiff's manufacturing of intoxicants led to his receipt of a misconduct. *Id.*

54.    On October 11, 2011, Plaintiff received a misconduct for unauthorized use of state property. Plaintiff was found in possession of an electrical device taken from maintenance. *Id.*

55.    On January 31, 2017, Plaintiff received a Class X misconduct for possession of five cellphones and three chargers. *Id.* On June 22, 2017, a reporting officer conducted a urine test on Plaintiff. He tested positive for Methamphetamines and received a misconduct. *Id.*, *see also* ODOC 785. On November 28, 2017, Plaintiff received a Class X misconduct for possession of a cell phone. *Id.*

56.    On July 30, 2020, Plaintiff received a Class X misconduct for selling/bartering homemade brew (i.e., dark red liquid that was being made into brew was found in his cell during cell inspections). *Id.*

57.    On January 3, 2022, Plaintiff received a Class X misconduct for possession of a cellphone and phone charger. *Id.* On January 23, 2022, Plaintiff received a Class X misconduct for possession of a cellphone. *Id.*

58.    On January 8, 2024, Plaintiff received a Class X misconduct for possession of a cellphone. Ex. 1 at ODOC 1121-1126.

---

[5] The details to Plaintiff's misconduct are relevant to this lawsuit and further illustrate Plaintiff's behavior while incarcerated at ODOC.

59.     Plaintiff received all misconducts at ODOC while over the age of 18 years old. *See* Ex. 1 at ODOC 873-876, *see also* Ex. 2 at PPB 21.

60.     On Plaintiff's ODOC Cell Assignment Form from 2000, his ODOC case manager states the following: "Inmate claims to be member of white supremacist group and refuses to live with 'ni**ers'" and cites to a letter written by Plaintiff for supporting evidence. Ex. 1 at ODOC 854-856.

61.     While incarcerated at ODOC, Plaintiff wrote a letter to his ODOC case manager stating:

> I would like it to be noted, and logged in my jacket, that I am an extreme white supremacist and am a member of the white identity movement, it is against my Christian belief along with a violation of my constitutional rights to live with a ni**er.…If a situation does arise in which you have no choice, then I will oppose to the best of my ability, even physically necessary. So therefore, to save future problems, avoid the circumstance of placing a ni**er in my cell. Respectfully, and sincerely, Dwain Thomas.

*Id.* at ODOC 600.

### *Res Judicata and Collateral Estoppel*

62. Plaintiff filed his Petition-in-Error with Brief-in-Support to the Oklahoma Court of Criminal Appeals on February 19, 2019, alleging the district court abused its discretion when it denied his application for Post-Conviction Relief. *See Petition in Error,* attached as Exhibit 9; *Application for Post-Conviction*, attached as Exhibit 10; *State's Response to Application for Post-Conviction,* attached as Exhibit 11; and *Order Post-Conviction Relief,* attached as Exhibit 12. In his brief, Plaintiff claimed that though he was not serving a sentence of life without parole, he was nonetheless subject to a life without parole as he was denied meaningful opportunity for release within his lifetime. Ex. 9 at p. 12.

63.    The Oklahoma Court of Criminal Appeals affirmed the denial of Plaintiff's Application for Post-Conviction relief, stating "Petitioner is eligible for parole consideration after serving fifteen years of each of his consecutive life sentences," and therefore he "has a material opportunity to obtain release on parole during his natural lifetime from his sentences in Sequoyah County District Court Case. No. CF-1995-380A". *See Order* attached as Exhibit 13 at p. 2.

*Programs at ODOC*

64.    While incarcerated at ODOC, Plaintiff received his GED certificate. Plaintiff attended and completed several college courses (66 credit hours overall) through Langston University (an accredited university) and received college achievement credits. (*See* Ex. 1 at ODOC 490, 584-585). Plaintiff participated in and completed Module 1 of the Licensed Trades Academy program. *Id.* at ODOC 548, 725-726,750. Plaintiff also earned 30 credits for completing six months of Session 3 of the Licensed Trades Academy program. *Id.* at ODOC 748-749. Plaintiff participated in and completed the Victim Impact- Listen & Learn program, the Building Social Networks program, the SAMHSA Anger Management program, the Biblical Interpretation program, and the Thinking for a Change program. *Id.* at ODOC. 481-483, 659,742. Plaintiff applied for a maintenance job and received approval for the job. *Id.* at ODOC 723. Plaintiff received his Refrigeration Technician certification. *Id.* at ODOC 728. Plaintiff received his Residential Electrician's Assistant certification and received his Commercial/Industrial Electrician's Assistant certification. *Id.* at ODOC 729-730. Plaintiff participated in and completed the HVAC Esco Institute training and received his Universal Technician certification through the Esco Institute. *Id.* at ODOC 731-732. Plaintiff attended

13

the RMC Research Corp. and took the critical thinking CAPP (collegiate assessment of academic proficiency) test. *Id.* at ODOC 735-736. Plaintiff participated in and completed the 2006 Mechanical Code Training, passed his Mechanical Journeyman examination, and received his license from the State of Oklahoma Construction Industries Board. *Id.* at ODOC 738-740. Plaintiff participated in and completed the Paralegal Studies Certificate Program through Blackstone Career Institute. *Id.* at ODOC 1080.

## STANDARD OF REVIEW

Summary judgment shall be granted when the moving party demonstrates that it is entitled to judgment as a matter of law because there is no evidence within the pleadings, depositions, answers to interrogatories, or affidavits to support the claims of the nonmoving party or that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). An issue is "genuine" only if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "Conclusory, self-serving assertions, devoid of factual support, do not create a genuine issue of material fact." *Li Zu v. Avalon Health Care, Inc.,* 806 F. App'x 610, 617 (10th Cir. 2020).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Although a plaintiff is entitled to all reasonable inferences from the record, she must still marshal sufficient evidence requiring submission of the matter to the jury in order to avoid summary

judgment." *Piercy v. Maketa*, 480 F.3d 1192, 1197 (10th Cir. 2007). Thus, if the plaintiff bears the burden of persuasion on a claim at trial, then summary judgment may be warranted if (a) Defendant points out a lack of evidence to support an essential element of that claim, and (b) Plaintiff cannot identify specific facts that would create a genuine issue. *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143–44 (10th Cir. 2013). Even so, the existence of a fact issue does not preclude entry of summary judgment where there is no evidence to support a dispute on that issue or the evidence is so one-sided that no reasonable juror could find for the other side. *True v. United States*, 190 F.3d 1165, 1177 (10th Cir. 1999).

## ARGUMENT AND AUTHORITY

**PROPOSITION I: PLAINTIFF'S CLAIMS THAT THE OKLAHOMA PAROLE PROCESS VIOLATES THE EIGHTH AMENDMENT OR THE OKLAHOMA CONSTITUTION FAIL AS A MATTER OF LAW.**

Through a series of cases since 2005, the United States Supreme Court has found that the application of certain punitive measures to juvenile offenders violates the Eighth Amendment. First, in *Roper v. Simmons*, 543 U.S. 551 (2005), the Supreme Court held that the Eighth Amendment prohibits capital punishment for juveniles. Second, in *Graham v. Florida*, 560 U.S. 48 (2010), the Court found the Eighth Amendment prohibits sentencing juveniles who commit *non*-homicide offenses to life *without* parole. There, the court specifically found that non-homicide offenders could not be required to serve life in prison without "some meaningful opportunity for release based on demonstrated maturity and rehabilitation." *Graham*, 560 U.S. at 69. This is because "there is a line between homicide and other serious violent offense" as nonhomicide offenses "cannot be compared to murder in their severity and irrevocability." *Id.* at 69, (quoting *Kennedy v. Louisiana*, 554 U.S. 407, 436-438, as

modified (Oct. 1, 2008), opinion modified on denial of reh'g, 554 U.S. 945 (2008), *See also Coker v. Georgia,* 433 U.S. 584, 598 (1977) (plurality opinion).

In noting the difference between homicide and non-homicide offenders, *Graham* did not require juvenile homicide offenders receive the same meaningful opportunity for release. *Graham* does not even require a juvenile non-homicide offender to be released from prison during his or her lifetime. *Graham,* 560 U.S. at 75 ("The Eighth Amendment does not foreclose the possibility that persons convicted of non-homicide crimes committed before adulthood will remain behind bars for life.").

Third, in *Miller v. Alabama*, 567 U.S. 460 (2012), the Supreme Court held that a law *mandating* life imprisonment without the possibility of parole for a homicide offense is unconstitutional as applied to juveniles. The Court's ruling in *Miller* did "not foreclose a sentencer's ability to [sentence juvenile offenders to life without parole] in homicide cases." *Id.*at 480. Instead, *Miller* requires all jurisdictions to specifically consider a juvenile offender's youth and attendant characteristics prior to imposing a sentence of life imprisonment **without** parole. *Miller*, 567 U.S. at 483. Thus, *Miller* is not applicable to juveniles sentenced to life **with** the possibility of parole. In *Montgomery v. Louisiana*, the Supreme Court held that *Miller* applied retroactively, finding "[a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than resentencing them." 577 U.S. 190, 212-13 (2016).

Most recently, the Supreme Court held in *Jones v. Mississippi* that "[i]n a case involving an individual who was under 18 when he or she committed a homicide, a State's discretionary sentencing system is both constitutionally necessary and constitutionally sufficient" and thus

did not violate the Eighth Amendment. 593 U.S. 98, 103 (2021). The court recognized that, before sentencing a juvenile offender to life without parole, *Miller* required that a sentencer have discretion to consider youth before imposing a life-without parole sentence. *Id.* at 109. The court also noted that *Miller* "did not impose a formal factfinding requirement' and added that 'a finding of fact regarding a child's incorrigibility is not required.'" *Jones*, 593 U.S. 103-104 (quoting *Montgomery*, 577 U.S. at 211). Thus, even when sentencing a juvenile to life without parole, a sentencer is not required to perform any specific fact-finding requirement, but instead must only have "discretion to consider youth before imposing a life-without parole sentence." *Id.* at 109. In fact, the *Jones* Court determined that *Miller* operates on a presumption that a trial court will consider an offender's youth prior to sentencing *Jones*, 593 U.S. 113-114 ("If the Sentencer has the discretion to consider the defendant's youth, the sentencer necessarily will consider the defendant's youth[.]").

Plaintiff seeks to extend these cases—all of which address the imposition of life sentences *without* parole upon juveniles who committed *non-homicide* crimes—to his sentence of life *with the possibility of parole* for the crime of homicide. This approach is fundamentally mistaken. None of these cases contain any suggestion that they would or should be applied in circumstances wherein a juvenile was convicted of homicide. Nor do these cases apply in circumstances, like Plaintiff, in which juveniles sentenced to life retained the possibility of parole. In fact, *Graham* distinctly drew a line between homicide and non-homicide offenders. *Graham*, 560 U.S. at 69. Simply put, according to *Graham*, Plaintiff, as a homicide offender, is not of the class of offenders which retains a constitutional right to a meaningful opportunity for parole. Likewise,

the fact that Plaintiff was sentenced to life with the possibility for parole—despite his status as a homicide offender—renders *Miller* and *Montgomery* inapplicable. UMF Nos. 1-6.

The inapplicability of Plaintiff's cited cases is further reflected by Tenth Circuit case law interpreting *Graham*. In *Budder v. Addison*, the Tenth Circuit explained that *Graham* applies only to juvenile offenders "who ***did not*** commit homicide." *Budder v. Addison*, 851 F.3d 1047, 1057 (10th Cir. 2017) (citing *Graham*, 560 U.S. at 60-61) (emphasis added). Accordingly, because Plaintiff did commit homicide, *Graham* is inapplicable.

This point is further reinforced by several analogous local District Court Opinions. The first is *Rodgers v. Whitten*, a recent, strikingly similar case from the Western District of Oklahoma. *See* No. CIV-20-839-PRW, 2020 WL 8768604, at *2 (W.D. Okla. Nov. 3, 2020), report and recommendation adopted, No. CIV-20-00839-PRW, 2021 WL 735647 (W.D. Okla. Feb. 25, 2021). There, a state prisoner filed an action pursuant to 42 U.S.C. § 1983 arguing his life sentence for a murder he committed at the age of sixteen violated his Eighth Amendment rights under *Miller v. Alabama*, 567 U.S. 460 (2012). The plaintiff further argued that Oklahoma's parole procedures did not provide a reasonable opportunity for release. *Id.* In his Order adopting the Report and Recommendation, United States District Judge Patrick R. Wyrick stated "Petitioner has several problems. First, as a homicide offender, he is not in the class of offenders with a constitutional right to a meaningful opportunity for parole. Under *Miller*, he could have been sentenced to life with no possibility of parole." *Id.* at *1. Judge Wyrick then stated, in relevant portions:

> The Supreme Court in *Graham v. Florida, 560 U.S. 48 (2010)* and its progeny merely held that those who commit a **non-homicide** offense as a juvenile must be given a meaningful opportunity for parole... Petitioner's bigger problem is that he committed a homicide (felony murder), which places him in the class of

> juveniles who can be denied the possibility of parole, so long as the sentencing judge had the opportunity to consider and impose a sentence that included the opportunity for parole. Given that Petitioner was sentenced to life, his sentencing judge clearly had that opportunity.

*Id* at *1. (emphasis added). *See also Bias v. Stitt*, No. CIV-20-989-SLP, 2020 WL 10731244 (W.D. Okla. Dec. 15, 2020), report and recommendation adopted, No. CIV-20-989-SLP, 2021 WL 3008606 (W.D. Okla. July 15, 2021) (concluding that the plaintiff's Eighth amendment claim fails as neither *Miller* nor *Montgomery* applies to his life sentence and dismissing § 1983 complaint).; *See Lewis v. Okla. Pardon & Parole Bd.*, No. CIV-18-1205-G, 2019 WL 1500671, at *1 (W.D. Okla. Apr. 5, 2019) (concluding that *Miller* did not apply because "Plaintiff was not sentenced to life-without-parole and has in fact been considered for parole on at least six occasions" and dismissing § 1983 complaint); *See also Pickens v. S.C. Dep't of Prob., Parole, and Pardon Servs.*, No. 8:22-cv-00500-RBH, 2022 WL 2965626, at *3 (D.S.C. July 27, 2022) (explaining that *Miller* does not extend (1) to juvenile offenders sentenced to life *with* parole and (2) beyond sentencing proceedings).

The Oklahoma Court of Criminal Appeals has determined that even under the Oklahoma Constitution, taking into account *Miller* and *Graham*, "[a] State is not required to guarantee eventual freedom to a juvenile offender." *Martinez v. State*, 2019 OK CR 7, ¶ 8. There, the plaintiff was sixteen years old when he committed of murder and shooting with intent to kill. The plaintiff claimed he would not be considered for parole until he was 54 years of age, and not eligible for release on parole until he was 79 years old in violation of *Miller*. The Oklahoma Court of Criminal Appeals determined that that "[b]ased upon the length of Petitioner's sentences and the current status of the law, we find that Petitioner has some

19

meaningful opportunity to obtain release on parole during his lifetime" and therefore, there was no violation of the Eighth Amendment or the Oklahoma Constitution. *Id.*

Finally, other jurisdictions have refused to extend *Miller* in the manner Plaintiff requests. In *Bowling v. Director, Virginia Department of Corrections*, 920 F.3d 192, 197 (4th Cir. 2019), the Fourth Circuit specifically held that *Miller* did not extend to a juvenile offender's parole proceedings. *Id.* After discussing *Roper, Graham, Miller,* and *Montgomery,* the court concluded:

> Appellant asks this court to extend the Supreme Court's Eighth Amendment jurisprudence to juvenile parole proceedings and find that it is cruel and unusual punishment for a parole board to deny juvenile offenders' parole without specifically considering age related mitigating characteristics as a separate factor in the decision-making process. Granting that request would require us to extend the legacy of Roper, Graham, and Miller in two ways. First, we would have to find that juvenile specific Eighth Amendment protections extend to juvenile homicide offenders sentenced to life with parole. And second, we would have to find that those protections extend beyond sentencing proceedings. We decline to go so far.

*Id.* at 197.

As an inmate who was sentenced to life with a possibility of parole as a juvenile for committing three homicides, Plaintiff's claims under the Eighth Amendment and Oklahoma Constitution fail. OKLA. CONST. art. II, § 9 is virtually identical to the Eighth Amendment to the United States Constitution; § 9 prohibits "cruel or unusual punishments," while the Eighth Amendment prohibits "cruel and unusual punishments." *Revilla v. Glanz,* 7 F. Supp. 3d 1207, 1219 (N.D. Okla. 2014).

Plaintiff was convicted of three (3) violent homicide offenses he committed when he was a juvenile. UMF 2-4. Because of the violent nature of his crimes, Plaintiff does not fall within the ambit of the Eighth Amendment's prohibition on life sentences without the

possibility of parole. *Budder*, 851 F.3d at 1057. Plaintiff <u>could have</u> received a life sentence without the possibility of parole, but he did not. Even if Plaintiff received a "de facto" life sentence without parole, this would not violate the Eighth Amendment or the Oklahoma Constitution as the court had the discretion to sentence him to life without the possibility of parole.

**PROPOSITION II:   PLAINTIFF ENJOYED A MEANINGFUL OPPORTUNITY FOR RELEASE.**

Contrary to Plaintiff's assertions, and even though he is within the class of inmates who may lawfully be required to serve life without parole, the undisputed facts reflect that he has been afforded a meaningful opportunity for parole. To illustrate, for the purposes of parole in Oklahoma, a life sentence is calculated as 45 years. *Anderson v. State*, 2006 OK CR 6, ¶ 24 (Okla. 2006).[6] Plaintiff was eligible for Parole after serving 15 years, one-third (1/3) of his sentence, in October of 2010. UMF 41. Plaintiff has since been considered for parole on five different occasions, beginning at the age of 30. UMF 42.

Other jurisdictions who have dealt with issues comparable to those raised in this case, have found that systems similar to Oklahoma's parole system do provide a meaningful opportunity for parole. In *Bowling*, *supra*, the Fourth Circuit first determined that the protections of *Miller* and its lineage did not reach the plaintiff, a juvenile offender who has and will continue to receive parole determination. *Bowling*, 920 F.3d at 198. The Court continued and found that, to the extent *Miller* and its progeny require a meaningful opportunity for

---

[6] In 2000, Oklahoma adopted a statute requiring prisoners convicted of certain crimes to serve at least 85% of a sentence of imprisonment. OKLA. STAT. tit. 21, § 13.1. However, because Plaintiff was convicted prior to that date, it does not apply to him. *Landes v. McCollum*, No. CIV–14–190–R, 2014 WL 6455483, at *3 n.6 (W.D. Okla. Nov. 13, 2014).

release, that requirement was satisfied when the parole board factors for parole included: "whether [Appellant's] release would be compatible with public safety and the mutual interests of society and [Appellant]," "whether [Appellant's] character, conduct, vocational training and other developmental activities during incarceration reflect the probability that [he] will lead a law-abiding life in the community and live up to all the conditions of parole," "[Appellant's] personal history," "[Appellant's] institutional adjustment," "[Appellant's] change in attitude toward [himself] and others," "[Appellant's] release plans," "[Appellant's] evaluations," "impressions gained ... by the parole examiner," and "any other information provided by [Appellant's] attorney, family, victims or other persons." *Id.* The Court concluded that these factors "allowed the Parole Board to fully consider the inmates age at the time of the offense, as well as any evidence submitted to demonstrate his maturation since, and account for the concern at the heart of *Graham* and *Miller:* 'that children who commit even heinous crimes are capable of change.'" *Id,* quoting *Montgomery* 136 S. Ct. at 736.

In *Brown v. Precythe,* 46 F.4th 879, 887 (8th Cir. 2022), the court found that Missouri provides "some meaningful opportunity" for an offender to obtain release. *Id.* Missouri's parole process is based on demonstrative maturity and rehabilitation and provides offenders with advance notice of their parole review, an opportunity to be heard (including through a delegate), and an opportunity to submit letters of support. Inmates are interviewed by parole staff before their hearings, and the parole board considers staff reports. The court rejected the proposition that those processes deprived inmates of a meaningful opportunity for parole by also permitting the parole board to hear from victims and law enforcement, in addition to considering the seriousness of the inmate's offenses. *Id.* In so reasoning, the Eighth Circuit

noted "the State is not required to adopt procedures that are more advantageous to juvenile homicide offenders seeking release from custody." *Id.*

Comparing these principles to the immediate case, the PPB members are required to consider the "conduct and record of [] said person during his custody in the Department of Corrections[.]" OKLA. STAT. tit. 57 § 332.7(L) (It shall be the duty of the [PPB] to cause an examination to be made at the penal institution where a person is assigned and to make inquiry into the conduct and record of the said person during his custody in the Department of Corrections, which shall be considered as a basis for consideration of said person for recommendation to the Governor for parole." This conduct and record by its nature provides PPB an opportunity to consider Plaintiff's maturation and rehabilitation.

Plaintiff was considered for stage one parole on five (5) occasions. UMF 42. During this stage, PPB members are provided the investigative report, along with support and protest letters. UMF 11. The investigative report contains a multitude of information for the PPB board members to consult before making decisions. UMF Nos. 25-35. This includes a section for Plaintiff's version of the offense. UMF 30. Parole investigators "like to get our own versions from the inmate," and therefore conduct an interview or questionnaire of the inmate. UMF Nos. 14-16; *see also* Ex. 4 at p. 229:12-20. Only if the investigator is unable to do an in-person interview or the inmate did not fill out a questionnaire would the investigator use information from ODOC. UMF 16. The report may be paraphrased, as there are sections with a 3000-word limit, and to ensure proper grammar and legibility. Ex. 4 at pp. 231:2-232:9; Ex. 3 at pp. 140:14-141:13.

PPB members then review the documents. In making their decisions, the PPB members take into consideration numerous factors. Ex. 6 at p. 119:21-121:1. These factors are carefully considered when analyzed by the PPB members. *Id.* These factors provide the Board with evidence to show Plaintiff's maturation and rehabilitation since his crime. In Plaintiff's case, the PPB members were informed he had participated in many vocational trainings, received his GED, received several vocational certificates, taken several college courses, and participated in numerous programs. UMF 65. However, Plaintiff received, and continues to receive, misconducts, including two Class X misconducts (the most serious) in 2022. UMF Nos. 50-58. These misconducts occurred while Plaintiff was an adult. UMF 59. These factors, along with the violent nature of Plaintiff's crimes, have weighed against him, but Plaintiff was and continues to be given meaningful opportunity for parole. The Eighth Amendment does not require a juvenile to be released from prison during his lifetime. *Graham,* 560 U.S. at 75. Additionally, Plaintiff will have another opportunity for parole consideration in 2025.

Plaintiff argues his status as a youth at the time of his offense should be given its own section in the investigative report. Not only is this not required under the Eighth Amendment, Plaintiff's age at the time of his offense is available to the PPB members. Plaintiff's 2019 investigative report specifically states, "Thomas was 15 at the time of his arrest…" UMF 47. Plaintiff's 2016 investigative report notes "Mr. Thomas has been in DOC custody for these offenses since he was 17." UMF 46. In Plaintiff's 2013 investigative report, his age at the time of the offense is listed under the "Risk Assessment" section, as it is in his 2010 assessment. UMF Nos. 44-45. Though not specifically presented on his 2022

investigative report, this information is readily accessible as it lists his date of birth and case date. UMF Nos. 25-26. Former board member Kelly Doyle testified she did the math if the age of the inmate at the time of the offense was not specifically noted. Ex. 8 at 67:2-6. The information to determine an offender's age at time of the offense is included in all investigative reports. UMF Nos. 39-40. The exact headings to describe information that could be derived elsewhere in the report are not necessary to determine the offenders age at time of the offense. Ex. 6 at 167:16-25.

Plaintiff urges the Court to extend the *Jones* requirement of consideration of an offender's youth prior to imposing a sentence of life without parole to the PPB's parole considerations for juveniles sentenced to life with parole. However, the case law does not support this requirement and as established by ample precedent cited herein, such efforts have been rejected.

Further, it is factually undisputed that PPB board members do have the discretion to consider age at the time of the offense, as they had full discretion to consider a multitude of factors:

> [O]ne factor that was covered in our training where we discussed dynamic factors and static factors, meaning things that can change in consideration of someone's parole and things that can't change, and age being one of the things that cannot change, and how to consider those different factors as we make parole decisions.

Ex. 6 at pp. 19:15-20:7, p. 85:10-18.

Static factors such as age are one factor out of many that is included in board members decisions. *Id.* at 85:10-18. Not only do PPB members have the discretion to consider age, but the evidence also clearly shows that they do in fact consider age at time of the offense. The

age of an offender at the time of the offense is an "important factor," as "an individual's development plays into where they were in the stages of development played into my understanding of criminogenic risk and whether they were a future threat to public safety." UMF 40. Plaintiff has received and will continue to receive a meaningful opportunity for parole and therefore cannot maintain his claims against Bates.

## PROPOSITION III: PLAINTIFF'S CLAIMS ARE SUBJECT TO *RES JUDICATA*.

Plaintiff filed a Petition-in-Error with the Oklahoma Court of Criminal Appeals on February 19, 2019, claiming that even though he was not serving a life without the possibility of parole, he was nonetheless subject to a life without parole sentence, as he was denied meaningful opportunity for release within his lifetime. UMF 62. After a review of Plaintiffs briefing, the Court of Criminal Appeals found Plaintiff "has a material opportunity to obtain release on parole." UMF Nos. 63-64.

Under the doctrine of *Res Judicata*, a final judgment on the merits of an action precludes the parties or their privies from henceforth relitigating any issues which were or could have been raised in the original action. *Cromwell v. County of Sac*, 94 U.S. 351, 352 (1876). Likewise, collateral estoppel provides that, once a court has decided an issue of fact or law necessary to render its judgment, that decision may preclude relitigating the same issue in a suit based upon a different cause of action involving a party to the first case. *Montana v. United States*, 440 U.S. 147, 153 (1994). The purpose of these doctrines is to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication. *Id.* at 153–154.

These doctrines apply in § 1983 actions such as this, where a plaintiff attempts to relitigate in federal court issues decided against him in state criminal proceedings. A party asserting issue preclusion must show: (1) the issue previously decided is identical to that presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Stan Lee Media, Inc. v. Walt Disney Co.,* 774 F.3d 1292, 1300 (10th Cir. 2014). Similarly, "claim preclusion" requires a showing of three elements: (1) a final judgment on the merits in the previous action; (2) the identities of the parties were the same in both suits; and (3) the causes of action in both suits were identical. *King v. Union Oil Co.,* 117 F.3d 443, 445 (10th Cir. 1997).

Here, Plaintiff's claims are indeed identical to those he set forth in his Petition in Error. UMF 63. As was set forth in detail in the resulting Order, the issue of whether Plaintiff was entitled to a meaningful opportunity for parole was previously, fully, and fairly litigated. UMF 64. The parties were the same, and Plaintiff had the ability to litigate the issues he now presents, and in fact did so. UMF Nos. 62-64. Plaintiff failed to appeal this ruling. All of this resulted in a final order of the merits. Plaintiff is therefore barred from maintaining these claims now.

## PROPOSITION IV: PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE OR DECLARATORY RELIEF.

Plaintiff asks this Court to determine he is entitled to declaratory and injunctive relief. Plaintiffs specifically ask this Court to declare that the Oklahoma Parole Process violates his Eighth Amendment and Oklahoma Constitutional rights. However, Plaintiff has failed to state

a claim for a constitutional violation. Since there is no ongoing constitutional violation,
Plaintiff's request for injunctive and declaratory relief must accordingly be denied. *Green v.
Mansour*, 474 U.S. 64 (1985).

## CONCLUSION

Plaintiff's lawsuit and the undisputed material facts developed herein establish Plaintiff
is not entitled to the relief he seeks. The undisputed material facts, even when viewed in the
light most favorable to Plaintiff, demonstrate Plaintiff's claims must fail. For the reasons stated
above, PPB Executive Director Tom Bates requests the Court enter judgment in his favor and
against Plaintiff on his claims, and grant all other relief deemed just and equitable.

Respectfully submitted,

s/ *Alejandra J. Brigida*
**ALEJANDRA J. BRIGIDA, OBA# 35381**
**LAUREN J. RAY, OBA# 22694**
ASSISTANT ATTORNEY'S GENERAL
OKLAHOMA ATTORNEY GENERAL'S OFFICE
LITIGATION DIVISION
313 NE 21st Street
Oklahoma City, Oklahoma 73105
T: (405) 521-2951 | F: (405) 521-4518
*Attorneys for Defendants ODOC, OBOC, and PPB*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of September 2024, I electronically transmitted the attached
document to the Clerk of Court using the ECF System for filing. Based on the records
currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to all counsel
of record in this action.

/s/ *Alejandra J. Brigida*
Alejandra J. Brigida