# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DWAIN EDWARD THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-944-D |
| | ) |
| KEVIN STITT, et al., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT GOVERNOR J. KEVIN STITT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Phillip G. Whaley, OBA #13371
Grant M. Lucky, OBA #17398
RYAN WHALEY
400 North Walnut Avenue
Oklahoma City, OK  73104
(405) 239-6040
(405) 239-6766 FAX
pwhaley@ryanwhaley.com
glucky@ryanwhaley.com

*Attorneys for Defendant*
*J. Kevin Stitt, Governor of Oklahoma*

***Thomas Lacks Article III Standing to Sue the Governor.*** Standing is the "irreducible constitutional minimum" for federal courts to exercise jurisdiction under Article III's "case" or "controversy" requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Yet, Thomas tellingly devotes only the final pages of his Response addressing his Article III standing to sue the Governor. Thomas has the burden of proof in establishing each standing element and that "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." (citations omitted). *Id.* at 561. And "since standing is not dispensed in gross," Thomas "must demonstrate standing for each claim that [he] press[es] and for each form of relief that [he] seek[s] (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Governor Stitt's motion for summary judgment established that there is no genuine issue as to any material fact relating to Thomas's lack of Article III standing relative to the Governor for his declaratory judgment action, his § 1983 claim, and his request for injunctive relief under § 1983. *See Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). Thomas's Response (Doc. 127) has failed to come forward with any specific evidence that demonstrates any disputed issue of material fact, warranting judgment in favor of Governor Stitt.

Notwithstanding that Thomas is making an as-applied constitutional challenge to Oklahoma's two-tiered parole system,[1] Thomas has not presented **any** evidentiary material

---

[1] From the very outset of this case, Thomas has repeatedly alleged that his lawsuit is an as-applied challenge to Oklahoma's parole process. However, in his Response Thomas makes oblique references, for the very first time, to his "facial challenge" to Oklahoma's parole system. Doc. 127, p. 6, n.4; p. 28. "A facial challenge considers the restriction's application to all conceivable parties, while an as-applied challenge tests the application of that restriction to

1

relating to the elements of his claims or remedies that establishes he has "suffered a concrete and particularized injury" that is "fairly traceable to the challenged conduct" of Governor Stitt that is likely to be redressed by an injunction against him, nor could he since Thomas has never received a favorable parole recommendation from PPB, which, by Oklahoma law, prevents Governor Stitt from making any parole decision relating to Thomas. Doc. 127 at ¶¶ 12, 25. Speculation, conjecture, and contingencies are anathema to Article III standing. In addition to suffering no injury fairly traceable to Governot Stitt's conduct, Thomas further admits that he is not threatened with an imminent injury from Governor Stitt. *Id.* at p. 26 ("Mr. Thomas *does not* seek to challenge a 'threatened injury'") (emphasis in original).

Instead, Thomas weaves a convoluted tale layered with sovereign immunity analysis unsupported by evidence that Governor Stitt has violated his "Eighth Amendment right to a meaningful opportunity for parole based on maturity and rehabilitation." *Id.* at pp. 26-27. Thomas states that because the Governor can exercise his discretion "in *any* manner and for *any* reason he chooses (or no reason at all)" and "need not ever consider maturity and rehabilitation as part of any parole decision for an inmate who was a juvenile at the time of the offense," (but with no evidence that Governor Stitt is prevented from doing so, would refuse to do so, or has refused to do so) Thomas has established all the elements necessary for

---

the facts of a plaintiff's concrete case." *Colo. Right To Life Comm. v. Coffman*, 498 F.3d 1137, 1146 (10th Cir.2007). An as-applied challenge "concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the particular circumstances of the case." *United States v. Supreme Ct. of New Mexico*, 839 F.3d 888, 907 (10th Cir. 2016) (citation omitted) (citation omitted). Throughout this litigation Thomas has described his lawsuit as an as-applied challenge to the facts of his case since it relates exclusively to Thomas's concrete facts and case law involving murders committed while a juvenile. *See, e.g.,* Doc. 1, ¶¶ 19, 60, 123, 130, and p. 39; Doc. 1-1 ("Oklahoma's parole system as applied to Plaintiff is unconstitutional"); Doc. 46, pp. 1, 7, 11, 13; Doc. 68, pp. 2, 5-6.

Article III standing to enjoin the Governor from taking the above-specified unlawful actions against Thomas. *Id.* at p. 27 (emphasis in original).

To get there, however, Thomas eschews traditional standing analysis and, in its place, conflates it with a separate inquiry governing whether a defendant is a proper party under the *Ex parte Young* exception to Eleventh Amendment immunity, which Governor Stitt has **not** argued as a basis for summary judgment.[2] Indeed, Thomas previously argued this same case law in response to a motion to dismiss based upon sovereign immunity, not standing. Doc. 46, pp. 14-15.[3] Thomas relies on *Petralla v. Brownback*, 697 F.3d 1285 (10th Cir. 2012) and *Makthepharak v. Kelly*, 2024 WL 1256085 (D. Kan. 2017),[4] cases involving the government of Kansas, not Oklahoma, claiming that by suing Governor Stitt in his official capacity to enjoin enforcement of a state statute against him, Thomas, *ipso facto*, has Article III standing against Governor Stitt because he is "**personally** involved in carrying out and 'responsible for the enforcement' of Oklahoma's parole laws. Doc. 127 at pp. 24-25. However, his inaccurate

---

[2] "Under the *Ex parte Young* exception, a plaintiff may sue individual state officers acting in their official capacities if the complaint alleges an **ongoing violation of federal law** and the plaintiff seeks only prospective relief." *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021) (emphasis added). "To satisfy the exception, the named official 'must have some connection with the enforcement' of the challenged statute." *Id.* (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). Given Thomas's as-applied challenge seeking declaratory and injunctive relief, Governor Stitt could not be committing an ongoing violation of federal law as applied to Thomas since Thomas has never been approved for parole by PPB.

[3] "(1) Thomas is suing the named Defendants in their official capacities, rather than the State of Oklahoma itself; (2) Thomas alleges an ongoing violation of federal law (namely, an ongoing violation of the Eighth Amendment's prohibition on 'cruel and unusual punishments' as interpreted by the U.S. Supreme Court's juvenile-sentencing precedents); and (3) Thomas seeks prospective, declaratory and injunctive relief."

[4] Both cases involved motions to dismiss, not summary judgment.

3

statement[5] on this score carries no weight under Article III standing, particularly when Thomas has presented no evidence as to how he has suffered an injury fairly traceable to Governor Stitt's allegedly unlawful conduct or how Governor Stitt has had a direct effect on his parole status before the PPB.[6] Nor has Thomas, even under the *Young* exception, cited any law or facts imposing an "enforcement" duty on Governor Stitt for violations of a statute or regulation, let alone any enforcement duties over the laws or regulations relating to Thomas's parole review before the PPB. As stated by Judge Friot, the Governor does not enforce the laws in Oklahoma.

Moreover, since *Petralla*, the Tenth Circuit (and other circuits) have sharpened the distinction between Article III standing and the sovereign immunity exception. For instance, in *Cressman v. Thompson*, 798 F.3d 938 (10th Cir. 2015), the Court stated that "[w]hether the Defendants have enforcement authority is related to whether, under *Ex parte Young*…they are proper state officials for suit." *Cressman v. Thompson*, 719 F.3d 1139, 1146 n. 8 (10th Cir. 2013). While not identical, the Court noted a "common thread between Article III standing analysis and *Ex parte Young* analysis," relating to *Ex parte Young's* duty requirement and the causation

---

[5] As recently noted by Judge Friot in *Plant Based Foods Association v. Stitt*, ---F.Supp.3d---, at *10 (W.D. Okla. June 24, 2024), "*Petrella* illustrates a noteworthy difference between the government of Oklahoma and the government of Kansas." Oklahoma does not "task the Governor with 'the enforcement of the laws of this State.'" Rather, Oklahoma intentionally "created a weak state chief executive." *Id.* (citation omitted).

[6] "[T]he declaratory judgment device does not…permit litigants to invoke the power of this Court to obtain constitutional rulings in advance of necessity." *Poe v. Ullman*, 367 U.S. 497, 508 (1961). "Instead, just like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement." *California v. Texas*, 593 U.S. 659, 672 (2021). Further, Article III standing applies to remedies since they "operate with respect to specific parties." *New Jersey Thoroughbred Horsemen's Ass'n v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 489 (2018) (Thomas, J., concurring) (internal quotation marks omitted).

element of standing.[7] However, the two doctrines simply cannot be conflated, as Thomas wishes, into one analysis under *Young's* exception to sovereign immunity.[8]

**Oklahoma's Parole Laws are Constitutional.** Thomas's Eighth Amendment challenge relies on a fundamentally erroneous assumption: that the Constitution guarantees all juvenile homicide offenders sentenced to life imprisonment "a meaningful opportunity for parole based on maturity and rehabilitation...." Doc. 127 at 3. This fundamental assumption finds no support in precedent and has been explicitly rejected by both the Supreme Court and the Tenth Circuit. *See* Doc. 114 at 16–20. Instead, *Miller v. Alabama*, 567 U.S. 460, 483 (2012), *Davis v. McCollum*, 798 F.3d 1317, 1320 (10th Cir. 2015), and *Jones v. Mississippi*, 593 U.S. 98, 105 (2021), all confirm that discretionary sentencing procedures suffice to pass constitutional muster.

To avoid this fatal blow, Thomas attempts to frame his challenge as one to "Oklahoma's *parole* system," not to "his sentence." Doc. 127 at 17. In that way, Thomas can suggest these binding Eighth Amendment cases "are irrelevant." *Id.* at 18. But Thomas's self-declared substantive right begs the question: Where does this alleged **parole** right advocated

---

[7] *See also Hendrickson v. AFSCME Council*, 992 F.3d 950 (10th Cir. 2021) (noting distinction between Article III standing and Eleventh Amendment immunity); *Free Speech Coalition, Inc. v. Anderson*, --- F.4th --- (10th Cir. 2024) (deciding case under Eleventh Amendment immunity "without reaching the issues of ripeness and constitutional standing"); *Doe v. Holcomb*, 883 F.3d 971 (7th Cir. 2018) ("But even if a plaintiff could otherwise establish that he has standing to sue a state or a state official, the Eleventh Amendment generally immunizes those defendants from suit in federal court.").

[8] *See OCA-Greater Houston v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017) (stating that a decision addressing standing "has no bearing on the *Ex parte Young* analysis"); *Okpalobi v. Foster*, 244 F.3d 405, 430 (5th Cir. 2001) ("The question of standing – case or controversy – is logically anterior to the question of whether there is a defense to the claim; it goes to the court's jurisdiction and cannot be waived by the parties or conferred by agreement.") (Higginbotham, J., concurring)

by Thomas exist, if at all, in the Eighth Amendment? Certainly not in the text, history, or tradition, nor the accumulated decisions of the United States Supreme Court interpreting it. Indeed, because the Eighth Amendment forbids cruel and unusual *punishments*, the Supreme Court has long observed that "every decision of this Court considering whether a punishment is 'cruel and unusual' within the meaning of the Eighth and Fourteenth Amendments has dealt with a **criminal punishment**." *Ingraham v. Wright*, 430 U.S. 651, 666 (1977) (emphasis added).

Unsurprisingly, then, Thomas repeatedly ties-in his punishment, *i.e.* life sentence, throughout the Complaint. *See, e.g.*, Doc. 1 at ¶¶ 12-21, 40-48. And Thomas repeatedly directed Governor Stitt and this Court to decisions addressing challenges to juvenile sentences – not parole cases – under the Eighth Amendment's Cruel and Unusual Punishments Clause.[9] *See, e.g., id.*, ¶¶ 8-14. Thus, while Thomas claims that Governor Stitt "misconstrues" or "mistakes" his Eighth Amendment claim as a challenge to his sentence, Thomas moors his alleged right entirely to his sentence and these juvenile sentencing decisions. And ironically, the more Thomas distances himself from cases like *Jones*, *Montgomery*, and *McCollum*, the more Thomas distances himself from any viable claim under *Miller* or *Graham*—which likewise center around sentences and sentencing practices. *Compare* Doc. 127 at 17–19 *with* Doc. 1 at ¶¶ 23–44.

Thomas cannot have it both ways. Either he is invoking the Eighth Amendment to claim his *sentence* is disproportionate because it does not afford him an opportunity for parole, or his invoking the Eighth Amendment to disguise a claim that Oklahoma's *parole process itself*

---

[9] Thomas does not challenge the conditions of his confinement found in typical Eighth Amendment post-sentencing claims while in confinement (*e.g.*, overcrowding, excessive force, failure to provide adequate medical care, deprivation of material needs, and unreasonable risk of assault).

denies him due process—an argument so resoundingly rejected by courts that even Thomas disavows it. *See* Doc. 127 at 21. In either case, Thomas's claims fail as a matter of law. Moreover, none of the cases cited militate in favor of the substantive right declared by Thomas as none involved an analysis of State parole procedures under the Eighth Amendment. *See Collins v. Harker Heights*, 503 U.S. 115, 125 (1992) ("As a general matter, the Court has always been reluctant" to extend constitutional protection to "un-chartered area[s]," where the "guideposts for responsible decisionmaking ... are scarce and open-ended.").

**Graham v. Florida**. Although Thomas half-heartedly claims he "is not arguing that he can make out a *Graham* violation[,]" Doc. 127 at 20, he does just that by importing the "meaningful opportunity for parole based upon demonstrated maturity and rehabilitation" standard found in *Graham* to his inapposite life with the possibility of parole sentence for his three homicide convictions. Thomas attempts to use the phrase in a "prisoner's rights" case as a means of invalidating the entirety of Oklahoma's laws relating to the state's parole process, not sentencing, and, in doing so, improperly involving the Court in prison administration and state sovereignty.[10] The Court should reject Thomas's invitation.

*Graham* made clear that the judgment imposed at sentencing was constitutionally infirm precisely because the Eighth Amendment "prohibit[s] States from mak[ing]the judgment at the outset [not during a parole proceeding] that those offenders never will be fit to reenter

---

[10] *See Turner v. Safley*, 482 U.S. 78, 84 (1987) ("Prison administration is, moreover, a task that has been committed to the responsibility of" the legislative and executive branches of government "and separation of powers concerns counsel a policy of judicial restraint. Where the state penal system is involved, federal courts have…reason to accord deference to the appropriate prison authorities.").

7

society." *Id.* at 75.[11] Beyond that, the Court reaffirmed the rule that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a **valid sentence**." *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) (emphasis added). As to valid sentences, *Graham* restated the rule that the Eighth Amendment does not require a "State…to guarantee eventual freedom to a juvenile offender," nor does it "require the State to release that offender during his natural life," nor does it "foreclose the possibility that [even] persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life." *Id.* This is presumably why – despite relying upon its "meaningful opportunity" term, Thomas's Response concedes he cannot "make out a *Graham* violation." Doc. 127 at p. 20.

**Miller v. Alabama**. Thomas next alleges that he "is simply trying to vindicate his Eighth Amendment rights in the parole process as first pronounced in *Miller*," which "borrowed that parole rule from *Graham*." *Id.* However, a reading of *Miller* does not show any "borrowed…parole rule from *Graham*." To be sure, *Miller* does not even use, let alone rely upon, the term "meaningful opportunity to obtain release [during the parole process] based on demonstrated maturity and rehabilitation," other than in a parenthetical quote from *Graham*. *Id.* at 479. If anything, *Miller* and *Graham* are alike in this way: both involved an Eighth Amendment challenge to a **life without parole sentence** imposed "at the outset,"

---

[11] Even though there is no constitutional right to be conditionally released before the expiration of a valid sentence, imposing **at the outset** an invalid sentence of life in prison without the possibility of parole deprives the offender of ever having the **opportunity** of a parole hearing, "gives no chance for fulfillment outside prison walls, no chance for reconciliation with society, [and] no hope." *Id.* at 79. Thomas enjoys those opportunities/chances on a daily basis.

8

with *Miller* involving a **mandatory** sentencing scheme, not a parole process. *See Miller*, 567 U.S. 460, 474 (2012) ("[T]he mandatory penalty schemes at issue here prevent the sentencer from taking account of…central considerations of [the offender's youth]"). Thus, the Supreme Court, as it did in *Graham*, invalidated under the Eighth Amendment a sentence that mandated that the juvenile offender was never fit to reenter society. Accordingly, Thomas's overreach with respect to *Miller's* ruling and applicability to his case is clear.

***Jones v. Mississippi*.** Finally, Thomas neglects the *Jones v. Mississippi*, 593 U.S. 98 (2021) decision, decided after Thomas filed suit, which poured colder water on his alleged claim. The Court in *Jones* upheld as constitutionally sufficient a **life without parole sentence** for a juvenile murderer in Mississippi because the State's sentencing scheme was not mandatory, as in *Miller*, but provided the sentencer with the discretion to consider a number of mitigating factors (like youth), in addition to aggravating factors, before imposing a sentence. Thus, as a matter of law, Thomas cannot maintain a viable Eighth Amendment claim based on a supposed lack of meaningful opportunity for parole as a juvenile homicide offender.

Even if this Court could indulge in Thomas's parole process argument, it is constitutionally sufficient that Oklahoma's "parole decisionmakers" are equipped with complete and absolute discretion to consider the offender's youth in addition to "the mix of all the facts and circumstances in a specific case," all of which differ from case to case. *Jones*, 593 U.S. at 115. Discretion itself is enough, and Thomas provides no proof or decision that compels a different conclusion. Further, there is no requirement that parole decisions, or the justifications for parole decisions, be made on-the-record. Not only is there no "meaningful

9

daylight" between the decisionmakers' discretion to consider youth and the actual consideration of youth, but the evidence in this case in undisputed that Thomas's youth at the time of his murder spree was communicated to the decisionmakers and, indeed, considered.[12] *Id.* at 114.  The fact that some decisionmakers may weigh youth at the time of the offense differently than others, or may weigh other facts more heavily in the final analysis, does not make Oklahoma's parole process unconstitutional under any standard.

Respectfully submitted,

*s/Phillip G. Whaley*
Phillip G. Whaley, OBA No. 13371
Grant M. Lucky, OBA No. 17398
RYAN WHALEY
400 North Walnut Avenue
Oklahoma City, OK 73104
Phone: (405) 239-6040
Fax: (405) 239-6766
pwhaley@ryanwhaley.com
glucky@ryanwhaley.com

**Attorneys for Defendant**
**J. Kevin Stitt, Governor of Oklahoma**

---

[12] Thomas has produced no evidence that youth is **not** considered by any parole decisionmakers or that the decisionmakers are prohibited from considering an offender's youth at the time of the offenses or, for that matter, any other factor relating to the offender. Indeed, Thomas cannot produce such evidence, as parole was recently granted to an inmate who received a life sentence for a homicide offense committed when he was a juvenile. *See* Doc. 114 at 11, n.5.  Thomas ignores this and presumably hopes the Court will as well.

## **CERTIFICATE OF SERVICE**

  I hereby certify that on October 24, 2024, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

              *s/ Phillip G. Whaley*
              Phillip G. Whaley