IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

DWAIN EDWARD THOMAS,      )
      )
      Plaintiff,      )
      )
v.      )      Case No. CIV-20-944-D
      )
KEVIN STITT, et al.,      )
      )
      Defendants.      )

## ORDER

Before the Court are Defendants' Motions for Summary Judgment [Doc. Nos. 114, 115, 116, 119]. Plaintiff Dwain Edward Thomas filed responses [Doc. Nos. 126, 127], and each defendant filed a reply [Doc. Nos. 132-135]. The matters are fully briefed and at issue.

## BACKGROUND

Plaintiff is a state prisoner that was sentenced to life imprisonment with the possibility of parole for crimes he committed when he was 15 years old. Plaintiff is currently parole-eligible and has been denied parole five times. In this action brought pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Oklahoma's parole system violates the Eighth Amendment of the United States Constitution and Article II, § 9 of the Oklahoma Constitution by denying Plaintiff—a juvenile homicide offender sentenced to life with the possibility of parole—a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *See Graham v. Florida*, 560 U.S. 48, 75 (2010). The Complaint seeks declaratory and injunctive relief and names as defendants the Governor of Oklahoma, the Executive Director of Oklahoma's Pardon and Parole Board (PPB), the

1

Chair of the Board of Corrections (BOC), and the Director of the Oklahoma Department of Corrections (ODOC).[1] Each defendant is sued in their official capacity only.

Summarizing Plaintiff's requested relief, he seeks the following:

- Declare that Defendants have operated, and continue to operate, a parole scheme that denies Plaintiff—a juvenile offender sentenced to life with the possibility of parole—a meaningful and realistic opportunity for release, in violation of the Eighth Amendment and Oklahoma Constitution;

- Declare that Plaintiff is serving *de facto* life-without-parole sentences, in violation of the Eighth Amendment and Oklahoma Constitution;

- Declare that Okla. Stat. tit. 57, § 332.7 is unconstitutional because it does not require the PPB to consider juvenile-offender status when considering parole;

- Declare that Article VI, § 10 of the Oklahoma Constitution (and Okla. Stat. tit. 57, §§ 332, 332.16(B)), which grant exclusive authority to the Governor to parole individuals convicted of violent crimes, are unconstitutional as applied to juvenile offenders;

- Declare that Defendants' reliance upon risk assessment tools that discriminate against juvenile offenders has denied Plaintiff a meaningful opportunity to obtain release upon a showing of maturation and rehabilitation, in violation of the Eighth Amendment;

- Declare that—by denying juvenile offenders access to critical rehabilitative programs and automatically prohibiting inmates serving life sentences from being classified below medium security—Defendants have denied Plaintiff a meaningful opportunity to demonstrate rehabilitation, in violation of the Eighth Amendment; and

- Enjoin Defendants to discontinue these practices and provide Plaintiff a meaningful and realistic opportunity to demonstrate his readiness for release.

[Doc. No. 1, at 38-40].[2]

---

[1] Currently, Tom Bates is the PPB's Executive Director; Steven Harpe is ODOC's Director; and Stephan Moore is the Chair of the BOC.

[2] Throughout this Order, the Court uses the ECF header pagination when referring to documents filed in this case.

Upon screening, pursuant to 28 U.S.C. § 1915A, the Complaint was dismissed for failure to state a plausible claim under the Eighth Amendment. The Tenth Circuit reversed on appeal, finding that Plaintiff had stated plausible claims for relief. *See Thomas v. Stitt*, No. 21-6011, 2022 WL 289661, at *4 (10th Cir. Feb. 1, 2022) (unpublished) (noting that the district court's order "purport[ed] to address complex issues of first impression without an opportunity for the parties to develop the facts and their legal arguments.").

Now before the Court are Defendants' Motions for Summary Judgment [Doc. Nos. 114-116, 119], in which Defendants argue that Plaintiff's claims are barred by *res judicata*; Plaintiff lacks standing; and Plaintiff has failed to exhaust his administrative remedies prior to bringing suit. Defendants also argue that the line of Supreme Court cases limiting the types of sentences that can be imposed on certain juvenile offenders do not apply to Plaintiff, who was a juvenile homicide offender sentenced to life with the possibility of parole. Finally, Defendants contend that Plaintiff has received a meaningful opportunity to obtain release by being considered for parole, and thus no Eighth Amendment violation has occurred.

## UNDISPUTED MATERIAL FACTS[3]

In 1997, Plaintiff was convicted of three counts of first-degree murder in the District Court of Sequoyah County, Oklahoma, following a guilty plea. Plaintiff was 15 years old at the time of the offenses. Plaintiff was sentenced to life with the possibility of parole for

---

[3] The following facts were either uncontroverted or viewed in the light most favorable to the non-movant. The Court takes judicial notice of all applicable statutes and regulations.

each of the three counts, with the first two counts running concurrently and the third count running consecutively. At the time of Plaintiff's sentencing, Oklahoma mandated that "a person who is convicted of … murder in the first degree shall be punished by death, by imprisonment for life without parole or by imprisonment for life." Okla. Stat. tit. 21, § 701.9(A) (1991). [Def. Bates' UMF Nos. 1, 2; Pl.'s Resp. to Def. Bates' UMF Nos. 1, 2; Def. Stitt's UMF No. 3; Pl.'s Resp. to Def. Stitt's UMF No. 3].

Plaintiff is currently parole-eligible. In 2010, Plaintiff first became eligible for parole consideration after completing 1/3 of his sentence, or 15 years. *See* Okla. Stat. tit. 57, § 332.7(A) (1991) ("Upon completion of one-third (1/3) of the sentence of any person in the custody of the Department of Corrections, such person shall be eligible for consideration for a parole…."). Plaintiff has been considered for and denied parole by the PPB five times: October of 2010; October of 2013; October of 2016; October of 2019; and October of 2022. Plaintiff's next parole consideration is in October of 2025, and he can be reconsidered for parole every three years. *See* Okla. Stat. tit. 57, § 332.7(E)(1). [Def. Stitt's UMF Nos. 8, 9, 11, 13; Pl.'s Resp. to Def. Stitt's UMF Nos. 8, 9, 11, 13].

For violent offenders, there is a two-step process for parole. The first step is called "stage one" or "jacket review." During stage one, PPB members review materials provided to the PPB and vote on whether to pass the inmate to stage two. A parole investigator is responsible for conducting an investigation, and preparing, drafting, and submitting an investigative report in advance of the parole hearing. At this stage, the inmate has an opportunity to provide information to the parole investigator. Parole investigators conduct face-to-face interviews with each offender eligible for parole, unless an interview is not

possible, or an exception applies. If a face-to-face interview is not possible, parole investigators conduct personal interviews via telephone or utilize interview questionnaires.[4] The parole investigator makes a recommendation as to whether an offender should be recommended for parole, which recommendation is not binding on the PPB. [Def. Bates' UMF Nos. 10, 17; Pl.'s Resp. to Def. Bates' UMF Nos. 10, 17; Def. Harpe's UMF No. 42; Pl.'s Resp. to Def. Harpe's UMF No. 42; Def. Stitt's UMF Nos. 12, 14; Pl.'s Resp. to Def. Stitt's UMF Nos. 12, 14].

Materials given to the PPB include the investigative report prepared by the parole investigator, support letters, victim letters, and any district attorney narratives. The investigative report includes: the name, date of birth, and gender of the inmate; the docket information, security level and reception date, and other details regarding the inmate's current incarceration and any prior incarcerations; information about the controlling case, to include offense type, offense, sentence, county of conviction, and any prior parole considerations; information on concurrent or consecutive sentences; the district attorney's version of the offense; a paraphrasing of the inmate's version of the offense; other information the parole investigator deems relevant, to include undocumented felony convictions, explanations of discrepancies between information, explanations for information for which the inmate is the sole source, and informal disciplinary sanctions; ODOC disciplinary records, including all misconducts for violent behavior and drug/alcohol rule violations imposed within the past ten years; information about substance

---

[4] The parole interview questionnaire includes a section for the inmate to "tell the story of what happened from [their] point of view." [Doc. No. 114-11, at 2].

abuse and mental health history; information regarding documented violent behavior[5] to illustrate behavioral progression; information on the inmate's parole plan; the inmate's personal information, to include job skills and employment history prior to incarceration; and the parole investigator's recommendation. [Def. Bates' UMF Nos. 25-38; Pl.'s Resp. to Def. Bates' UMF Nos. 25-38].

During stage one, the offender, victim(s), and the district attorney are not allowed to speak to PPB members. If the PPB votes to move a violent offender to stage two, the inmate makes a personal appearance before the PPB. From stage two, the PPB can deny parole or recommend to the Governor that parole be granted. Only the Governor can approve parole for violent offenders like Plaintiff, pursuant to Okla. Stat. tit. 57, §§ 332, 332.16(B). There are no limitations on the factors the PPB or the Governor may consider when considering parole. [Def. Bates' UMF Nos. 20-22; Pl.'s Resp. to Def. Bates' UMF Nos. 20-22].

PPB members have discretion to consider age at the time of the underlying offense for parole consideration, but they are not required by statute to do so. Section 332.7(L) requires the PPB to "make inquiry into the conduct and the record of the [inmate] during his custody in the Department of Corrections, which shall be considered as a basis for consideration of said person for recommendation to the Governor for parole." Okla. Stat. tit. 57, § 332.7(L). Some investigative reports include an offender's age at the time of the

---

[5] In this section, the parole investigator is directed to document previous instances of the inmate's violent behavior and misconduct reports even if they occurred more than ten years prior. [Doc. No. 115-8, at 27].

offense, but at times PPB members calculate an offender's age at the time of the offense by subtracting the offender's birth date from the case file date. Former PPB member Kelly Doyle testified that she calculated the inmate's age at the time of the offense because she "found it to be an important factor in [her] decision[-]making." [Doc. No. 134-3, at 6]. The offender's birth date and case file date are available on every investigative report. Former PPB member Adam Luck testified that it was "common" for parole investigative reports to include the fact that an inmate was a juvenile at the time of their arrest. [Doc. No. 114-12, at 12; Def. Bates' UMF No. 22; Pl.'s Resp. to Def. Bates' UMF No. 22; Def. Stitt's UMF No. 16, Pl.'s Resp. to Def. Stitt's UMF No. 16].

In each of Plaintiff's five investigative reports, his birth year (1980) and case file year (1995) reveal that he was 15 years old at the time the charges were filed against him. Further, in each of Plaintiff's investigative reports, the personal information or risk assessment sections include that Plaintiff was a high school student or 16 years or younger when arrested. In the parole investigator's recommendation for Plaintiff's parole consideration in 2016 and 2019, the investigator recommended parole to the consecutive sentence, noting that Plaintiff was a juvenile at the time of the offenses. [Doc. No. 119-2, at pp. 2-4, 8-10, 14-16, 17-19, 21-23].

In 2010, 2013, and 2022, Plaintiff's parole investigator recommended denying parole based on the following narratives:

> 2010: No. Mr. Thomas is incarcerated for violent offenses for the death of three people. He has accumulated nine total misconduct reports, including four for assaultive behavior and three for possession of a home made knife. Given the nature of his offenses, I would need to see a longer period of non

assaultive behavior to make a favorable recommendation. The risk assessment instrument indicates he is a low moderate risk.

2013: No. The offender is incarcerated for three violent offenses. He has accumulated ten misconduct reports, including four for assaultive behavior, and three for possession of a home made knife. Parole is not recommended.

2022: No, parole is not recommended. Even though it is his first incarceration, the violent nature of the crimes and consistent pattern of misconducts show[] that the offender is still a continued risk to the public.

[Doc. No. 119-2, at 4, 19, 23].

As noted in Plaintiff's parole investigative reports, Plaintiff has earned multiple misconducts during his incarceration with ODOC, to include ten Class X misconducts.[6] Plaintiff's ODOC records reflect misconducts for battering an ODOC employee; battering another inmate; three instances of possessing weapons; battering an ODOC employee by jumping on their back and trying to choke them with their microphone cord; threatening an ODOC employee in a sexual manner; testing positive for methamphetamines; making homemade intoxicants; and five instances of possessing banned cell phones. [Doc. No. 119-1, at 55-56]. The violent behavior and possession of weapons occurred in Plaintiff's first few years in ODOC custody, after Plaintiff reached adulthood. *Id.* Plaintiff's

---

[6] Plaintiff argues that Defendant Bates' UMFs describing Plaintiff's misconducts while incarcerated are irrelevant to Plaintiff's claims. However, the Court finds that Plaintiff's misconducts, referenced in three of his parole investigator's recommendations as reasons to deny parole, are relevant to Plaintiff's claims that he is not currently receiving a constitutional parole consideration. Aside from his relevance objection, Plaintiff does not dispute that he received the referenced misconducts while in ODOC custody.

misconducts for testing positive for methamphetamines and making homemade intoxicants occurred in 2017 and 2020, respectively. *Id.*

Plaintiff cannot progress below medium security, per ODOC policy. ODOC's "mandatory override" policy bars inmates serving life sentences from progressing below medium security, regardless of the inmate's age at the time of the offense. [Def. Harpe's UMF Nos. 60-61; Pl.'s Resp. to Def. Harpe's UMF Nos. 60-61; OP-060103(M), Doc. No. 126-16, at 12].

While incarcerated, Plaintiff has completed several programs. Plaintiff received his GED certificate, has attended and completed several college courses (66 credit hours) through Langston University and received college achievement credits. Plaintiff also completed Module 1 of the Licensed Trades Academy program, and he earned 30 credits for completing six months of Session 3 of the Licensed Trade Academy program. Plaintiff completed the Victim Impact – Listen & Learn program, the Building Social Networks program, the SAMHSA Anger Management program, the Biblical Interpretation program, and the Thinking for a Change program. Plaintiff applied for and was approved for a maintenance job, and he received his Refrigeration Technician certification. Plaintiff also received his Residential Electrician's Assistant certification and his Commercial/Industrial Electrician's Assistant certification. Plaintiff completed the HVAC Esco Institute training and received his Universal Technician certification through the Esco Institute. Plaintiff attended the RMC Research Corp. and took the critical thinking CAPP (college assessment of academic proficiency) test. Plaintiff participated in and completed the 2006 Mechanical Code Training, passed his Mechanical Journeyman examination, and received his license

from the State of Oklahoma Construction Industries Board. Plaintiff also completed the Paralegal Studies Certificate Program through Blackstone Career Institute. [Doc. No. 119-1; Def. Bates' UMF No. 64; Pl.'s Resp. to Def. Bates' UMF No. 64].

Plaintiff alleges that ODOC's policy barring him from progressing below medium security prevents him from demonstrating his rehabilitation because some programs are not available at medium-security facilities. Clint Castleberry testified that there are certain programs and educational services available at minimum-security prisons that are not available at medium-security prisons. [Doc. No. 126-8, at 4]. However, Mr. Castleberry confirmed that if a program is available at a medium-security facility, the content would be the same as that program offered at a minimum-security facility. *Id.* at 4-5. In Plaintiff's previous parole investigative reports, it is noted that Plaintiff is not permitted to participate in substance abuse programs because he has too many days remaining on his sentence. [Doc. No. 119-2, at 10, 15].

Plaintiff has never received enough votes from the PPB to progress to stage two of parole consideration. Plaintiff will be considered for parole again in October of 2025. [Def. Bates' UMF No. 49; Pl.'s Resp. to Def. Bates' UMF No. 49].

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable jury could return

a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.* at 255.

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see* FED. R. CIV. P. 56(c)(1)(A). The inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## DISCUSSION

### I.    Res Judicata (Claim Preclusion) and Collateral Estoppel (Issue Preclusion)

Defendants contend that Plaintiff's claims are subject to claim preclusion and issue preclusion. As Defendants note, the Oklahoma Court of Criminal Appeals has previously found that Plaintiff "has a material opportunity to obtain release on parole." [Doc. No. 119-13, OCCA Order Affirming Denial of Post-Conviction Relief, No. PC-2019-116].

However, claim preclusion and issue preclusion are both affirmative defenses, which may be waived. *See Johnson v. Spencer*, 950 F.3d 680, 712 (10th Cir. 2020) ("It is beyond cavil that claim preclusion is an affirmative defense, as to which the defendant

bears the burden of proof."); *see also Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) ("Claim preclusion, like issue preclusion, is an affirmative defense."). Under FED. R. CIV. P. 8(c)(1), "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including … estoppel… [and] res judicata." FED. R. CIV. P. 8(c)(1). Generally, "a defendant waives an affirmative defense by failing to plead it." *Burke v. Regalado*, 935 F.3d 960, 1040 (10th Cir. 2019).

Plaintiff argues that Defendants waived the affirmative defenses of claim preclusion and issue preclusion by not raising them in their Motion to Dismiss [Doc. No. 37] or Answer [Doc. No. 63]. The Court agrees. The Tenth Circuit "treat[s] invocations of untimely affirmative defenses as constructive motions to amend the answer." *United States v. Travis*, No. 24-2086, 2024 WL 5220731, at *2 (10th Cir. Dec. 26, 2024) (unpublished).[7] However, Defendants did not respond to Plaintiff's waiver argument in their replies [Doc. Nos. 132-135]. Without any explanation from Defendants as to why they waited until the summary judgment stage to raise the issues of claim preclusion and issue preclusion, the Court finds that Defendants acted with undue delay in raising these affirmative defenses. *See Ahmad v. Furlong*, 435 F.3d 1196, 1202 (10th Cir. 2006) (explaining that a motion to amend an answer may be denied on grounds such as undue delay). For these reasons, the Court determines that Defendants have waived their claim preclusion and issue preclusion arguments.

---

[7] Unpublished opinions are cited pursuant to FED. R. APP. P. 32.1(a) and 10th Cir. R. 32.1(A).

## II.     Exhaustion of Administrative Remedies (PLRA)

Defendants Harpe (ODOC) and Moore (BOC) contend that Plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e (PLRA). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In its previous Order [Doc. No. 59], the Court found that the PLRA's exhaustion requirement does not apply to this case because Plaintiff's claims challenge the constitutionality of Oklahoma's parole procedures, not prison conditions or prison life [Doc. No. 59, at 4].

In their motions for summary judgment, Defendants again argue that the PLRA requires exhaustion of Plaintiff's claim challenging ODOC's policy of prohibiting inmates serving life sentences from progressing to any security level below medium security. Defendants purportedly re-urge this argument due to evidence revealed through discovery. *See* Doc. No. 115, at 23 ("[A]fter discovery[,] the record is clear that plaintiff's lawsuit concerns conditions of his confinement."). However, Defendants do not provide any new reason to find that Plaintiff's claims are subject to the PLRA. Rather, Defendants merely quote one sentence of Plaintiff's Complaint, where he "admits" that "security classifications determine virtually all aspects of an individual's conditions of confinement." [Doc. No. 1, at 90].

As clarified by Plaintiff, his argument concerning security classification is "merely one piece" of the Oklahoma parole system that Plaintiff claims is unconstitutional [Doc.

No. 126, at 70]. Plaintiff asserts that—because he can never progress to a minimum-security classification—he is prevented from participating in programs that demonstrate rehabilitation to the PPB. Plaintiff does not seek any "injunctive relief or other remedy requiring Defendants to assign him to a lower security level." *Id.* at 70. For these reasons, the Court finds no cause to disturb its prior finding that the PLRA's exhaustion requirement is inapplicable to Plaintiff's claims challenging the constitutionality of Oklahoma's parole system.[8]

## III.    Standing

Article III of the United States Constitution limits federal court jurisdiction to actual cases and controversies. U.S. CONST. Art. III. To confer standing, a plaintiff must show (1) that the plaintiff suffered an injury in fact—an "invasion of a legally protected interest" which is concrete, particularized, and "actual or imminent, not conjectural or hypothetical"; (2) a "causal connection between the injury and the conduct complained of"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citation omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

As an initial matter, the Court finds that Plaintiff does not have standing to bring claims as to "similarly situated" individuals. At times, Plaintiff attempts to couch his claims

---

[8] For the same reasons, the Court rejects Defendant Harpe's argument that Plaintiff's action is proscribed by Okla. Stat. tit. 57, § 566.4(C), which bars state prisoners from seeking injunctive relief for claims related to prison management.

as brought on behalf of all juvenile offenders, but Plaintiff has not sought class certification.

Accordingly, Plaintiff lacks standing to bring claims on behalf of other third parties not

before the Court. *See Cnty. Court of Ulster Cnty., N.Y. v. Allen*, 442 U.S. 140, 154-55 ("A

party has standing to challenge the constitutionality of a statute only insofar as it has an

adverse impact on his own rights. As a general rule, if there is no constitutional defect in

the application of the statute to a litigant, he does not have standing to argue that it would

be unconstitutional if applied to third parties in hypothetical situations."); *see also Cotner

v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986) (affirming dismissal of an inmate's § 1983

claim that alleged prison conditions affected the constitutional rights of Oklahoma State

Penitentiary inmates because, generally, "a plaintiff must assert his own constitutional

rights."); *see also Adams v. James*, 784 F.2d 1077, 1080 (11th Cir. 1986) (explaining that

outside of the class-action context, a prisoner has no standing to litigate another prisoner's

constitutional claims).

　　Plaintiff attempts to avoid this outcome by claiming—for the first time—that he also

brings a facial challenge to Oklahoma's parole statutes. However, throughout this litigation,

Plaintiff has only described his claims as as-applied challenges. In his responses, Plaintiff

makes one-sentence references to his facial challenge [Doc. No. 126, at 54; Doc. No. 127,

at 12], but he never explains how Oklahoma's parole statutes are unconstitutional on their

face.[9] For these reasons, the Court finds that Plaintiff does not have standing to bring claims

---

[9] Recently, the Tenth Circuit considered whether a plaintiff brought a facial or as-applied challenge where he argued that 18 U.S.C. § 922(g)(3) was unconstitutional as applied to non-intoxicated marijuana users. *See United States v. Harrison*, __ F.4th __, 2025 WL 2452293, at *3-4 (10th Cir. 2025). Although the plaintiff apparently abandoned his facial challenge on appeal, the Tenth

on behalf of "similarly situated" individuals or other juvenile offenders not before the Court.

A.  Injury in Fact

As stated above, an injury in fact is one that is "actual or imminent," and not conjectural or hypothetical. *Lujan*, 504 U.S. at 560. While "standing for retrospective relief may be based on past injuries, … claims for prospective relief require a continuing injury." *PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002). Where a plaintiff claims a past constitutional injury, the plaintiff "cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future." *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991).

In this litigation, Plaintiff claims in part that the Oklahoma constitutional provision and state statutes that vest in the Governor exclusive authority to grant parole for violent offenders are unconstitutional as applied to Plaintiff. *See* OKLA. CONST. Art. VI, § 10; Okla. Stat. tit. 57, §§ 332, 332.16(B). The crux of Plaintiff's claim is that he is not receiving a meaningful opportunity to obtain release because the Governor has unfettered discretion to grant or deny parole recommendations, the Governor can grant or deny parole for any reason, and the Governor is not required to consider a juvenile offender's youth at the time of the offense when considering parole recommendations.

---

Circuit advised that "[t]o succeed on a facial challenge, [the plaintiff] would need to 'establish that no set of circumstances exists under which the Act would be valid.'" *Harrison*, 2025 WL 2452293, at *3 (citation omitted). "A facial challenge is a head-on attack [of a] legislative judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications." *Id.* (quotations and citation omitted). Here, Plaintiff has not argued that Oklahoma's parole system is unconstitutional in all, or virtually all, of its applications.

In his motion for summary judgment [Doc. No. 114], Governor Stitt contends that Plaintiff has not established an injury-in-fact with respect to this claim because it is undisputed that the Governor has never received a favorable recommendation by the PPB for Plaintiff's parole. The Governor asserts, then, that Plaintiff's injury is speculative and insufficient to confer standing. The Court agrees. The Governor's discretion to grant parole recommendations is entirely contingent on first receiving a favorable recommendation by the PPB, and it is uncertain when or if the PPB will recommend Plaintiff for parole. If the PPB recommends Plaintiff for parole at some point in the future, it is mere speculation as to what factors the Governor will consider (or will be required to consider) at that time. *See Rodgers v. Whitten, et al.*, Case No. CIV-20-839-PRW, 2021 WL 735647, at *2 (W.D. Okla. Feb. 25, 2021) ("There is no way to know what parole rules Oklahoma will have in place by the time Petitioner is considered for parole, so it makes little sense to engage now in a hypothetical analysis of Oklahoma's current rules as applied to Petitioner's future parole application."). Accordingly, the Court finds that Plaintiff does not have standing for his claim regarding Governor Stitt's exclusive authority to grant parole to violent offenders.

Plaintiff also alleges that he is being denied a meaningful opportunity to obtain release because: 1) the PPB is not required to consider an inmate's juvenile-offender status when determining whether to recommend parole; 2) the PPB does not receive training on how to consider an inmate's juvenile-offender status; 3) there are no evidentiary rules, no right to obtain expert assistance or testimony, no cross-examination, and no assistance of counsel during the parole process; and 4) ODOC's mandatory override policy and risk

assessment tools prevent Plaintiff from participating in critical programs needed to establish his rehabilitation for purposes of parole consideration.

For establishing an injury-in-fact with respect to these claims, Plaintiff has provided evidence that these policies exist, that Plaintiff has been denied parole by the PPB five times, and that he will face the PPB again in October of 2025. Although Plaintiff does not ultimately prevail on his constitutional challenge, the Court finds that Plaintiff has sufficiently established a concrete injury-in-fact and likelihood of future injury from these procedures. *See Makthepharak v. Kelly*, Case No. 23-2121-DDC, 2025 WL 1282649, at *8 (D. Kan. May 2, 2025) (concluding the plaintiff—in his Eighth Amendment challenge to Kansas' parole scheme via a Section 1983 claim—had established "a likelihood of future injury in that he's still subject to the challenged parole scheme[.]").

B. Causal Connection

To establish causation, "a plaintiff must show that his or her injury is 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005) (citing *Lujan*, 504 U.S. at 560). This requires a showing "of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Id.*

In *Petrella v. Brownback*, the Tenth Circuit analyzed whether a group of students and parents had standing to sue the Kansas Governor and Attorney General to challenge Kansas' school district financing act. 697 F.3d 1285, 1291 (10th Cir. 2012). The Tenth Circuit soundly rejected the Governor and Attorney General's arguments that neither defendant took any specific action that caused the plaintiffs' alleged harm:

> It cannot seriously be disputed that the proper vehicle for challenging the constitutionality of a state statute, where only prospective, non-monetary relief is sought, is an action against the state officials responsible for the enforcement of that statute. Nor can it be disputed that the Governor and Attorney General of the state of Kansas have responsibility for the enforcement of the laws of the state. *See* KAN. CONST. Art. I § 3; Kan. Stat. Ann. § 75-702.

*Id.* at 1293-94 (internal citation omitted).

In his reply, Governor Stitt points out a key difference between Kansas and Oklahoma. In *Petrella*, the Tenth Circuit noted that, under the Kansas Constitution, "[t]he supreme executive power of this state shall be vested in a governor, who shall be responsible for the enforcement of the laws of this state." *See* KAN. CONST. Art. I § 3; *Petrella*, 697 F.3d at 1294. However, the Oklahoma constitution does not vest in the governor a general power to enforce the laws of Oklahoma. *See* OKLA. CONST. Art. VI, § 2 ("The Supreme Executive power shall be vested in a Chief Magistrate, who shall be styled 'The Governor of the State of Oklahoma.'"); *see also Bishop v. Oklahoma*, 333 F. App'x 361, 365 (10th Cir. 2009) (unpublished) ("Here, the Oklahoma officials' generalized duty to enforce state law, alone, is insufficient to subject them to a suit challenging a constitutional amendment they have no specific duty to enforce."). Accordingly, to establish causation with respect to Governor Stitt, Plaintiff must show that Governor Stitt had a specific duty to enforce the challenged parole procedures.

The Court finds that Plaintiff has established the requisite causation for standing as applied to Governor Stitt. Even though the Court previously found that Plaintiff does not have standing for his claims challenging Governor Stitt's exclusive authority to grant

parole to violent offenders, Governor Stitt is sufficiently connected to the enforcement of the challenged parole procedures for which Plaintiff has established an injury-in-fact. It is undisputed that Governor Stitt appoints three out of five of the PPB members, giving Governor Stitt appointing authority for a majority of the PPB. *See* OKLA. CONST. Art. VI, § 10 ("There is hereby created a Pardon and Parole Board to be composed of five members; three to be appointed by the Governor[.]"). Plaintiff has also provided excerpts from a grand jury report that outlines various issues with the PPB. [Doc. No. 126-25]. Although most of the report concerns Oklahoma's commutation process, it also references testimony concerning Governor Stitt's meeting with PPB members about to take office regarding "how they would handle their duties regarding deciding paroles, commutation recommendations, and pardon recommendations[.]" [Doc. No. 126-25, at 18]. The grand jury report further notes that Governor Stitt's ability to appoint a majority of the PPB "effectively allows the Board to be controlled by that single appointing authority." *Id.* at 24.[10] These circumstances establish a sufficient causal connection between Governor Stitt and Plaintiff's challenges to the PPB's parole procedures for which Plaintiff has shown an injury-in-fact.

Defendant Bates, the Executive Director of the PPB, does not argue that Plaintiff lacks standing for his claims against him. Undoubtedly, the PPB owes a specific duty to enforce Oklahoma's parole procedures. *See* OKLA. CONST. Art. VI, § 10 ("It shall be the

---

[10] Notably, only Defendant Bates (PPB) addressed the grand jury report in his reply, merely noting that the report mostly concerned commutation decisions, not parole decisions [Doc. No. 134, at 6]. Governor Stitt's reply [Doc. No. 135] includes no mention of the grand jury report.

duty of the [PPB] to make an impartial investigation and study of applicants for commutations, pardons or paroles, and by a majority vote make its recommendations to the Governor of all persons deemed worthy of clemency."). And Plaintiff asserts in this lawsuit that he is not receiving a "meaningful opportunity for release" in part because the PPB has not considered—and is not required to consider—Plaintiff's juvenile-offender status when deciding whether to recommend Plaintiff for parole. For these reasons, the causation element is met as applied to Defendant Bates.

The Court also finds causation is met as to Defendant Harpe (ODOC) and Defendant Moore (BOC). Plaintiff claims that ODOC's mandatory override policy and risk assessment tools discriminate against him as a juvenile offender and bar him from progressing below medium security. Although Plaintiff does not seek injunctive relief requiring Defendants to re-classify Plaintiff to minimum-security, Plaintiff claims that ODOC's policies prevent him from participating in programs that are necessary to demonstrate his rehabilitation to the PPB. It is undisputed that ODOC establishes policies and procedures for security classifications, which include ODOC's mandatory override policy and custody assessment scale. Plaintiff has also provided evidence that the BOC is charged with establishing policies for ODOC. *See* Okla. Stat. tit. 57, § 504 ("The [BOC] shall have the following powers and duties: (1) to establish policies for the operation of the Department [of Corrections]; [and] (2) to establish and maintain such institutions as are necessary or convenient for the operation of programs for the education, training, vocational education and rehabilitation of prisoners under the jurisdiction of the Department[.]"); *see also* Doc. No. 126-20, Legislative Initiative Process, at 2 ("[ODOC]

evaluates its operations within the context of current law, statutes, and court rulings; ODOC may propose legislation [to BOC] to enhance operations, facilitate court decisions, implement new programs and functions, enhance fiscal operations, establish incarceration strategies and policy, and maintain constitutional compliance in meeting the mission of the agency."). For these reasons, the Court finds causation is met as to Defendants Harpe (ODOC) and Moore (BOC) with respect to the mandatory override policy and risk assessment tools.

C. Redressability

"Article III further requires that the plaintiff demonstrate a substantial likelihood that the relief requested will redress its injury in fact." *Nova Health Systems*, 416 F.3d at 1158 (citation omitted). "The plaintiff must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury." *Id.* (citing *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982)).

The Court finds that Plaintiff's requested declaratory and injunctive relief related to claims for which he has established an injury-in-fact would redress his claimed Eighth Amendment violations. Such relief would change the PPB's behavior when it evaluates Plaintiff's upcoming parole recommendation. Additionally, a declaration that ODOC's mandatory override policy and risk assessment tools are unconstitutional as applied to Plaintiff in that they prevent him from demonstrating rehabilitation to the PPB would similarly redress Plaintiff's injury. Accordingly, the Court finds redressability is established. *See Makthepharak*, 2025 WL 1282649, at *11 ("Defendants' redressability argument repeats their 'no authority to enforce parole procedures' argument that the court

rejected on the causation prong. The court has already decided that [the] Secretary [of Corrections] and Governor Kelly were involved in enforcing the parole statutes, and so now it likewise concludes the relief plaintiff seeks against the defendants is likely to redress plaintiff's purported constitutional injury.").

## IV.    Ripeness

For Article III jurisdiction, a plaintiff's claim must also be ripe. *Peck v. McCann*, 43 F.4th 1116, 1133 (10th Cir. 2022). "Standing and ripeness are closely related in that each focuses on whether the harm asserted has matured sufficiently to warrant judicial intervention." *Peck*, 43 F.4th at 1133. "In evaluating ripeness the central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1158 (10th Cir. 2013) (quotations and citation omitted).

Governor Stitt argues that Plaintiff's claim related to the Governor's exclusive authority to grant parole to violent offenders is not ripe because Plaintiff has not been recommended for parole by the PPB. The Court agrees. Plaintiff's claims regarding the Governor's authority and discretion to grant Plaintiff parole are contingent on the uncertain and speculative event of Plaintiff receiving a favorable parole recommendation from the PPB. And if Plaintiff receives a favorable recommendation at some point in the future, Plaintiff can only speculate as to what factors the Governor will consider or be required to consider at that time. Thus, the Court concludes that this claim is not ripe.

## V.    Section 1983 Claim Based on Eighth Amendment

Plaintiff bases his Section 1983 claim on alleged violations of his Eighth Amendment rights.[11] "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.    Eighth Amendment Precedent

The Eighth Amendment prohibits cruel and unusual punishments, "guarantee[ing] individuals the right not to be subjected to excessive sanctions." *Roper v. Simmons*, 543 U.S. 551, 560 (2005). In this case, Plaintiff claims that the Oklahoma parole system subjects him to cruel and unusual punishment by denying him a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. Plaintiff's claims are premised on the following Supreme Court precedent, which define and clarify Eighth Amendment protections in the context of sentencing juvenile offenders.

First, in *Roper*, the Supreme Court held that the Eighth Amendment prohibits death-penalty sentences for juvenile offenders. *Roper*, 543 U.S. at 578. Next, in *Graham*, the Supreme Court imposed a categorical bar on life-without-parole sentences for juveniles

---

[11] As Plaintiff expressly denies raising any due process challenge, the Court does not analyze Plaintiff's claims under the Fourteenth or Fifth Amendments. [Doc. No. 127, at 27] ("Moreover, [Plaintiff] does not claim, and explicitly disavowed, that he has a '*liberty* interest in receiving a meaningful opportunity for parole under Oklahoma law'; his allegations under federal law are based on *only* the Eighth Amendment.").

who did not commit homicide. 560 U.S. at 74. In doing so, the *Graham* Court explained that:

> A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society.

*Id.* at 75.

Following *Graham*, the Supreme Court held in *Miller v. Alabama* that the Eighth Amendment forbids a sentencing scheme that mandates life-without-parole for juvenile homicide offenders. 567 U.S. 460, 479 (2012). In *Miller*, the Supreme Court clarified that "*Graham*'s reasoning implicates any life-without-parole sentence imposed on a juvenile, even as its categorical bar relates only to nonhomicide offenses." *Id.* at 473. Thus, under *Miller*, a sentencer must "consider[] an offender's youth and attendant characteristics" before sentencing a juvenile homicide offender to life without parole. *Id.* at 483.

In *Montgomery v. Louisiana*, the Supreme Court held that *Miller* announced a substantive rule of constitutional law, and thus should be applied retroactively. 577 U.S. 190, 212 (2016). As clarified by *Montgomery*, the Court in *Miller* certainly outlined the

procedure for considering an offender's youth and attendant characteristics before imposing a life-without-parole sentence, but the Court also substantively held "that life without parole is an excessive sentence for children whose crimes reflect transient immaturity." *Id.* In *Montgomery*, the Court explained that states may cure *Miller* violations not only by resentencing offenders, but also by "permitting juvenile homicide offenders to be considered for parole." *Id.*

Finally, in *Jones v. Mississippi*, the Supreme Court further clarified that *Miller* does not require a "separate factual finding of permanent incorrigibility" before sentencing a juvenile homicide offender to life without parole. 593 U.S. 98, 104 (2021). Rather,

> *Miller* followed the Court's many death penalty cases and required that a sentencer consider youth as a mitigating factor when deciding whether to impose a life-without-parole sentence. *Miller* did not require the sentencer to make a separate finding of permanent incorrigibility before imposing such a sentence. And *Montgomery* did not purport to add to *Miller*'s requirements.

*Id.* at 109. As made clear by *Jones*, *Miller* requires a discretionary sentencing scheme, and such a scheme "helps ensure that life-without-parole sentences are imposed only in cases where that sentence is appropriate in light of the defendant's age." *Id.* at 111-12.

B.     Plaintiff's Claims Under *Graham* and *Miller*

In this case, Plaintiff alleges that Oklahoma's parole system is unconstitutional as applied to Plaintiff—a juvenile homicide offender—because it denies him a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *See Graham*, 560 U.S. at 75. It is undisputed that Plaintiff was convicted of homicide; he was sentenced to life *with* the possibility of parole; and he is currently eligible for parole.

Plaintiff maintains that "[d]espite receiving a life sentence under which he is eligible for parole, [he] has never received the parole consideration due to him under the Eighth Amendment and Oklahoma Constitution." [Doc. No. 127, at 8].

Plaintiff appears to concede that—as a juvenile *homicide* offender—Plaintiff cannot establish a *Graham* violation. [Doc. No. 127, at 26] ("Mr. Thomas is not arguing that he can make out a *Graham* violation. He is simply trying to vindicate his Eighth Amendment rights in the *parole* process as first pronounced in *Miller*."). Accordingly, the Court will address whether Plaintiff has established a genuine dispute of material fact with respect to his claims premised on *Miller*.

Defendants assert that Plaintiff cannot establish a *Miller* violation because he was a juvenile homicide offender sentenced to life *with* the possibility of parole, and *Miller* only requires that a sentencer consider a juvenile homicide offender's "youth and attendant circumstances" prior to imposing a life-*without*-parole sentence. The Court agrees.[12]

---

[12] This Court has repeatedly concluded that *Miller* does not extend to juvenile offenders sentenced to life *with* the possibility of parole. *See Rodgers v. Whitten*, Case No. CIV-20-839-PRW, 2021 WL 735647, at *1 (W.D. Okla. Feb. 25, 2021) (adopting magistrate judge's conclusion that "Petitioner's life sentence does not implicate the Supreme Court's decision in *Miller v. Alabama* … because Petitioner was not subject to a mandatory life without parole sentence, as plainly evidenced by the fact that Petitioner received a life sentence."); *Lewis v. Okla. Pardon & Parole Bd.*, Case No. CIV-18-1205-G, 2019 WL 1500671, at *1 (W.D. Okla. Apr. 5, 2019) (agreeing with magistrate judge's conclusion that "*Miller* is inapplicable because 'Plaintiff was not sentenced to life-without-parole and has in fact been considered for parole on at least six occasions.'"); *Bias v. Stitt*, Case No. CIV-20-989-SLP, 2021 WL 3008606, at *1 (W.D. Okla. July 15, 2021) (agreeing with magistrate judge's conclusion that *Miller* and *Montgomery* did not apply to the plaintiff because he "ha[d] not been sentenced to life without parole" and "ha[d] been considered for parole.").

In *Howard v. Coonrod*, the Eleventh Circuit cited to *Graham*, *Miller*, and *Jones* and explained:

> None of the cases speaks directly to homicide offenders sentenced to life *with* the possibility of release. But it follows from *Miller* and *Jones* that such a sentence is allowed under the Eighth Amendment. As just explained, according to those decisions, juvenile homicide offenders can be sentenced to life *without* parole, provided that the sentence isn't mandatory and the proper process is observed. And if the stiffer sentence of life without the possibility of parole isn't a cruel and unusual punishment, then the more lenient sentence of life *with* the possibility of parole (or another sentence that similarly provides for potential future release) can't possibly be cruel and unusual. Put simply—if a little imprecisely—the greater power to impose life *without* parole includes the lesser power to impose life *with* parole.

134 F.4th 1136, 1144 (11th Cir. 2025); *see also Heredia v. Blythe*, 638 F.Supp.3d 984, 1001 (W.D. Wisc. Nov. 2, 2022) ("If it is permissible under the Eighth Amendment for a sentencing court to preclude the possibility of parole at the outset for a juvenile offender convicted of homicide, then it follows that the Eighth Amendment places few, if any, limitations on a parole board's decision whether to grant or deny parole to the same offender later."). These interpretations are supported by *Montgomery*'s ruling that states may cure *Miller* violations by "permitting juvenile homicide offenders to be considered for parole." *Montgomery*, 577 U.S. at 212.

The Tenth Circuit has previously explained that the right recognized in *Miller* "is narrowly drawn: it protects juveniles who commit crimes from the mandatory imposition of life without possibility of parole." *Davis v. McCollum*, 798 F.3d 1317, 1321 (10th Cir. 2015). The *Davis* Court rejected the plaintiff's assertion that "*Miller*'s logic reaches beyond

invalidating mandatory life-without-parole sentencing schemes for juveniles." *Davis*, 798 F.3d at 1321. More recently, a plaintiff attempted to rely on the Tenth Circuit's opinion in the instant case (*Thomas v. Stitt*, No. 21-6011, 2022 WL 289661 (10th Cir. Feb. 1, 2022)) to argue that his Eighth Amendment rights were violated by the aging-prisoner parole system. *See Jackson v. Harpe*, No. 24-6011, 2024 WL 3738195, at *2 (10th Cir. 2024) (unpublished). In *Jackson*, the Tenth Circuit described its opinion in the instant case as "unpublished authority recognizing the Eighth Amendment prohibits the imposition of *mandatory* life in prison *without* the possibility of parole for juvenile homicide offenders." *Id.* (citing *Thomas*, 2022 WL 289661, at *2) (emphasis added).

Based on the foregoing, the Court finds Plaintiff's claim that *Miller* entitles him, a juvenile homicide offender sentenced to life with the possibility of parole, to certain parole procedures necessarily requires an expansion of *Miller*'s holding, which this Court declines to do.

The Tenth Circuit has at least implied in this case that *Miller* would not permit a State to merely label a sentence as "life-with-parole," while operating a parole system that provides no meaningful opportunity to obtain release. *See Thomas*, 2022 WL 289661, at *4. At the time of Plaintiff's sentencing, it was mandatory that Plaintiff be sentenced to either the death penalty, life without parole, or life with parole. Thus, it could be argued that Plaintiff's mandatory life-with-parole sentence—if paired with a sham parole system—is the functional equivalent of a mandatory life-without-parole sentence, which *Miller* barred.

Considering, then, whether Plaintiff is serving the functional equivalent of a mandatory life-without-parole sentence, Plaintiff has not come forth with evidence

establishing a policy or practice that prevents him from being granted parole under Oklahoma's parole system. Nor has Plaintiff established that the PPB would refuse to grant Plaintiff a recommendation for parole regardless of the circumstances. The crux of Plaintiff's claims is the PPB's lack of youth-consideration during parole decisions. However, Plaintiff has not provided any evidence that the PPB refuses to consider an inmate's age at the time of the offense when considering parole recommendations for juvenile offenders like Plaintiff, or that any policy or statute prevents the PPB from considering an inmate's juvenile-offender status.[13] Conversely, Defendants have provided evidence of PPB board members actually considering youth during parole decisions. [Doc. No. 134-3, at 6 (Kelly Doyle's testimony that she calculated an inmate's age at the time of the offense because she "found it to be an important factor in [her] decision[-]making."); Doc. No. 134-1, at 7-8 (Adam Luck's testimony that he would look at an inmate's birthday and case file date "to determine the age of an individual at the time the crime was committed.")]. Plaintiff's assertion that the PPB is not required to consider age at the time

---

[13] At most, Plaintiff has shown that, at times, PPB members calculate on their own an offender's age at the time of the offense by subtracting the date the inmate's charges were filed from the inmate's age, and that this calculation may not always reveal that an offender was a juvenile *at the time of the offense* due to the delay between the offense and the charges being brought. However, Plaintiff concedes that in his case, any delay between the offense and charges being filed does not conceal his juvenile-offender status because he was a minor at the time of the offense, when charges were brought against him, and when he entered ODOC custody [Doc. No. 126, at 57 n.12]. Further, the testimony that PPB members calculate an offender's age at the time of the offense based on the dates on the parole report supports a finding that PPB members consider juvenile-offender status when considering parole.

of the offense—but is merely permitted to do so—does not render Oklahoma's parole system unconstitutional as applied to Plaintiff.[14]

Plaintiff challenges ODOC's "mandatory override" policy, which prevents inmates serving life sentences from progressing below medium security. Plaintiff also challenges ODOC's custody assessment scale, which assigns a higher number of custody points to inmates 29 years and younger.[15] As stated above, Plaintiff does not ask that the Court order ODOC to move Plaintiff to minimum security. Rather, Plaintiff challenges ODOC's policies as they allegedly prevent him from establishing his rehabilitation to the PPB. But Plaintiff has failed to show that these policies render him ineligible for parole, or that he is incapable of showing his rehabilitation as a result of the policies. *See Makthepharak*, 2025 WL 1282649, at *20 (rejecting the plaintiff's claim that being categorically barred from work release hindered his parole eligibility because "there's no evidence that work release is a prerequisite to parole or requirement to demonstrate maturity and rehabilitation."). Plaintiff has completed various programs while incarcerated, and he has not identified any specific programs he cannot participate in due to his medium-security classification.[16] Further, Defendants have provided evidence that PPB members are aware that some

---

[14] The Court reaches the same conclusion on Plaintiff's argument that the PPB does not receive special training for how to consider an inmate's age at the time of the offense when determining parole recommendations.

[15] The Court questions whether ODOC's policy regarding age points has ever prevented Plaintiff from progressing below medium security for two reasons. First, Plaintiff has at all times been subject to the mandatory override policy due to his life sentence. Second, Plaintiff's argument that age points prevented him from moving to minimum security ignores the fact that Plaintiff has also received points for non-age factors, such as incidents of misconduct.

[16] Plaintiff does show that he is ineligible to participate in substance abuse treatment due to the length of time remaining on his life sentence. But, importantly, Plaintiff has not demonstrated that substance abuse treatment is a prerequisite for parole eligibility.

courses may not be available at every facility and take that into account in making parole decisions. [Doc. No. 134-1, at 9].

In his Complaint, Plaintiff alleges that each time he was up for parole consideration, the parole investigator "gave favorable recommendations to the PPB," which were rejected solely due to the "aggravating factors associated with the original crime." [Doc. No. 1, at ¶¶ 16, 111]. However, Plaintiff's parole investigator recommended denying parole in 2010, 2013, and 2022 [Doc. No. 119-2, at 4, 19, 23]. In each of those recommendations, the investigator referenced Plaintiff's multiple misconduct reports or "consistent pattern of misconducts" while incarcerated. *Id.* Although the recommendations also note the violent nature of the underlying offenses, they do not support Plaintiff's assertion that he is being denied parole solely due to the violent nature of the original crimes, and without any regard to any demonstrated rehabilitation. Nor has Plaintiff cited to any authority for the proposition that a parole board must consider *only* an inmate's age at the time of the offense and any maturity/rehabilitation thereafter when making parole decisions.

To summarize, Plaintiff has not established a genuine dispute of material fact with respect to his Eighth Amendment claims premised on *Miller*. Plaintiff has not provided evidence that Oklahoma's parole system provides him with no meaningful opportunity for release, such that he is serving the functional equivalent of a mandatory life-without-parole sentence. Defendants have established the absence of a dispute of material fact, and Plaintiff has failed to set forth specific facts that show a genuine issue for trial, and Defendants are entitled to judgment as a matter of law on Plaintiff's § 1983 claim based on the Eighth Amendment.

## VI.    State Law Claim

Because the Court finds no Eighth Amendment violation for purposes of Plaintiff's Section 1983 claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's claim alleging that Oklahoma's parole system violates Okla. Const. Art. II, § 9. *See* 28 U.S.C. § 1367(c)(3); *cf. Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

## CONCLUSION

For these reasons, Defendants' Motions for Summary Judgment [Doc. Nos. 114, 115, 116, 119] are **GRANTED**. A separate judgment shall be entered.

**IT IS SO ORDERED** this 5th day of September, 2025.

TIMOTHY D. DeGIUSTI
Chief United States District Judge